## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

Case No.:

OMAR SANTOS and AMANDA
CLEMENTS on behalf of themselves
and all others similarly situated,

    Plaintiffs,

vs.

HEALTHCARE REVENUE RECOVERY
GROUP, LLC d/b/a ARS ACCOUNT
RESOLUTION SERVICES and EXPERIAN
INFORMATION SOLUTIONS, INC.,

    Defendants.

_____/

**CLASS ACTION COMPLAINT**

Plaintiffs, based on personal knowledge as to themselves, and upon information and belief as to all other matters, allege as follows:

1. Plaintiffs Omar Santos and Amanda Clements (collectively "Plaintiffs") bring this class action against Defendants Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services ("HRRG") and Experian Information Solutions, Inc. ("Experian") (collectively "Defendants").

2. This is an action for statutory and punitive damages, costs, and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681, *et seq.*

3. Consumer reporting agencies ("CRAs") are companies that collect, compile, and provide information about consumers in the form of consumer reports for certain permissible statutory purposes under the FCRA. The three largest CRAs are Experian, Equifax, and TransUnion, who maintain credit files on approximately 200 million U.S. consumers and receive information from approximately 10,000 furnishers, such as creditors, lenders, and debt collection agencies.

4. Credit reports play an increasingly important role in the lives of consumers. Most creditors, for example, review these reports to make decisions about whether to extend credit to consumers and what terms and conditions to offer them. As such, information contained in these reports affects whether a person is able to get a private education loan, pay for college costs, secure a mortgage loan to buy a home, or obtain a credit card. Credit reports are also increasingly used for many noncredit decisions, including by landlords to determine whether to rent an apartment or home to a prospective tenant and by employers to decide whether to hire potential job applicants or to offer a promotion to existing employees.

5. As such, CRAs have a statutory obligation to verify independently the accuracy and completeness of information included in the credit reports they provide.

6. This is a class action brought on behalf of those consumers whose Experian credit reports contain false, misleading, and inaccurate information. Defendants HRRG, a Florida-based medical debt collection company, and Experian willfully engage in the unlawful practice of "re-aging" account information, *i.e.* altering certain delinquency-related status dates and account history, on Experian consumer credit reports causing third parties who review such credit reports to believe that a consumer's delinquency is more recent than it really is.

7. Experian willfully fails to follow reasonable procedures to assure the maximum possible accuracy of the information concerning Plaintiffs and members of the class and fails to conduct any reasonable investigation into the accuracy of information reported by HRRG about Plaintiffs and members of the class, as required by the FCRA.

8. Experian willfully fails to conduct appropriate reinvestigation of the accuracy of information following a dispute initiated by a consumer, as required by the FCRA.

9. HRRG willfully fails to conduct appropriate investigations of the accuracy of information following a dispute initiated by a consumer, as required by the FCRA.

## JURISDICTION AND VENUE

10. Jurisdiction of this Court is conferred by the Fair Credit Reporting Act, 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

11. Jurisdiction is also conferred pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed Plaintiff Class are citizens of states different from Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

12. Venue in this District is appropriate under 28 U.S.C. § 1391(b) because at all times relevant to the action, Plaintiff Omar Santos resided in Miami-Dade County, Florida, and Defendant Healthcare Revenue Recovery Group, LLC resided in Broward County, Florida as defined under 28 U.S.C. § 1391. Defendant Experian does business in this District and maintains a corporate office in this District.

## PARTIES

13. Plaintiff Omar Santos is a natural person, citizen of the United States of America, and resident of Florida. Plaintiff Santos is a "consumer" as the term is defined in 15 U.S.C. §1681a(c).

14. Plaintiff Amanda Clements is a natural person, citizen of the United States of America, and resident of Texas. Plaintiff Clements is a "consumer" as the term is defined in 15 U.S.C. §1681a(c).

15. Defendant HRRG is a Florida limited liability company with its principal place of business in Sunrise, Florida. HRRG is registered to do business in the state of Florida. HRRG is a furnisher of information within the meaning of 15 U.S.C. § 1681s-2.

16. Defendant Experian is an Ohio corporation with its principal place of business in Costa Mesa, California. Experian is registered to do business in the State of Florida. Experian is a "consumer reporting agency," as defined by 15 U.S.C §1681a(f), and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

## FACTUAL ALLEGATIONS

17.     Experian is multinational consumer credit reporting agency. According to its website, Experian "maintains credit information on approximately 220+ million U.S. consumers."[1]

18.     HRRG is a medical debt collections company.[2]

19.     ARS Account Resolution Services ("ARS") is a "division" of HRRG.[3] According to the records of the Florida Secretary of State, HRRG does business as ARS.

20.     On information and belief, each month that HRRG reports consumer account information to Experian, HRRG deletes the previous account history. This has the effect of making the account appear newly in collections every month.

21.     Following the initiation of a dispute by a consumer, HRRG intentionally alters the "Date of Status" and/or "First Reported" dates of the consumer's debt and furnishes such false information to Experian who, in turn, includes such false information on the consumer's credit report.

22.     The "Date of Status" date on a credit report should reflect the date when the account first went uncollectible or a major event in the history of the account. The date should never change without a major event in the history of the account or a dispute.

23.     The "First Reported" date is the date the account is first reported to Experian and that date should never change.[4]

---

[1] Experian's Corporate Fact Sheet, https://www.experian.com/corporate/experian-corporate-factsheet.html (last accessed July 16, 2019).
[2] About HHRG, https://www.healthcarerevenuerecoverygroup.com/about-hrrg/ (last accessed July 16, 2019).
[3] ARS Account Resolution Services Website, https://www.arspayment.com/ (last accessed July 16, 2019).
[4] Experian uses the terms "Reported Since" and "First Reported" interchangeably on its reports, depending on whether they are obtained online or through the mail. Accordingly, "Reported Since"

24. HRRG and Experian improperly re-age or re-date the delinquency dates on consumers' accounts, and Experian does nothing to verify the accuracy of such information. Indeed, Experian does not follow any reasonable procedure to assure the maximum possible accuracy and has been reporting false and inaccurate information, even after it knew or should have known the information it was reporting was incorrect.

25. Consumers are harmed by HRRG's and Experian's reporting of false, misleading, and inaccurate information on consumers' credit reports. The age of a debt or a late payment or uncollectable account matters. By re-aging the events, HRRG and Experian make it appear as if such adverse events occurred more recently than they actually did.

26. Both HRRG and Experian willfully and intentionally fail to properly conduct a good faith investigation into consumer disputes, as required by the FCRA.

27. By re-aging consumers' accounts when they initiate a dispute, HRRG and Experian are actually penalizing consumers for exercising their statutory right to dispute inaccurate information on their credit reports. HRRG and Experian are re-aging HRRG accounts with every dispute and, accordingly, placing false, misleading, and inaccurate information on every consumer's Experian consumer credit report.

28. HRRG is falsely and misleadingly reporting the character and/or legal status of these alleged debts by re-aging the accounts and is providing credit information that it knows, or should know, is inaccurate and misleading.

29. Experian permits HRRG to provide information that is inaccurate and misleading by intentionally structuring its reporting system to allow for unverified reporting by HRRG.

---

and "First Reported" will be used interchangeably throughout this Complaint to refer to the same data field in Plaintiffs' Experian credit report.

Experian should have discovered the misleading information through a good faith, reasonable investigation.

## EXPERIAN'S DISPUTE PROCESS

30. When a consumer initiates a dispute, Experian generates an Automated Consumer Dispute Verification form ("ACDV"). The ACDV contains data and information on a consumer that is "on profile" with Experian.

31. Experian transmits the ACDV to the data furnisher (in this case, HRRG) for review and verification. The data furnisher can then edit the information, delete the account, or continue to report without changes.

32. Because of Experian's business relationship with the data furnisher, Experian does not investigate the information the data furnisher provides it.

33. Experian takes the position that it is not responsible to tell the data furnisher what to report and does not vet the data provided.

34. Therefore, Experian does nothing to ensure the accuracy of the information returned by the data furnisher.

35. Instead, Experian simply reports, without question, the data provided by the data furnisher.

36. Experian does not conduct a reinvestigation as required by the FCRA.

## PLAINTIFFS' FALSE CREDIT REPORTS/DISCLOSURES/PROFILE

### Plaintiff Omar Santos

37. Plaintiff Omar Santos obtained his Experian credit report on July 24, 2017. The July 24, 2017 report contained information for three HRRG/ARS accounts.

38. On the July 24, 2017 report, ARS Account Nos. 71670***, 80732***, and 81364*** had a Date of Status of 07/2017 and a First Reported date of 07/2017. Both of these dates were inaccurate and falsely reflected a "newer" delinquency on Plaintiff Santos' credit report/disclosure/profile.

39. On July 27, 2017, Plaintiff Santos disputed the inaccurate "Date of Status" and "First Reported" dates reported by HRRG on his Experian credit report.

40. Plaintiff Santos again obtained his Experian credit report on September 5, 2017. The September 5, 2017 report again contained information for three HRRG/ARS accounts, however, remarkably the delinquency dates on the September 5, 2017 report were again altered, again inaccurate, and again made to look as if the delinquency on Santos' HRRG/ARS accounts were "newer."

41. On the September 5, 2017 report, ARS Account Nos. 71670***, 80732***, and 81364*** now had a Date of Status of 09/2017 and a First Reported date of 09/2017 and had no account history before September 2017.

42. HRRG and Experian had again unlawfully re-aged the information for the three ARS accounts on Plaintiff Santos' September 5, 2017 credit report/disclosure/profile.

### Plaintiff Amanda Clements

43. Plaintiff Amanda Clements obtained her Experian credit report on July 25, 2017. The July 25, 2017 report contained information for two HRRG/ARS accounts.

44. On the July 25, 2017 report, ARS Account Nos. 71788*** and 72822*** had a Date of Status of 07/2017 and a First Reported Date of 07/2017. Both of these dates were inaccurate and falsely reflected a "newer" delinquency on Plaintiff Cements' credit report/disclosure/profile.

45. On July 26, 2017, Plaintiff Clements disputed the inaccurate "Date of Status" and "First Reported" dates reported by HRRG on her July 2017 Experian credit report.

46. Plaintiff Clements again obtained her Experian credit report on August 22, 2017. The August 22, 2017 report contained information for only one HRRG/ARS account, however, remarkably the delinquency date on the August 22, 2017 report was again altered, again, inaccurate, and again made to look as if the delinquency on Clements' HRRG/ARS account was "newer."

47. On the August 22, 2017 report, ARS Account 71788*** now had a Date of Status of 08/2017 and a First Reported Date of 08/2017 and had no account history before August 2017.

48. ARS Account 72822*** did not appear on the August 22, 2017 report.

49. HRRG and Experian unlawfully re-aged the information for one of the ARS accounts on Plaintiff Clements' August 22, 2017 credit report/disclosure/profile.

## CLASS ALLEGATIONS

50. Plaintiffs bring this action and seek to certify and maintain it as a class action under Fed. R. Civ. P. Rule 23(a), (b)(2), and/or (b)(3) on behalf of themselves and nationwide class and subclass defined as:

Nationwide Class Against Defendant Experian:

> All persons whose HRRG account was re-aged on their Experian consumer credit report / disclosure / profile.

Nationwide Sub-Class Against Defendants Experian and HRRG:

> All persons who initiated a dispute with Experian and whose HRRG account information was re-aged on their Experian consumer credit report / disclosure / profile.

51. The class and sub-class are so numerous that joinder of all members is impracticable. Upon information and belief, there are thousands of class and sub-class members.

52. There are questions of law and fact, common to the class, which predominate over any questions affecting only individual class members. The principle question is whether Defendants' conduct in connection with re-aging consumers' account information violates the FCRA.

53. Upon information and belief, the identity of class and sub-class members can be determined from Defendants' records.

54. Plaintiffs' claims are typical of the claims of the class and sub-class and arise from the same course of conduct by Defendants. The relief Plaintiffs seek is typical of the relief sought for absent class and sub-class members.

55. Plaintiffs will fairly and adequately represent and protect the interests of the class and sub-class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions.

56. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the class and sub-class and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of class and sub-class.

57. This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3), because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The common questions of law and of fact regarding Defendants' conduct and responsibility predominate over any questions affecting only individual class members.

58. The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized

litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public in this Court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

59. Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.

## **CLAIM FOR RELIEF**

### **Violation of the Fair Credit Reporting Act**

### **Against All Defendants**

60. Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

61. The FCRA imposes a duty on Experian to prepare consumer credit reports with "maximum possible accuracy":

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C.A. § 1681e.

62. Experian does not vet or verify any of the information provided to it by HRRG.

63. Experian does not conduct any investigation during its dispute resolution process. Experian instead relies entirely on HRRG as a data furnisher. Experian's dispute resolution process fails to follow reasonable procedures to assure maximum possible accuracy of information regarding Plaintiffs and class members.

64. Experian is aware that HRRG is supplying false, misleading, and inaccurate information regarding Plaintiffs and class members.

65. By knowingly allowing HRRG to re-age Plaintiffs' and class members' account information, Experian is failing to ensure "maximum possible accuracy."

66. The FCRA imposes a duty on Experian to conduct an investigation when a consumer disputes the accuracy of any information on the consumer's credit report:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C.A. § 1681i(a)(1)(A).

And:

15 U.S.C. §1681i(a)(5) reads:

> (5) Treatment of Inaccurate or Unverifiable Information
>
> (A) *In general*. If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall-
>
> (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and
>
> (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer

67. Experian's dispute process fails to conduct a reinvestigation of the accuracy of the disputed information.

68. The FCRA imposes a duty on HRRG to conduct a reasonable investigation into Plaintiffs' disputes, but HHRG failed to do so. If HRRG would have conducted a reasonable investigation, it should have discovered the inaccurate data.

69. The section entitled "Duty of Furnishers of Information Upon Notice of Dispute" under 15 U.S.C. §1681s-2(b) reads:

> (1) After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute <u>with</u> regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall
>
>     (A) conduct an investigation with respect to the disputed information:
>
>     (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
>     (C) report the results of the investigation to the consumer reporting agency;
>
>     (D) <u>if</u> the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.
>
>     (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate based on the results of the reinvestigation promptly
>
>         (i) modify that item of information
>         (ii) delete that item of information
>         (iii) permanently block the reporting of that item of information

70. By re-aging Plaintiffs' and class members' account information, HRRG is knowingly reporting false and inaccurate information.

71. Defendants' violation of the FCRA was willful and intentional and/or negligent. Under, 15 U.S.C. §1681n and 15 U.S.C. §1681o, Plaintiffs are entitled to recover statutory damages, punitive damages, and reasonable attorney's fees. Indeed, 15 U.S.C. §1681n, "Civil Liability for Willful Noncompliance" provides that:

> (a)   Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of
>
> (1) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1000
>
> (2) such amount of punitive damages as the court may allow; and
>
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

*Id.*

72. Experian willfully violated its duties under the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiffs and class members.

73. Experian willfully violated its duties under the FCRA by failing to conduct a good faith reinvestigation following Plaintiffs' and class members' notices of dispute.

74. Experian willfully violated its duties under the FCRA by allowing HRRG to report false and inaccurate information concerning Plaintiffs and class members.

75. HRRG willfully violated its duties under the FCRA by failing to conduct an appropriate investigation into the accuracy of information following a dispute initiated by Plaintiffs and class members, as required by the FCRA.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs seek judgment in their favor and damages against Defendants Experian and HRRG based on the following requested relief:

a. Statutory damages pursuant to 15 U.S.C. § 1681;

b. Punitive damages pursuant to 15 U.S.C. § 1681;

c. Costs and attorneys' fees, pursuant to 15 U.S.C. § 1681; and

d. Such other and further relief as may be deemed necessary, just, and proper.

Dated: July 24, 2019

Respectfully submitted,
**PODHURST ORSECK, P.A.**

*/s/ Peter Prieto*
Peter Prieto (FBN 501492)
pprieto@podhurst.com
Alissa Del Riego (FBN 99742)
adelriego@podhurst.com
Podhurst Orseck, P.A.
SunTrust International Center
One S.E 3rd Avenue, Suite 2300
Miami, Florida 33131

Roland Tellis (pro hac admission forthcoming)
rtellis@baronbudd.com
Jonas P. Mann (pro hac admission forthcoming)
jmann@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, California 91436

Dennis McCarty (pro hac admission forthcoming)
dennismccartylaw@gmail.com
Jonathan Raburn (pro hac admission forthcoming)
jonathan@geauxlaw.com
McCARTY & RABURN PLLC
2931 Ridge Road, Suite 101 #504
Rockwall, Texas 75032