UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| OMAR SANTOS and AMANDA CLEMENTS on behalf of themselves and all others similarly situated, | Case No 1:19-cv-23084-KMW |
| Plaintiffs, | **ORAL ARGUMENT REQUESTED** |
| vs. | |
| HEALTHCARE REVENUE RECOVERY GROUP, LLC d/b/a ARS ACCOUNT RESOLUTION SERVICES and EXPERIAN INFORMATION SOLUTIONS, INC., | |
| Defendants. _____/ | |

**PLAINTIFFS' OPPOSITION TO
DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S
MOTION FOR SUMMARY JUDGMENT**

I.  **INTRODUCTION**

Plaintiffs Omar Santos and Amanda Clements ("Plaintiffs") allege—and summary judgment evidence indisputably establishes—that Defendant Experian Information Solutions, Inc. ("Experian") engaged in the practice of altering delinquency-related dates and removing the account history from Plaintiffs' Experian credit files and reports to make certain debts reported by Defendant Healthcare Revenue Recovery Group ("HRRG") appear more recent than they actually were. Plaintiffs allege that this wrongful conduct was *willful*, and therefore seek *statutory damages*—as opposed to actual damages—under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*

Experian, in its narrow and premature motion for summary judgment, does not contest a number of critical aspects of Plaintiffs' claims. It does not dispute, for example, that its conduct was willful under 15 U.S.C. § 1681n. Nor does it contest that the "Date of Status" and "First Reported" dates for Plaintiffs' HRRG debts in Experian's credit files and reports were altered to inaccurately make the debts appear more recent than they actually were. And it does not dispute that this re-aging of Plaintiffs' HRRG debts negatively impacted Plaintiffs' creditworthiness. Indeed, Experian has publicly conceded the adverse consequences of its conduct, admitting that "[t]he single most important indicator of credit risk is your payment history. A missed payment will have the greatest and longest lasting impact. The more recently the missed payment occurred, the greater that impact will be."[1]

Instead, Experian's motion, filed almost a year in advance of the discovery cutoff and without meaningfully participating in discovery, raises two narrow arguments, neither of which has merit. First, it claims that Plaintiffs must show that they were denied credit because of the

---

[1] *See* Ex. 8 to Declaration of Roland Tellis, and available at https://www.experian.com/blogs/ask-experian/recent-late-payments-hurt-credit-scores-the-most/.

inaccuracies in Experian's reports and files. But this argument is conclusively foreclosed by the text of the FCRA, as well as binding precedent, neither of which Experian acknowledges. The FCRA's civil remedy provision, as amended in 1996, unequivocally makes statutory damages available to Plaintiffs for violations of the FCRA, meaning that Plaintiffs need not prove actual damages in the form of denied credit in order to prevail. Without addressing recent Eleventh Circuit and Supreme Court authorities recognizing this obvious reality, Experian instead relies on a pre-1996 decision and several inapplicable, non-precedential, *pro se* cases citing the pre-1996 decision, as well as misplaced standing arguments, in an effort to effectively re-write the statute. Experian may not like the law as written, but it is not entitled to simply ignore or unilaterally change it. Experian's failure to cite contrary, binding precedent displays an alarming lack of candor.

Experian's second argument fares no better. It targets a narrow part of Plaintiffs' claim that alleges a violation of 15 U.S.C. § 1681i, which requires a consumer reporting agency to reinvestigate the completeness and accuracy of a disputed item in a consumer's file if the consumer notifies the agency of such a dispute. Experian contends that Plaintiffs did not adequately notify it of the errors in Experian's files and reports. But this argument cannot serve as a basis for partial summary judgment, especially at this time, because a dispute of material fact exists concerning the adequacy of Plaintiffs' notification to Experian, and Plaintiffs must be provided an opportunity to conduct additional discovery concerning this issue, as Experian has refused to meaningfully participate in discovery thus far.

For these reasons and those explained below, Experian's motion should be denied in its entirety.

II.   **FACTUAL BACKGROUND**

On July 24, 2017, Plaintiff Omar Santos requested and received a copy of his Experian credit report. *See* Defendant's Statement of Facts (ECF No. 40) ("DSOF"), ¶ 7; Plaintiffs'

2

Statement of Facts ("PSOF"), ¶ 7. The report identified three delinquent ARS Accounts (Nos. 71670***, 80732***, and 81364***), all of which had a "Date of Status" of July 2017 and a "First Reported" date of July 2017. *See* PSOF, ¶ 8. All of these dates were inaccurate and made the debts appear newer or fresher on Mr. Santos' credit report than they actually were. *Id.* On July 27, 2017, Mr. Santos disputed the inaccuracies on the three accounts reported by HRRG[2] to Experian. *See* DSOF, ¶ 9. Specifically, Mr. Santos informed Experian that the accounts had been re-aged. *Id.*; PSOF, ¶ 14.

Mr. Santos then requested and received another Experian credit report on September 5, 2017. *See* PSOF, ¶ 43. Remarkably, for each of the three ARS Accounts appearing on the report, the "Date of Status" and a "First Reported" date had been changed to September 2017—as opposed to July 2017, as stated in the prior report—and the account history for the intervening months had been removed. *Id.* The accounts had been re-aged again to appear newer than they were. *Id.*

Similarly, on July 25, 2017, Plaintiff Amanda Clements requested and received her Experian credit report. DSOF, ¶ 28; PSOF, ¶ 28. The July report identified two delinquent ARS accounts (Account Nos. 71788*** and 72822***), both of which had a "Date of Status" of July 2017 and a "First Reported" date of July 2017. *See* PSOF, ¶ 29. These dates were incorrect and re-aged to appear newer than they actually were. *Id.*

Ms. Clements disputed the inaccuracies in a letter the next day to Experian. DSOF, ¶ 30; PSOF, ¶ 34. The ACDV form—through which a consumer reporting agency communicates a dispute to a reporting creditor or debt collection company—relating to Ms. Clements's dispute indicates that Experian, contrary to its position at summary judgment, did not understand her reference in the dispute letter to "re-aging" as a term of art. PSOF, ¶ 46. Instead, it reported to

---

[2] HRRG does business as ARS Account Resolutions Services. (ECF No. 1, ¶ 19.) ARS is not a separate entity. *Id.*

HRRG that Ms. Clements claimed that her Experian report and file included "inaccurate information." *Id.*

Ms. Clements then requested and received another Experian credit report on August 22, 2017. PSOF, ¶ 44. This time, one ARS account was removed, but the remaining ARS account had a "First Reported" date and a "Date of Status" of August 2017 and no prior account history. *Id.* The account had again been re-aged to appear newer than it was. *Id.*

On July 24, 2019, Plaintiffs, on behalf of themselves and a putative nationwide class, filed their complaint against Experian and HRRG, asserting a claim under 15 U.S.C. § 1681n for Defendants' willful violations of the FRCA, including §§ 1681e, 1681i, and 1681s, and seeking statutory and punitive damages and attorneys' fees. (ECF No. 1.) Contrary to Experian's attempts to confuse the issue, Plaintiffs never alleged that Experian kept the ARS accounts on their reports longer than the law permits. Rather, Plaintiffs alleged that Experian's conduct in "refreshing" and re-aging the "Date of Status" and the "First Reported" date for the delinquent accounts and removing prior account history created the appearance that the delinquent accounts and debts were newer than they actually were, which harmed Plaintiffs' creditworthiness. (ECF No. 1, ¶¶ 6, 24-29, 70-75.)

Although Experian has not produced any witnesses for depositions yet, both Plaintiffs have been deposed already. During their depositions, contrary to Experian's arguments, both Plaintiffs testified that they were damaged by Experian's failures to maintain information with maximum possible accuracy. Mr. Santos testified that when looking for a home loan, he understood that the re-aged debts on his credit report affected his ability to obtain a mortgage. PSOF, ¶ 19. Mr. Santos also testified that he was not able to get the size of a loan he wanted because of the re-aged debts. *Id.* And he testified that Wells Fargo denied him a credit card at the time Experian's files and reports contained the inaccurate ARS information. *Id.*

4

Similarly, Ms. Clements testified that when she tried to get a mortgage, the broker informed her there were negative accounts on her report. PSOF, ¶ 37. Ms. Clements also testified that she was unable to get a mortgage because there were negative accounts on her credit report, including the ARS accounts. *Id.*

Experian's own website confirms that its misconduct harmed Plaintiffs. PSOF, ¶ 45. Experian admits that "[t]he more recently the missed payment occurred, the greater that impact will be" on a consumer's credit report. *Id.* Thus, re-aging accounts to make missed payments or delinquent accounts appear to be more recent than they are harms and lowers a consumer's credit score, making it more difficult for the consumer to obtain credit. *Id.*

Experian nonetheless continued to allow the re-aging of Plaintiffs' debts even after Plaintiffs submitted their disputes. As documents produced by Experian show, Experian continued each month to alter the First Reported Date and Date of Status to be more current and removed previous account history. PSOF, ¶ 41. During this time, there were both "hard" and "soft" inquiries on Plaintiffs' credit reports, meaning that lenders were viewing inaccurate information about Plaintiffs that negatively affected their credit prospects. PSOF, ¶ 42.

## III. STANDARD

Summary judgment is only warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making the determination, "all justifiable inferences are to be drawn in [the non-movant's] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). In evaluating a motion for summary judgment, a court considers the evidence in the record, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving

5

party, and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux v. City of Atl.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (quotation marks and citations omitted). At the summary judgment stage, a court's task is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. To this end, if the non-moving party provides more than a mere "scintilla of evidence" demonstrating that "the jury could reasonably find for the plaintiff," it will defeat the motion. *Id.* at 252.

IV.  **ARGUMENT**

    A. **A "Credit Denial" Is Not An Element Of Plaintiffs' Claim For Statutory Damages Under § 1681n.**

Experian's primary argument for summary judgment is devoid of merit. It contends that Plaintiffs' claims under 15 U.S.C. § 1681n fail because Plaintiffs cannot demonstrate that they suffered a credit denial as a result of the inaccurate information in Experian's credit files and reports. (ECF No. 39 at 6-10.) Experian is wrong, on both the facts and the law.

As explained in the factual background section, Plaintiffs have already presented evidence that Experian's violations of the FCRA harmed them and that they were denied credit after creditors accessed Experian's reports containing inaccurate information concerning Plaintiffs' ARS accounts. PSOF, ¶¶ 19, 37, 42, 45. Thus, even if proof of a credit denial were required to maintain a claim under 15 U.S.C. § 1681n, Plaintiffs' testimony concerning credit denials and Experian's owns statements concerning the harm of a recently missed payment would satisfy such a burden at summary judgment. *See Rioux*, 520 F.3d at 1274 (holding that the court must consider "inferences reasonably drawn from the evidence in the light most favorable to the non-moving party, and must resolve all reasonable doubts about the facts in favor of the non-movant").

More importantly, though, Experian is clearly wrong on the law. It takes wild liberties in contending that proof of a credit denial is a required element of a claim under § 1681n. The text

of the statute and prevailing Supreme Court and Eleventh Circuit law squarely foreclose Experian's misguided argument.

First, the text of the statute.  The civil remedy provision of the FCRA, 15 U.S.C. § 1681n(a)—which applies to all claims under FCRA and is expressly invoked in Plaintiffs' complaint (ECF No. 1, ¶ 71)—provides that a ***willful*** violation of the statute entitles a consumer to "any actual damages sustained by the consumer as a result of the failure ***or damages of not less than $100 and not more than $1,000***," § 1681n(a)(1)(A) (emphasis added), as well as "such amount of punitive damages as the court may allow," § 1681n(a)(2).  The emphasized language of § 1681n(a)(1)(A)— damages of not less than $100 and not more than $1,000—unequivocally provides for statutory damages.

In construing this straightforward provision, the Supreme Court has held that "[i]f a violation is negligent, the affected consumer is entitled to actual damages. If willful, however, the consumer may have actual damages, or statutory damages ranging from $100 to $1,000, and even punitive damages." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) (internal citations omitted).  Thus, the Supreme Court recognized the distinction between allegations of negligence, which may require a showing of credit denial to establish "actual damages," on the one hand, and allegations of willful conduct, on the other, which entitle a consumer to statutory damages.  *Id.*

Likewise, the Eleventh Circuit has repeatedly held that § 1681n(a) "provides that plaintiffs may elect to receive actual damages *or* statutory damages" for willful violations of the FCRA. *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1313 (11th Cir. 2009) (emphasis in original); *accord Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1336 (11th Cir. 2015). Unsurprisingly, the Eleventh Circuit has reaffirmed this standard again and again with ***no mention*** of a credit-denial requirement because no such requirement exists.  *See Williams v. First Advantage LNS Screening Sols. Inc*, 947 F.3d 735, 745 (11th Cir. 2020) ("To establish a willful failure to comply with § 1681e(b), a plaintiff must show that the consumer reporting agency either

7

knowingly or recklessly violated the statute.") (citing *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017)); *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1302 (11th Cir. 2019) ("Under 15 U.S.C. § 1681n(a), any person who willfully fails to comply with any requirement imposed under this subchapter is liable to the affected consumer for actual, statutory, or punitive damages.") (citing *Collins*, 775 F.3d at 1336).

A plaintiff's right to seek statutory damages does not simply avoid the need to quantify damages. Courts in this Circuit, in keeping with the clear language of § 1681n, have held instead that such statutory and punitive damages are available "even when the plaintiff has suffered no actual damages." *Lawrence v. S. Florida Racing Ass'n*, LLC, 18-CV-24264-UU, 2019 WL 3890314, at *1 (S.D. Fla. June 28, 2019); *see also Hickman v. Experian Info. Sols., Inc.*, No. 1:17-CV-00388, 2019 WL 2306198, at *3 (N.D. Ga. Mar. 11, 2019) ("Even if a plaintiff cannot prove actual damages, a plaintiff can collect punitive damages if the plaintiff can prove that the defendant 'willfully' violated the FCRA by 'violat[ing] the terms of the Act with knowledge or reckless disregard for the law.'") (quoting *Collins*, 775 F.3d at 1336); *Lindsey v. Experian Info. Sols., Inc.*, No. 2:15-CV-02353-AKK, 2017 WL 412889, at *4 (N.D. Ala. Jan. 31, 2017) ("[Plaintiff] correctly notes . . . that he does not need actual damages to establish a willful violation of the FCRA.").

Experian, in an alarming disregard of its duty of candor to the Court, simply ignores the contrary, binding authorities that undercut its claim that Plaintiffs must show actual damages in the form of a credit denial as part of their *prima facie* case. In advancing this meritless claim, Experian seeks to sow confusion by relying on cases that either construe a prior version of the statute—which lacked the statutory damages provision at issue in this action—or address claims, usually asserted by *pro se* parties, that seek actual damages for a credit denial, not willful misconduct and statutory damages.

The only published Eleventh Circuit decision Experian cites for its position is *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). But that decision pre-

8

dates the 1996 amendment to the FCRA, which added the statutory damages provision for willful misconduct under which Plaintiffs now proceed:

> Originally, the FCRA provided actual and punitive damages for willful violations. In 1996, Congress amended this section, adding that victims of willful violations could receive 'any actual damages sustained by the consumer as a result of the failure or [statutory] damages of not less than $100 and not more than $1,000.' In addition, the FCRA still allows victims of willful violations to receive punitive damages.

*Harris*, 564 F.3d at 1306 (internal citations omitted). Indeed, one of the cases Experian cites, *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009), disregards *Cahlin* for this very reason. *Id.* at 708 ("Still other cases—the least helpful of all—predate the critical 1996 amendment.") (citing *Cahlin*).

Likewise, *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819 (11th Cir. 2009), does not support Experian's position, because the unpublished, non-precedential decision relies on the *Cahlin* decision, and there is no language indicating that the *pro se* plaintiff ever alleged willful misconduct. *Id.* at 825-26. Indeed, the court in *Ray* further relies on *Nagle v. Experian Info. Sols., Inc.*, 297 F.3d 1305, 1306 (11th Cir. 2002), where the jury specifically found that the defendant had acted negligently **but not** willfully.

Similarly, *Jackson v. Equifax Info. Servs., LLC*, 167 F. App'x 144, 146 (11th Cir. 2006), and *Enwonwu v. Trans Union, LLC*, 164 F. App'x 914, 918 (11th Cir. 2006), aside from being unpublished, non-precedential decisions, are of no use here, because they entirely rely on *Cahlin*, the pre-1996 decision, and the word "willful" appears nowhere in either opinion, suggesting that neither *pro se* plaintiff asserted a willful violation claim on appeal. The court's decision in *Librizzi v. Ocwen Loan Servicing, LLC*, 120 F. Supp. 3d 1368, 1375 (S.D. Fla. 2015), is inapplicable for the same reason: it involves the claims of a *pro se* plaintiff without any indication that a willful violation claim was asserted.

The host of district court decisions cited by Experian have no bearing on this case for the same reasons. Not a single one holds that a claim that both adequately alleges a *willful* violation of the FCRA and seeks statutory damages must also establish that a credit denial occurred. Instead, they generally involve the claims of *pro se* plaintiffs, findings that no substantive violation—let alone a willful violation—of the FCRA occurred because the plaintiffs failed to meet other requirements of the FCRA (such as alleging an inaccurate statement), and reliance on the unpublished and inapplicable Eleventh Circuit decisions discussed above.[3]

Similarly, in *Pagazani v. Equifax Info. Servs., LLC*, No. 15-CV-61467, 2016 WL 2997586 (S.D. Fla. May 25, 2016), a case that Experian represents as "dismissing willful violation claim because plaintiff failed to establish that an inaccuracy in his credit report cause the credit denial" (ECF No. 39 at 1), the court actually states that it *did not* address the plaintiff's claim for statutory damages because plaintiff's theory of the case did not amount to a FCRA violation at all:

> Pagazani also claims that Equifax's violations of the FCRA were willful, as governed by section 1681n(a)(2) of the FCRA. That provision permits an award of statutory and punitive damages if a CRA 'willfully fails to comply with any requirement' imposed by the Act. 15 U.S.C. § 1681n(a)(2). Willful misconduct under the FCRA

---

[3] *See Clark v. Trans Union, LLC*, No. 118-CV-05259, 2019 WL 3505446, at *2, *4 (N.D. Ga. June 5, 2019), *report and recommendation adopted*, No. 118-CV-05259, 2019 WL 5413874 (N.D. Ga. July 17, 2019) (citing *Ray* and *Librizzi*, without any discussion of the distinction between willful and negligent claims, and finding that the "Plaintiff's contention that Trans Union should have specifically reported 'discharged in bankruptcy' as opposed to 'included in bankruptcy' is thus without merit"); *Seay v. Trans Union, LLC*, No. 7:18-CV-204 (HL), 2019 WL 4773827, at *3-4 (M.D. Ga. Sept. 30, 2019) (no analysis distinguishing between willful and negligent claims under the FCRA, because the court immediately recognized the plaintiff failed to allege any inaccuracy at all); *Butler v. Equifax Info. Servs. LLC*, No. 3:17CV422-MCR-CJK, 2018 WL 5986534, at *1, *3 (N.D. Fla. Oct. 12, 2018), *report and recommendation adopted*, No. 3:17CV422-MCR-CJK, 2018 WL 5981841 (N.D. Fla. Nov. 14, 2018) (no discussion of willful vs. negligent claims, does not involve an inaccurate report of information, and the *pro se* plaintiff "does not (1) assert the credit reports contained inaccuracies; or (2) describe those inaccuracies with any specificity. Instead the complaint focuses on the defendants' failure to provide plaintiff with the documents he signed with creditors"); *Pettway v. Equifax Info. Servs., LLC*, No. CIV.A. 08-0618-KD-M, 2010 WL 653708, at *7 (S.D. Ala. Feb. 17, 2010) (no consideration of the distinction between willful and negligent claims because the the *pro se* plaintiff did not actually have credit reports from the defendants she was suing).

> encompasses both intentional and reckless violations of the law. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68-69 (2007). ***The Court need not address this argument further as it concludes that Equifax did not violate the FCRA under these facts***.

*Pagazani*, 2016 WL 2997586, at *4 n.7 (emphasis added). Experian thus cites no case that actually supports its untenable view of the § 1681n.

Apparently recognizing the incongruity between its position and the text of § 1681n, Experian claims that the substantive provisions of the FCRA that Plaintiffs allege Experian violated—e.g., §§ 1681e(b) and 1681i—are the source of the "causation" element requiring proof of a credit denial, regardless of the language of the civil remedy provision, § 1681n. (ECF No. 39 at 8.) But this argument makes no sense because nothing in the language of the FCRA's substantive provisions even hints at either a "causation" or "credit denial" element. The provisions simply prohibit the misconduct that Plaintiffs allege Experian engaged in. It is not surprising, therefore, that Experian cites no authority, aside from the inapplicable cases addressed above, to support its fanciful reading of these FCRA provisions.

Instead, Experian attempts to confuse the issue further by invoking a completely different line of authority concerning standing, not the requirements of an FCRA claim under § 1681n. But Experian does not seek summary judgment on standing grounds, and its apparent reliance on decisions concerning standing is clearly misplaced. Contrary to Experian's claims, Plaintiffs have not alleged mere that Experian's files and reports contain mere "technical inaccuracies." (ECF No. 39 at 6.) Instead, Plaintiffs have alleged—indeed, Experian's own statements prove, PSOF ¶ 45—that the reporting of delinquent accounts that appear more recent than they actually are harms the creditworthiness of Plaintiffs.

Moreover, Eleventh Circuit precedent forecloses a standing challenge here, which is presumably why Experian withdrew its misguided motion to dismiss that initially challenged Plaintiffs' standing. The Eleventh Circuit's decision in *Pedro v. Equifax, Inc.*, 868 F.3d 1275 (11th Cir. 2017), is decisive on this point. In that case, the court recognized that reporting inaccurate

11

information is a type of intangible harm contemplated by "both history and the judgment of Congress," and thus it is sufficient to establish constitutional standing. *Id.* at 1279 (quoting *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1549 (2016)); *see In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 634-35 (3d Cir. 2017) (alleged violation of customers' statutory rights under FCRA was a de facto injury that satisfied concreteness requirement for standing); *Alston v. Freedom Plus/Cross River*, No. CV TDC-17-0033, 2018 WL 770384, at *3 (D. Md. Feb. 7, 2018) (holding that FCRA's limitations on disclosure of credit reports are designed to protect consumers' concrete interest in privacy of reports and finding concrete injury because specific types of violations alleged by plaintiff actually harm the interest Congress sought to protect). The "harm" underlying Plaintiffs' FCRA claims "has a close relationship to the harm caused by the publication of defamatory information, which has long provided the basis for a lawsuit in English and American courts." *Pedro*, 868 F.3d 1280.

In line with this binding precedent, courts within this circuit have recognized that *Spokeo* instructs courts to look at the purpose of the statute and the purpose of the particular procedural requirement to determine whether the violation of the procedural requirement resulted in the kind of harm that the statute itself was designed to prevent. If so, such procedural violations confer standing. *See O'Donnell v. RCO Legal, P.S., Inc.*, No. 1:17-CV-02072-ELR, 2018 WL 1871946, at *3 (N.D. Ga. Mar. 22, 2018) (citing *Spokeo,* 136 S. Ct. at 1549-50).

Contrary to Experian's previous suggestion, *Spokeo*'s holding that "bare procedural violations" are insufficient to confer standing, 136 S. Ct. at 1550, does not help Experian here. Indeed, "[t]he [*Spokeo*] Court then gave examples of bare procedural violations in the FCRA context: (1) where a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, though the information itself is entirely accurate; and (2) an incorrect zip code on a consumer report." *O'Donnell*, 2018 WL 1871946, at *3 (citing *Spokeo*, 136 S. Ct. at 1550). Here, in contrast, the procedural violation alleged in the Plaintiffs'

12

complaint—and undisputed at this stage—is the re-aging of critical dates on Plaintiffs' credit reports. Experian is allowing HRRG to re-age the "First Reported" and "Date of Status" dates, and this is being accomplished by erasing all of the prior account history. (ECF No. 1, ¶¶ 17-36.) Erasing the prior account history causes third parties who review such credit reports to believe that a consumer's delinquency is more recent than it really is. (*Id.*) In addition, it will lower credit scores, because the FICO scoring models puts much more weight on recent delinquencies than they do older delinquencies. PSOF, ¶ 45. In short, the more recent the delinquency, the more it damages credit scores. *Id.* Consistently re-aging delinquent accounts and thereby increasing the damage to a consumer's credit score cannot seriously be considered a "bare" procedural violation. *See Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 WL 561336, at *4 (W.D. Ky. Feb. 10, 2017) ("Plaintiffs' allegations of lower credit scores, taken as true for the purposes of [defendant's] motion for judgment on the pleadings, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III.").

To the contrary, as the Eleventh Circuit recognized in *Pedro*, 868 F.3d at 1280, and numerous other courts have held, the reporting of inaccurate information on a consumer's credit report creates a constitutionally sufficient harm, which has a close relationship to the interest Congress intended to protect with the FCRA. "[O]ne of the primary objectives of the FCRA is to promote 'fair and accurate' reporting of consumer credit information." *Foster v. Santander Consumer USA, Inc.*, No. 1:18-CV-4146-WMR-JFK, 2019 WL 3490463, at *5 (N.D. Ga. May 29, 2019) (citing 15 U.S.C. § 1681(a); *Safeco Ins. Co.*, 551 U.S. at 50). "As a result, the types of harms the FCRA seeks to remedy include, *inter alia*, the reporting of inaccurate information, which is sufficiently concrete for a plaintiff to meet his or her burden of establishing Article III standing." *Foster v. Santander Consumer USA, Inc.*, No. 1:18-CV-4146-WMR-JFK, 2019 WL 3490463, at *5 (N.D. Ga. May 29, 2019) (citing *Spokeo, Inc.*, 136 S. Ct. at 1550). Experian, therefore, cannot

13

rely on authorities concerning standing to support its misguided argument concerning "actual damages."

Experian's argument for summary judgment is simply inconsistent with binding precedent and the text of the applicable statute. Accordingly, its motion should be denied.

### B. Plaintiffs Adequately Notified Experian of Their Disputes Under § 1681i.

In addition to its misguided argument concerning "actual damages," Experian also seeks partial summary judgment as to the aspect of Plaintiffs § 1681n claim concerning Experian's violation of § 1681i.[4] This argument also lacks merit. At a minimum, the summary judgment evidence shows that a genuine dispute of fact exists regarding the adequacy of the notice Plaintiffs provided to Experian concerning the inaccurate information in their reports and files.

Under 15 U.S.C. §1681i(a)(1)(A), consumers may dispute inaccurate information in a credit reporting agency's file directly with the agency. Once the credit reporting agency receives notice of the dispute, it must conduct a good faith, reasonable investigation. *Id.* And once the information is investigated, it must delete or modify the information as appropriate, pursuant to 15 U.S.C. §1681i(a)(5).

---

[4] Experian's motion also includes a sneaky footnote which appears to challenge a different aspect of Plaintiffs' § 1681n claim alleging a violation of § 1681e(b). (ECF No. 39 at 10 n.4.) But it is clearly insufficient to present a request for summary judgment as to a claim exclusively in a footnote. *Asociacion de Empleados del Area Canalera (ASEDAC) v. Panama Canal Comm'n*, 453 F.3d 1309, 1316 n.7 (11th Cir. 2006) (holding that an "argument is waived because it appears only in a footnote in their initial brief"); *Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen*, 815 F.2d 1435, 1446 n.16 (11th Cir. 1987) ("In this case, the single footnote in the [appellant's] initial brief did not sufficiently preserve the ... issue."). In any event, Experian's hidden argument—that the inaccurate "first reported" date cannot serve as a basis for a § 1681e(b) violation because it was not furnished to a third party—lacks merit, because the reports provided to Plaintiffs show that Experian's inaccurate information was provided to third parties. PSOF, ¶ 42. To the extent that Experian claims, based on information that it has not disclosed in discovery yet, that certain information in its files was not shared with third parties, Plaintiffs request additional time under Fed. R. Civ. P. 56(d) to conduct discovery as to Experian's claim.

Plaintiffs complied with the notification requirement of § 1681i by sending Experian letters stating that the ARS accounts—which Plaintiffs specifically identified with account numbers—were "not accurate," and that the accounts had been "re-aged." (ECF Nos. 40-2; 40-8.) Experian claims that it did not violate § 1681i because Plaintiffs did not adequately notify it that the information concerning Plaintiffs' ARS accounts was inaccurate. (ECF No. 39 at 10.) Experian's argument is difficult to understand, however, given that Plaintiffs unequivocally stated that the information as to the *specific* ARS accounts was "inaccurate."

Still, seeking again to create an issue where none exists, Experian claims that Plaintiffs' notice was inadequate because "re-aging" is a "term of art" under the FCRA. (ECF No. 39 at 12.) The critical problem for Experian is that nothing supports its claim that "re-aging" is a "term of art" under the FCRA. It cites no evidence or authority to establish this proposition. Indeed, "re-aging" is not defined anywhere in the FCRA statutory scheme. That should be sufficient to foreclose Experian's claim.

It nonetheless cites a few decisions in which courts have used the term "re-aging" to mean modifying the date of a delinquent account to extend the amount of time for which it may be included on a credit report. (ECF No. 39 at 12.) Of course, that some courts have understood "re-aging" to have that meaning hardly establishes that it is a "term of art" accepted across the entire industry. If anything, the decisions that Experian cites actually undercut its claim, because they indicate that "re-aging" encompasses modifying a delinquency-related date on an account—exactly what occurred here. It is also notable that Experian does not provide a declaration from an employee attempting to establish that "re-aging" is a "term of art" with just one, unequivocal meaning.

In fact, the limited evidence produced thus far in discovery further undermines Experian's "term-of-art" claim. The evidence is an "ACDV" form, which Experian creates when it receives a dispute from a consumer and contains data and information on a consumer that is already "on

15

profile" with Experian. PSOF, ¶ 46. The other half of the ACDV, which Experian sends to the data furnisher, is blank, allowing the data furnisher to change, edit, modify, delete or continue reporting the information in dispute. *Id.* The ACDV that Experian prepared and sent to HRRG regarding the Plaintiff Clements's dispute did not indicate that the dispute concerned whether the account was more than seven years old. *Id.* Instead, it simply reported that Plaintiff Clements claimed that the ARS account included "inaccurate information." *Id.* Thus, its own documents demonstrate that it does not understand "re-aging" to exclusively mean changing the date on an account to include it in a report for more time than the law permits. In addition, the term "re-aging" has been closely associated with Experian's "first reported" date and "date of status" since at least August 14, 2012, when Experian was sued for the same exact issue. *See Toliver v. Experian Info. Solutions, Inc.*, 973 F. Supp. 2d 707, 732 (S.D. Tex. 2013).

Given this evidence and Experian's prior litigation involving "re-aging," there exists, at a minimum, a genuine dispute of fact as to the adequacy of Plaintiffs' dispute notice to Experian under § 1681i.

### C. In The Alternative, The Court Should Permit Plaintiffs To Complete Discovery Before Ruling On Experian's Motion.

Because Experian's motion is premised on a clearly inaccurate view of the law, it should be denied outright. In the alternative, however, Plaintiffs have submitted a declaration under Fed. R. Civ. P. 56(d), attached as exhibit A to this response, requesting additional time to conduct discovery, which is still in its early stages. Since Experian has not even begun to meaningfully participate in discovery, it would be inappropriate to grant Experian summary judgment without giving Plaintiffs an opportunity to conduct discovery. *See Fontell v. Hassett*, 10-CV-01472-AW, 2011 WL 4632579 (D. Md. Oct. 3, 2011) (holding that courts are particularly hesitant to grant summary judgment where "the party opposing summary judgment is attempting to obtain necessary discovery of information possessed only by her opponent") (quoting *Ingle v. Yelton*, 439

F.3d 191, 196-97 (4th Cir. 2006)); *Minter v. Wells Fargo Bank, N.A.*, 593 F. Supp. 2d 788, 792 (D. Md. 2009)("As a general rule, summary judgment is not appropriate prior to the completion of discovery.") (internal quotation marks omitted).

## V. CONCLUSION

Experian plainly fails to meet the standard for summary judgment. Its motion rests on its demonstrably inaccurate claim that a "credit denial" is necessary for a *prima facie* case under 15 U.S.C. § 1681n(a), even though Plaintiffs only seek statutory and punitive damages for Experian's willful misconduct. That is not the law, and thus its argument must be rejected. Likewise, its motion for partial summary judgment as to the aspect of Plaintiffs' claim premised on a § 1681i violation fails, because a genuine dispute of fact exists as to the adequacy of the dispute notice Plaintiffs sent to Experian. Experian's motion should be denied in its entirety.

In the alternative, Plaintiffs request that the Court permit Plaintiffs to complete discovery under Fed. R. Civ. P. 56(d) and deny Experian's motion without prejudice to refiling it at the conclusion of discovery.

## **Request for Oral Argument**

Given the importance of the issues presented herein, Plaintiffs respectfully request oral argument on this motion. Plaintiffs anticipate that a one-hour hearing should be sufficient to address this motion.

| | |
|---|---|
| Dated:  March 20, 2020 | **PODHURST ORSECK, P.A.**<br><br>*/s/ Peter Prieto*<br>Peter Prieto (FBN 501492)<br>pprieto@podhurst.com<br>Matthew P. Weinshall (FBN 84783)<br>mweinshall@podhurst.com<br>Alissa Del Riego (FBN 99742)<br>adelriego@podhurst.com<br>SunTrust International Center<br>One S.E. Third Avenue, Suite 2300<br>Miami, Florida 33131<br><br>Roland Tellis<br>rtellis@baronbudd.com<br>Jonas P. Mann<br>jmann@barobudd.com<br>**BARON & BUDD, P.C.**<br>15910 Ventura Boulevard<br>Suite 1600<br>Encino, California 91436<br><br>Dennis McCarty<br>dennismccartylaw@gmail.com<br>Jonathan Raburn<br>jonathan@geauxlaw.com<br>**McCARTHY & RABURN PLLC**<br>2931 Ridge Road, Suite 101 #504<br>Rockwall, Texas 75032<br><br>Attorneys for Plaintiffs OMAR SANTOS and AMANDA CLEMENTS on behalf of themselves and all others similarly situated |

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on March 20, 2020, and the foregoing document is being served this day on all counsel or parties of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

/s/ Peter Prieto
Peter Prieto