UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No 1:19-cv-23084-KMW

OMAR SANTOS and AMANDA CLEMENTS on behalf of themselves and all others similarly situated,

    Plaintiffs,

vs.

HEALTHCARE REVENUE RECOVERY GROUP, LLC d/b/a ARS ACCOUNT RESOLUTION SERVICES and EXPERIAN INFORMATION SOLUTIONS, INC.,

    Defendants.
_____/

**DEFENDANT HEALTHCARE REVENUE RECOVERY GROUP, LLC d/b/a ARS ACCOUNT RESOLUTION SERVICES' MOTION FOR SUMMARY JUDGMENT WITH SUPPORTING MEMORANDUM OF LAW**

COMES NOW Defendant, Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services (hereinafter "ARS"), by and through its undersigned counsel, and files this Motion for Summary Judgment with Supporting Memorandum of Law in conjunction with its Statement of Material Facts ("SOMF") **[ECF 60]**, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, and in support thereof states as follows:

    **I.    INTRODUCTION**

Plaintiffs, Omar Santos and Amanda Clements (hereinafter "Plaintiffs") instituted the above-styled class action alleging willful and knowing violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. Sections 1681e, 1681i and 1681s-2(b). Notably, despite the allegations against "All Defendants" regarding violations of Section 1681e and Section 1681i, those subsections impose duties on credit reporting agencies ("CRAs") only and not on data

1

furnishers such as ARS.  Specifically, Plaintiffs' Complaint alleges that ARS "deletes previous account histories" **[ECF 1, ¶20]**, intentionally "alters 'Date of Status' and/or 'First Reported' dates"[1] and "furnishes such false information to Experian" **[ECF 1, ¶21]**, improperly "re-ages or re-dates delinquency dates" on consumers' accounts **[ECF 1, ¶24]**, and that by re-aging the dates ARS makes it appear as if adverse events occurred more recently than they actually did **[ECF 1, ¶25]**, that ARS willfully and intentionally fails to "properly conduct a good faith investigation into consumer disputes" **[ECF 1, ¶26]**, that not only is ARS "re-aging" the account information when it furnishes data but ARS is further re-aging account information with every consumer dispute **[ECF 1, ¶27]**, that ARS is falsely reporting the character and/or legal status of the alleged debts by re-aging the accounts and is providing credit information that it knows or should know is inaccurate or misleading **[ECF 1, ¶28]**.

These claims arise from a written dispute that each Plaintiff submitted to Experian in July 2017, which stated, *"I think the above listed account is not accurate, I think it has been re-aged. Please investigate and fix or delete."* **[ECF 40-2 and ECF 40-8]**.  Although not mentioned in the dispute letters to Experian, the alleged "re-aging" pertained to the two (2) data fields, namely "Date of Status" and "First Reported Date."  Despite the allegations that they disputed the "Date of Status" and "First Reported Date" in their July 2017 dispute letters to Experian **[DE 1, ¶39 & ¶45]**, the letters which speak for themselves, contain references only to the Plaintiffs' thoughts that the accounts were "re-aged" with absolutely no allusion to either the "Date of Status" or "First Reported Date" terms. **[ECF 40-2 & ECF 40-8]**  Neither Plaintiff submitted any dispute directly

---

[1] The terms "First Reported Date" and "Reported Since" are used interchangeably by Experian in its reports; for the purposes of this Motion, the term "First Reported Date" includes and incorporates the term "Reported Since."

2

to ARS regarding the claimed "re-aging" and the only disputes at issue in this case are those that Plaintiffs sent to Experian in late July of 2017.

The undisputed record refutes the Plaintiffs' claims however, demonstrating that not only did ARS reasonably investigate the Clements' Dispute (the only dispute it was notified of)[1] by confirming that Clements was the debtor on the listed accounts and that the data reported by ARS to the credit reporting agencies was accurate, ARS never furnished any data to Experian regarding "Date of Status" or "First Reported Date." Through discovery, the parties have determined that both data fields appear on only one Experian report called a "consumer disclosure," which is provided by Experian to a consumer only, and not to any third parties and not for any determinations of creditworthiness, so ARS could not have inaccurately furnished data in either of those fields. **[SOMF, ¶17-21]** The Plaintiffs have also failed to create any genuine issue as to whether ARS's dispute investigation procedure was reasonable under the FCRA.

Accordingly, ARS is entitled to summary judgment as to the entirety of Plaintiffs' Class Action Complaint.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S.

---

[1] ARS never received any dispute or ACDV associated with Santos' July 27, 2017 dispute letter; upon receipt of Santos' letter, Experian determined that the Social Security Number listed in the letter did not match the Social Security Number in Experian's files and sent Santos a letter requesting he correct the error; there is no record of whether Santos did so or responded at all [DE 40, ¶16-18].

317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)(1)(A)). Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

The court must view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party and resolve all doubts about the facts in favor of the non-moving party. Comer v. City of Palm Bay, Fla., 265 F.3d 1186, 1192 (11th Cir. 2001). The court, however, may not consider "facts" unless they are unopposed or supported by citations to admissible evidence. Fed. R. Civ. P. 56(c).

After the movant has met its burden under Rule 56(c), the burden shifts to the non- moving party to establish that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585 (1986). Although all reasonable inferences are to be drawn in favor of the non-moving party, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), the plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. The non-moving party may not rest upon the mere allegations or denials of the adverse party's pleadings, but instead must come forward with "specific facts showing that there is a *genuine issue for trial*." Id. at 587 (citing Fed. R. Civ. P. 56(e)). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also* Garczynski v. Bradshaw, 575 F.3d 1158, 1165 (11th Cir. 2009) (non-moving party must produce substantial evidence to defeat a motion for summary judgment); Stewart v Booker T. Washington Ins., 232 F.3d 844, 851 (11th Cir. 2000) (bare and self-serving allegation where plaintiff had no personal knowledge was inadequate to carry plaintiff's burden at summary judgment).

There is "no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." Resolution Tr. Corp. v Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995). If the non-moving party raises an argument, it must also cite to evidence in the record and the court need not independently consider record evidence. Fed. R. Civ. P. 56(c)(1), (3). The evidence provided to counter a motion for summary judgment must not consist of mere conclusions and unsupported statements. Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). If the non-moving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Under Section 1681s-2(b) of the FCRA, the plaintiff bears the burden of proving that an investigation into a dispute was not reasonable. Arianas v. LVNV Funding LLC, 132 F. Supp. 3d 1322, 1327 (M.D. Fla. 2015). "A furnisher of information is entitled to summary judgment if it conducts a reasonable investigation based upon the information regarding the dispute provided by the credit reporting agency, concludes that there is no evidence its information is inaccurate, and accurately reports its findings to the credit reporting agencies." Stroud v. Bank of Am., 886 F. Supp. 2d 1308, 1313 (S.D. Fla. 2012).

### III. MEMORANDUM OF LAW

#### A. Plaintiffs cannot establish a violation of section 1681s-2(b) by ARS

The Plaintiffs have failed to create any genuine issue as to the reasonableness of ARS's investigation, or the accuracy of the information furnished by ARS to the credit reporting agencies ("CRAs"), including Experian. The Plaintiffs' allegations against ARS contend that by "re-aging" Plaintiffs' account information, ARS "knowingly" reported false or inaccurate information, and

5

that ARS "failed to conduct an appropriate investigation into the accuracy of information following a dispute initiated by Plaintiffs and class members, as required by the FCRA." **[ECF 1, ¶70-75].**

"Re-aging" within the FCRA is modifying a date of last activity on an account to effectively extend the reporting date and cause the negative effect on a consumer's credit score to last longer. *See*, Gannon v. IC Sys., Case No. 09-60302-CIV-COHN, 2009 U.S. Dist. LEXIS 59242 (S.D. Fla. Jul. 13, 2009). Here, however, Plaintiffs claim that ARS furnished inaccurate data with regard to two (2) specific dates, the "Date of Status" and the "First Reported Date," which are dates that are unique to Experian's own File One system, and that ARS does not maintain in any of its files or account information.

> The relevant FCRA subsection, Duty of Information upon Notice of Dispute, provides:
>
> (1) *In general.* After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall
>
> > (A) conduct an investigation with respect to the disputed information:
> > (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> > (C) report the results of the investigation to the consumer reporting agency;
> > (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.
> > (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate based on the results of the reinvestigation promptly
> > > (i) modify that item of information
> > > (ii) delete that item of information
> > > (iii) permanently block the reporting of that item of information
> >
> > . . . 15 U.S.C. §1681s-2(b)

Essentially, this subsection requires a furnisher of information, such as ARS, that receives a notice of dispute to conduct an investigation with respect to the disputed information it receives

from the CRA, review all relevant information provided by the CRA, including the consumer's dispute letter if provided, and timely report the results of the investigation to the CRA. 15 U.S.C. § 1681s-2(b)(1)(A)-(E). Plaintiffs' Complaint alleges that ARS willfully or knowingly furnished false information and failed to comply with its statutory duties, which the Plaintiffs allege entitles them to damages for both negligent and willful noncompliance with the FCRA under Sections 1681n and 1681o. Significantly, however, the only damages available under Section 1681o are actual damages, which Plaintiffs are not seeking in their Complaint, so ARS contends that it cannot be liable for negligent noncompliance with the FCRA as Plaintiffs have effectively eliminated any claim for damages under this subsection.

For the reasons detailed below, none of Plaintiffs' claims are supported by the undisputed record evidence and ARS is entitled to judgment in its favor as a matter of law.

1. *ARS furnished accurate account information to the credit reporting agencies*

As an initial matter, Plaintiffs' class action Complaint is devoid of any alleged violation by ARS of FCRA Section 1681s-2(a) ("Duty of Furnishers of Information to Provide Accurate Information"), and contains only allegations of violations of Section 1681s-2(b) ("Duties of Furnishers of Information upon Notice of Dispute"); from this omission, ARS contends that Plaintiffs do not assert that ARS violated Section 1681s-2(a) because Plaintiffs know that no evidence exists to support such a claim.

The record evidence shows that ARS furnished accurate data to the credit reporting agencies ("CRAs"), including Experian, through the Metro 2 standardized format as to all accounts of both Plaintiffs and did not "re-age" any of the accounts. "Metro 2" is a file layout/format by which account data is supplied to the CRAs. **[SOMF, ¶4].** ARS furnishes data from its account files to the CRAs, including Experian, via the Metro 2 format. There is no data field in the Metro

7

2 format for "First Reported Date" as it is not information that ARS includes in the data furnished to Experian. **[SOMF, ¶5, ¶19]**. Further, ARS does not remove account history from any account it reports to Experian and it is impossible for ARS to delete data furnished through the Metro 2 file format. **[SOMF, ¶6]**. ARS accounts in dispute are marked "Disputed". **[SOMF, ¶7].** The record evidence, including the testimony of ARS's representative, demonstrates that ARS furnished accurate data to all CRAs, including Experian, via the Metro 2 format as to all the accounts of both Plaintiff Santos and Plaintiff Clements.

Moreover, according to Experian, the two data fields at issue in this action, "Date of Status" and "First Reported Date", appear on only one Experian-generated report – the "consumer disclosure", which is provided only to a consumer upon their request, and is not disclosed to any third parties, so it has no impact on decisions with regard to eligibility for credit. **[SOMF, ¶21, ¶25, & ¶31]** Neither "Date of Status" nor "First Reported Date" is a data field in the Metro 2 format, by which ARS furnishes account information to Experian, **[SOMF, ¶17]** or in the e-OSCAR platform, by which ARS processed the Clements ACDV from Experian. **[SOMF, ¶18]**

When ARS became an Experian subscriber in January 2017, Experian invoked a processing rule ("Experian Rule") on the ARS accounts in its system that displayed only the "current" month in the account history, even though ARS reported previous months' account histories. **[SOMF, ¶27-29, ¶38]** The particular Experian Rule that displays the current month only is available on accounts of collection agency data furnishers such as ARS. **[SOMF, ¶30]** In the industry, the status of a collection account, as reflected on Experian reports, is always "collection", and with regard to such accounts, the scoring models for creditworthiness determinations consider only the "Open Date", which indicates how long an account has been in collection status. **[SOMF, ¶31 & ¶36]** Because collection accounts are aged based on only the "Open Date" data field, and not the

8

"Date of Status" or "First Reported Date", the Experian Rule was turned on to keep the Experian system from entering the identical "collection" status every month on the ARS collection accounts. **[SOMF, ¶35 & ¶37]**

The ARS collection accounts in Experian's File One system, including Plaintiffs' accounts, were impacted only by the "Open Date", which never changed (nor did the end date after which the subject accounts would no longer be reported), so the "Date of Status" on the Experian consumer disclosure, which updated to the current month, was not inaccurate as to how long the accounts were in collection status and was essentially "irrelevant" to any decisions as to eligibility for credit. **[SOMF, ¶¶35-36]**  The "Date of Status" is calculated by Experian and is not furnished by a data furnisher like ARS, does not affect a consumer's credit score, is not used in credit scoring, and appears only on consumer disclosures that are provided to consumers at their request, and not to third party creditors. **[SOMF, ¶39]**

Courts have consistently declined to hold a furnisher liable under the FCRA where the plaintiff fails to provide any evidence that the information reported by the furnisher was actually inaccurate.  See Arianas v. LVNV Funding LLC, 132 F. Supp. 3d 1322 (M.D. Fla. 2015) (holding that the plaintiff's "unsupported assertion he paid off the debts does not undermine the reasonableness of [the furnisher's] investigation."); Stroud v. Bank of Amer., 886 F.Supp.2d 1308, 1314 (S.D. Fla. 2012) (Goodman, J.) ("[The plaintiff] has failed to provide any evidence, as opposed to merely his own allegations or hunches or theories, that the investigation was unreasonable or that [the furnisher] reported any inaccurate information.").

Here, Plaintiffs cannot show by any record evidence that any data furnished by ARS to Experian was actually inaccurate, including the "Date of Status", "First Reported Date", and "Open Date." Other than their own baseless suppositions and conclusions, Plaintiffs can present

no record evidence to support their baseless claim that their collection accounts, or anyone else's, were "re-aged" by ARS. Nor can Plaintiffs demonstrate that ARS reported false or inaccurate information to any CRA, including Experian. The Plaintiffs present nothing more than their own unsupported assertions that ARS "knowingly reported false and inaccurate information" by allegedly "re-aging" their accounts. **[ECF 1, ¶70]**

The undisputed record evidence completely refutes Plaintiffs' unfounded claims, however, because the data fields of "Date of Status" and "First Reported Date" do not even exist in the Metro 2 format utilized by ARS to furnish data to the CRAs, ARS could not have reported those data fields accurately or inaccurately. Additionally, Plaintiffs cannot show that the "Date of Status" and "First Reported Date" data fields are referenced in their disputes to Experian or were included in the ACDV that Experian submitted to ARS via the e-OSCAR platform because neither data field is included in the e-OSCAR platform.

With regard to how Experian processed the data furnished by ARS, the undisputed record shows that ARS had nothing to do with the original invocation of the Experian Rule that displayed only the current month in the account history of the ARS accounts, that ARS was not consulted regarding the Experian Rule on the ARS accounts at any time, and that ARS was not involved in the decision to "turn off" the Experian Rule as to the ARS accounts in September of 2018. All actions pertaining to the Experian Rule were made by Experian only with no input from or advance notice to ARS. ARS had absolutely no involvement in the determination by Experian as to how it processed the data ARS furnished on it accounts or how it populated the data fields in its File One system. Further, ARS did not "alter" or "delete" any data it furnished to any CRA, as alleged and did not otherwise manipulate or "re-age" any account information of either Plaintiff.

Consequently, ARS is entitled to judgment in its favor as a matter of law on Plaintiffs' claims that ARS furnished false or inaccurate information.

### 2. *ARS conducted a reasonable investigation of the Clements Dispute*

The Plaintiffs claim that if ARS had "conducted a reasonable investigation, it should have discovered the inaccurate data." **[ECF 1, ¶68]** The record however, is devoid of any evidence that ARS received any dispute by Plaintiff Santos either directly or through the e-OSCAR platform, so Plaintiffs cannot establish an FCRA Section 1681s-2(b) violation by ARS as to Plaintiff Santos. With regard to Plaintiff Clements, the undisputed record demonstrates that ARS complied with its duties under Section 1681s-2(b), by reasonably investigating the Clements ACDV (the only dispute it received from Experian at issue in this case), and accurately reporting its findings to Experian. *See* Green v. RBS Nat. Bank, 288 Fed. Appx. 641, 643 (11th Cir. 2008) (furnisher "complied with the letter of the law" by investigating dispute and accurately reporting its findings); *see also* Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1302 (11th Cir. 2016) (applying a "reasonableness" standard to investigations under section 1681s-2(b)). This standard is procedural and not substantive. Arianas v. LVNV Funding LLC, 132 F. Supp. 3d 1322, 1327 (M.D. Fla. 2015). Therefore, an investigation that is unfavorable to the consumer is not necessarily unreasonable, even if the results of the investigation turn out to be inaccurate. Bauer v. Target Corp., 8:12-CV-00978-AEP, 2013 U.S. Dist. LEXIS 201316, *14 (M.D. Fla. June 19, 2013) (slip copy).

The question of reasonableness varies based on the individual circumstances of the case and depends in part on the status of the furnisher and the quality of the available documentation. Hinkle, 827 F.3d at 1302. It is the plaintiff's burden to prove that the investigation was not reasonable. Stroud v. Bank of Am., 886 F. Supp. 2d 1308, 1314 (S.D. Fla. 2012). There is no genuine dispute as to the reasonableness of ARS's investigation procedures. Upon receiving the

11

Experian ACDV regarding the Clements Dispute, ARS reviewed the dispute and any attached documentation, including Clements' July 26, 2017 Letter to Experian. **[SOMF, ¶14]**. ARS responded that the dispute was not "specific", and that both the "ID" and the "account info" were verified. **[SOMF, ¶14]**. Therefore, ARS conducted a reasonable investigation of the Clements Dispute and timely responded to the ACDV from Experian.

Plaintiffs' allegations appear to suggest that ARS was somehow responsible for the allegedly inaccurate "Date of Status" and/or "First Reported Date" information on the Experian consumer disclosures despite the fact that both data fields are confined to Experian's internal File One system and the reports generated therefrom by Experian, to which ARS never had and continues to have absolutely no access. Specifically, Plaintiffs allege in the Complaint that, "If HRRG would have *[sic]* conducted a reasonable investigation, it should have discovered the inaccurate data." **[DE 1, ¶68]**. The record evidence demonstrates, however, that the allegedly "inaccurate data" in the form of "Date of Status" and "First Reported Date" was not within ARS's files but was data controlled exclusively by Experian.

Whether an investigation is reasonable depends in large part on "the extent and detail of information the furnisher obtained from the [credit reporting agency] when the furnisher received notice of the dispute." Bauer v. Target Corp., 2013 U.S. Dist. LEXIS 201316, at *20. The undisputed record here contains no evidence to suggest that ARS did not reasonably investigate the ACDV regarding the Clements Dispute, verify Clements' identity, and accurately report its findings to Experian. Further, ARS did not receive an ACDV from Experian with regard to the Santos Dispute, as Experian instead notified Santos that the Social Security number in the letter did not match its file information, and Experian received no response from him. **[DE 40, ¶16-18]**

Moreover, the procedure for responding to the ACDV that ARS received from Experian on the Clements Dispute was limited to ARS's use of the e-OSCAR platform, which is completely separate from and has nothing to do with any of the data fields maintained by Experian's internal File One system or included on Experian's consumer disclosures, such as "Date of Status" and "First Reported Date".  ARS could only review its own files and information available to ARS to investigate the ACDV regarding the Clements Dispute as ARS has never had any access to Experian's system.  Neither "Date of Status" nor "First Reported Date" exist in ARS's system, in the Metro 2 format or in the e-OSCAR platform. After conducting a reasonable investigation, ARS correctly responded to the ACDV with its finding that the Clements account information was verified. The record is devoid of any evidence that the information in ARS's account files regarding the Clements accounts was inaccurate, or that ARS reported inaccurate data to Experian.

Although Section 1681s-2(b) obligates a furnisher to delete information found to be incomplete or inaccurate during its investigation and to modify, delete, or block disputed information that the furnisher cannot verify, 15 U.S.C. § 1681s-2(b)(1)(E), ARS was not required to perform either action in response to the ACDV of the Clements Dispute because its investigation did not identify any incomplete or inaccurate information. Rather, the investigation verified that Plaintiff Clements owed a balance. Accordingly, ARS fully complied with Section 1681s-2(b) and Plaintiffs cannot satisfy their burden of proving that ARS's investigation of the Clements Dispute was unreasonable.

The record evidence demonstrates that there is no genuine dispute that ARS complied with its duty to investigate the Clements Dispute. Because the undisputed record shows that no dispute by Plaintiff Santos was ever submitted to ARS and that ARS's investigation of the Clements Dispute was reasonable, ARS is entitled to judgment in its favor as a matter of law.

### 3. *Plaintiffs cannot establish a willful violation of Section 1681s-2(b)*

The Plaintiffs' failure to produce any evidence of a negligent FCRA violation precludes a finding that ARS willfully violated the statute. "[I]n the context of civil liability under the FCRA, a willful violation includes an action that is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Bauer v. Target Corp., 8:12-CV-00978-AEP, 2013 U.S. Dist. LEXIS 201316, *11 (M.D. Fla. June 19, 2013) (*citing* Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 69 (2007)).

Additionally, damages for a willful violation of the FCRA "may be warranted . . . where an FCRA entity institutes a policy or performs an action in 'reckless disregard' of a consumer's rights under the FCRA." Rambarran v. Bank of Amer., N.A., 609 F. Supp. 2d 1253, 1270 (S.D. Fla. 2009). The Plaintiffs have failed to meet this standard as they have not shown that ARS committed any violation at all in furnishing data to Experian or in investigating the Clements ACDV from Experian, much less took an action in "reckless disregard" of either Plaintiff's rights, or ran a risk of violation that was substantially greater than the risk run by a careless reading of the statute. Rambarren, 609 F. Supp. 2d at 1270; Bauer, 2013 U.S. Dist. LEXIS 201316 at *11.

On the contrary, ARS's investigation of the Clements ACDV it received from Experian was objectively reasonable and there is absolutely no record evidence to support Plaintiffs' claims that ARS "should have" discovered the allegedly inaccurate data in its investigation, that ARS reported inaccurate information to any CRA, or furnished any data that allegedly "re-aged" Plaintiffs' accounts.

Even if the Plaintiffs could prove that the investigation of the Clements Dispute was inaccurate, it would not support the claim of a willful violation in light of the substantial evidence

14

that the investigation was procedurally reasonable. *See* Bauer, 2013 U.S. Dist. LEXIS 201316 at *14 (noting that an investigation result that turns out to be inaccurate does not render the investigation unreasonable).

As Plaintiffs have not identified any evidence to suggest that ARS either negligently or willfully "re-aged" their accounts or that ARS's investigation of the Clements Dispute was unreasonable, Plaintiffs cannot establish entitlement to actual, statutory, or punitive damages under the FCRA and ARS is entitled to summary judgment on Plaintiff's claims.

### B. Plaintiffs are barred from recovery under the FCRA because they have failed to establish that ARS caused them any compensable damages

"[T]he failure of an FCRA plaintiff 'to produce evidence of damage resulting from an FCRA violation mandates summary judgment." Rambarran v. Bank of Amer., N.A., 609 F. Supp. 2d 1253, 1263 (S.D. Fla. 2009) (quoting Nagle v. Experian Info. Solutions, Inc., 297 F.3d 1305, 1307 (11th Cir. 2002)). The plaintiff bears the burden of showing alleged damages were caused by the defendant's violations of the FCRA. Hunter v. ADP Screening & Selection Servs., Inc., Case No.6:15-CV-845-Orl-31-TBS, 2016 U.S. Dist. LEXIS 127149, *8 (M.D. Fla. Sept. 19, 2016) (*citing* Jackson v. Equifax Info. Servs, LLC, 167 Fed. App'x. 144, 146 (11th Cir. 2006)). Further, to prove a willful violation a consumer must prove that the furnisher either knowingly or recklessly violated the requirements of the act. Levine v. World Fin. Network Nat'l Bank, 554 Fed. 3d 1314, 1318 (11th Cir. 2009). Here, Plaintiffs cannot demonstrate a single negligent or willful violation of the FCRA by ARS.

Although Plaintiffs seek only statutory and punitive damages under the FCRA, with no claim for actual damages, Plaintiffs have failed to create any genuine issue as to whether ARS's alleged failure to comply with section 1681s-2(b) resulted in any damages under Section 1681n for "willful noncompliance" or Section 1681o for "negligent noncompliance". Setting aside the

fact that Plaintiffs' decision not to pursue actual damages effectively waives their claim against ARS under Section 1681o, which provides *only* for actual damages, the undisputed evidence shows that neither the "Date of Status" nor the "First Reported Date" contained in the Experian consumer disclosure has any impact on a consumer's credit score or is used in credit scoring. **[SOMF, ¶39]** There is no record evidence that Plaintiff Santos was ever denied credit or received less favorable credit terms because of any inaccurate information on his credit report. **[DE 40, ¶19-27]**. Likewise, the undisputed record demonstrates that Plaintiff Clements was never denied credit and in fact, did not apply for credit in the two (2) years before this lawsuit was filed. **[DE 40, ¶37-40]**. Without any evidence of credit denials or unfavorable credit terms, Plaintiffs have failed to meet their burden of establishing entitlement to damages under the FCRA.

Further, Plaintiffs have failed to demonstrate any "knowing" or "reckless" conduct by ARS and thus are not entitled to statutory or punitive damages under Section 1681n for "willful noncompliance". Without any ability to furnish data regarding the "Date of Status" or "First Reported Date", which are data fields within Experian's File One system *only* and not furnished by ARS through the Metro 2 format, the e-OSCAR platform, or by any other means, it was impossible for ARS to knowingly or recklessly violate any section of the FCRA with regard to those data fields.

Finally, according to Experian, the two allegedly inaccurate data fields that Plaintiffs claim "re-aged" their accounts and impacted their credit ("Date of Status" and "First Reported Date") appear only on Experian consumer disclosures, which are not provided to any third party for consideration of a consumer's eligibility for credit. **[SOMF, ¶21]** Consequently, the creditworthiness of Plaintiffs was not impacted even if the "Date of Status" or "First Reported Date" was incorrect on the Experian consumer disclosures. The undisputed record evidence

demonstrates that neither "Date of Status" nor "First Reported Date" is a factor in a creditworthiness determination. As such, Plaintiffs cannot show that they suffered any damages under the FCRA.

Consequently, Plaintiffs have failed to prove the necessary element of damages in their Section 1681n and Section 1681o claims, and ARS is entitled to judgment in its favor as a matter of law as to all of Plaintiffs' claims against ARS.

## IV. CONCLUSION

Based on the foregoing, summary judgment should be granted in favor of ARS on Plaintiffs' claims under the FCRA as no evidence in the record creates a genuine dispute as to ARS's compliance with the FCRA. Plaintiffs cannot establish that ARS negligently, much less willfully, failed to comply with its obligations under section 1681s-2(b). It follows from the undisputed record that ARS's furnishing of data to Experian, its investigation of the Clements ACDV, and its subsequent reporting did not violate any provision of the FCRA.

WHEREFORE, Defendant, Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services respectfully requests this Court GRANT its Motion and enter judgment in its favor on Plaintiff's entire Class Action Complaint.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on **September 14, 2020** via the Court Clerk's CM/ECF system which will provide notice to all parties' counsel of record by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may also access this filing through the Court's CM/ECF System.

> */s/ Ernest H. Kohlmyer, III*
> Ernest H. Kohlmyer, III
> Florida Bar No.: 110108
> Skohlmyer@shepardfirm.com
> Mary Grace Dyleski
> Florida Bar No: 143383
> mdyleski@shepardfirm.com
> Shepard, Smith, Kohlmyer & Hand, P.A.
> 2300 Maitland Center Parkway, Suite 100
> Maitland, Florida 32751
> Phone: (407) 622-1772
> Fax: (407) 622-1884
> *Attorneys for Defendant Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services*