**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

OMAR SANTOS and AMANDA CLEMENTS
on behalf of themselves and all others similarly
situated,

          Plaintiffs,

    vs.

HEALTHCARE REVENUE RECOVERY
GROUP, LLC d/b/a ARS ACCOUNT
RESOLUTION SERVICES and EXPERIAN
INFORMATION SOLUTIONS, INC.,

          Defendants.
_____/

Case No 1:19-cv-23084-KMW

**<u>ORAL ARGUMENT REQUESTED</u>**

**PLAINTIFFS' OPPOSITION TO DEFENDANT HEALTHCARE REVENUE**
**RECOVERY GROUP LLC'S MOTION FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION

Plaintiffs Omar Santos and Amanda Clements ("Plaintiffs") allege—and summary judgment evidence establishes—that Defendant Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services ("HRRG" or "ARS") violated the Fair Credit Reporting Act ("FCRA") by willfully breaching its duty to investigate inaccurate and incomplete information contained in Plaintiffs' credit reports. Misconduct on the part of both HRRG and Defendant Experian Information Solutions, Inc. ("Experian") indisputably resulted in the alteration of delinquency-related dates and the removal of the account history from Plaintiffs' Experian credit files and reports, making the debts reported by HRRG appear more recent than they actually were. Because the evidence establishes that this wrongful conduct was willful, Plaintiffs seek statutory damages under the FCRA.

HRRG's motion for summary judgment (ECF No. 59) rests on disputed issues of material fact, a misreading of the law, a sham declaration, and an incomplete record—discovery in this matter does not close until April 2021.  Ultimately, HRRG urges this Court to find that it complied with its duty to investigate the disputed, inaccurate credit information reported by Experian, as required by the FCRA.  But any fair examination of the evidence collected thus far demonstrates that HRRG willfully violated its duty to investigate under the FCRA, because it merely reaffirmed the disputed information that it previously reported to Experian, without undertaking any effort to investigate or verify its accuracy. In either event, the "reasonableness" of HRRG's investigation "is a factual question, and it will normally be reserved for trial." *See Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016).  HRRG's motion should be denied.

## II.    BACKGROUND

The inaccurate credit information at issue in this case is not in dispute. ███████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████.

P██████████████

███████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████

2

Plaintiffs disputed the inaccuracy of their credit reports through Experian. **PSOF, ¶¶ 40-45**. HRRG conducted no investigation of the disputes as required by the FCRA, and, instead, simply verified the account information it had already reported to Experian. **PSOF, ¶¶ 46-47**.

HRRG erroneously contends that it bears no responsibility for the inaccurate and incomplete information in Plaintiffs' credit reports because Experian's data-processing rule was the *initial* source of the misreporting.  But HRRG had both the obligation and opportunity to correct the inaccurate and incomplete information concerning HRRG's debts.  Had HRRG adequately investigated the disputes that Plaintiffs initiated and fully responded to Experian, the error on Plaintiffs' credit reports would have been corrected.  **PSOF, ¶¶ 20, 38, 59.**  Indeed, even a cursory examination of the dispute forms sent from Experian to HRRG would have alerted HRRG to the problem. The account history was completely missing. **PSOF, ¶ 55** ███████ ███████████████████████████████████████████████ ███████████████████████████████. Instead, HRRG simply glanced at the information provided by Experian and moved on. **PSOF, ¶¶ 46-47**. Apparently cognizant of its liability for failing to conduct a reasonable investigation, HRRG's motion rests on several disputed factual claims.

*First*, HRRG emphasizes, again and again, that it does not report the Date of Status or the First Reported Date to Experian.  But this fact is entirely irrelevant to Plaintiffs' claims.  Plaintiffs do not dispute that HRRG does not directly report the Date of Status and First Reported Dates to Experian. Rather, those dates are generated from the account history available in Experian's system.  **PSOF, ¶¶ 20, 38, 59**.  Critically, HRRG ***does report*** the account history to Experian.  *Id.* It was HRRG's duty to report that account history accurately and to reasonably investigate Plaintiffs' disputes when they informed Experian and HRRG that their accounts had been re-aged.

Had HRRG done so, it would have discovered that Plaintiffs' account history was missing. *Id.* HRRG had an obligation to supply that missing information as part of its response following an investigation.

*Second*, HRRG repeatedly asserts that the Date of Status does not appear on credit reports.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████

*Third*, HRRG argues that it did not provide inaccurate information during its investigation. This is also wrong. HRRG failed to even fully complete the Automated Consumer Dispute Verification ("ACDV") forms in responding to Plaintiffs' disputes. **PSOF, ¶ 55**. ███████████████

███████████████████████████████████████████████████████████████

████████████

The remainder of HRRG's arguments are contradicted by its own discovery responses and deposition testimony. HRRG, for the first time, argues that it never received *any* ACDV forms for Plaintiff Santos despite sixteen such forms completed by HRRG were produced in this case and HRRG's earlier testimony that it made a determination about Santos' dispute and processed it. **PSOF, ¶¶ 15-16, 49-50**. HRRG argues that the disputes by Plaintiffs were vague because they did not use the words "Date of Status" or "First Reported Date," but HRRG testified that it knows that "re-aging" is a "common term in the industry" and is "the practice of making accounts appear more newly reported." **PSOF, ¶ 53**. Indeed, HRRG admitted under oath that Plaintiffs' credit reports were incorrect. **PSOF, ¶ 57**.

At bottom, it is readily apparent that triable issues exist as to whether HRRG's rubber-stamp verification violates the requirement of a reasonable investigation under the FCRA.

### III.    STANDARD

Summary judgment is only warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making the determination, "all justifiable inferences are to be drawn in [the nonmovant's] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). In evaluating a motion for summary judgment, a court considers the evidence in the record, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

A court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party, and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux v. City of Atl.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (quotation marks and citations omitted). At the summary judgment stage, a court's task is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. To this end, if the non-moving party provides more than a mere "scintilla of evidence" demonstrating that "the jury could reasonably find for the plaintiff," it will defeat the motion. *Id.* at 252.

### IV.    ARGUMENT

#### A.  Plaintiffs' Credit Reports Contain Inaccurate Information

HRRG remarkably spends pages and pages arguing that it does not have to comply with sections 1681e and 1681i of the FCRA even though Plaintiffs do not allege that it does. Sections 1681e and 1681i pertain to a credit reporting agency's obligation to maintain maximum possible accuracy and to reinvestigate disputed matters; in this case that is Experian's obligation.

5

Section 1681s-2 of the FCRA, however, does require data furnishers, such as HRRG, to conduct an investigation following a consumer dispute. Indeed, Plaintiffs' complaint is clear that their allegations against HRRG pertain to HRRG's failure to investigate the accuracy of reported information following Plaintiffs' disputes. **DE 1, ¶¶68; 75**. As a result of HRRG's failure to investigate, inaccurate or incomplete information remained on Plaintiffs' credit report.

HRRG is wrong in claiming that it cannot be held liable because it did not provide the Date of Status to Experian. The FCRA imposes liability on HRRG because a reasonable investigation would have revealed that Plaintiffs' account information was missing and incomplete:

> A furnisher must "(A) conduct an investigation with respect to the disputed information;" "(B) review all relevant information provided by the [CRA];" and "(C) report the results of the investigation to the [CRA]." If the investigation reveals that the information is **incomplete**, inaccurate, or unverifiable, **the furnisher must "modify" the furnished information**, "delete" it, or "permanently block the reporting of that item of information" to CRAs.

*Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 F. App'x 452, 454 (11th Cir. 2019) (quoting § 1681s-2(b)(1)) (emphasis added).  Here, HRRG never conducted such an investigation, so it never revealed the account information was incomplete, and thus never corrected the information.

The cases cited by HRRG are inapplicable here. In *Arianas v. LVNV Funding LLC*, 132 F. Supp. 3d 1322 (M.D. Fla. 2015), the court held that a plaintiff's "unsupported assertion that he paid the debt, without any documentary support, does not cast doubt on [defendant's] reasonableness in relying on and reporting the information in the electronic records." *Id.* at 1328. Here, Plaintiffs' allegations are hardly "unsupported." The ACDV files show that HRRG did not fully respond to them, HRRG testified that all it did was confirm what was already in its system, and ███████████████████████████████████ **PSOF, ¶¶ 46-47, 55, 57, 58**.

In *Stroud v. Bank of Am.*, 886 F. Supp. 2d 1308 (S.D. Fla. 2012), the court granted summary judgment when the plaintiff "failed to provide any evidence, as opposed to merely his own

allegations or hunches or theories, that the investigation was unreasonable." *Id.* at 1314. Plaintiffs here are not operating under hunches and theories; they are relying on HRRG's own testimony. HRRG testified that it should have handled Plaintiffs' disputes as "specific" disputes, and HRRG confirmed that its dispute-verification process is "literally just looking at the data that HRRG has and reporting it back to the credit reporting agency." **PSOF, ¶¶ 46-47, 52**.

The opinion in *Green v. RBS Nat. Bank*, 288 F. App'x 641, 643 (11th Cir. 2008), a *pro se* appeal, contains no analysis or even explanation of the dispute or the investigation undertaken. HRRG's citation to it for the proposition that a "furnisher 'complied with the letter of the law' by investigating a dispute and accurately reporting its findings" is tautological. To be sure, *if* an investigation is undertaken and *if* a data furnisher accurately reports its findings, such conduct complies with the FCRA. But that is not what happened here. HRRG did not really conduct an investigation and it did not accurately report its findings because it returned half-blank ACDV forms.

Plaintiffs' position, in contrast, finds support in *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016), which held that "what constitutes a 'reasonable investigation' will vary depending on the circumstances of the case." *Id.* at 1302. In fact, *Hinkle* cited with approval *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004), which held that a "jury could find a § 1681s–2(b) violation where the original creditor ended its investigation before 'consult[ing] underlying documents.'" *Hinkle*, 827 F.3d at 1302 (quoting *Johnson*, 357 F.3d at 431). Here, not only did HRRG never consult underlying documents, but it never even bothered to see how long Plaintiffs' accounts were reported in its own system.

HRRG also is wrong in claiming that the Date of Status does not appear on credit reports.

████████████████████████████ HRRG again ignores that Plaintiffs allege that their credit reports were missing account history, which would have been viewable by third parties, and the absence of the account history makes the reports inaccurate and misleading. ████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████████████████████ It is especially curious that HRRG would argue that Plaintiffs' reports were accurate because HRRG already testified that the ever-changing Date of Status and lack of account history on Plaintiffs' credit report rendered them inaccurate. **PSOF, ¶ 57**.

At a minimum, Plaintiffs have presented more than sufficient evidence to create a disputed issue of fact as to whether their credit reports contained inaccurate or incomplete information.

### B.  HRRG Failed to Conduct an Adequate Investigation of Plaintiffs' Disputes

"The FCRA creates a private right of action against furnishers of information to credit reporting agencies." *Arianas v. LVNV Funding LLC*, 132 F. Supp. 3d 1322, 1326 (M.D. Fla. 2015) (quoting *Green v. RBS Nat. Bank*, 288 F. App'x 641, 642 (11th Cir. 2008); 15 U.S.C. § 1681s–2(b)(1)). "If a furnisher receives notice of a customer's dispute from a credit reporting agency, the furnisher is required to conduct 'a reasonable investigation of their records to determine whether the disputed information can be verified.'" *Arianas v. LVNV Funding LLC*, 132 F. Supp. 3d 1322, 1326 (M.D. Fla. 2015) (quoting *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004)). The FCRA "requires some degree of careful inquiry by furnishers of information." *Hinkle*, 827 F.3d at 1303 (citing 15 U.S.C. § 1681s–2(b)).

On July 24, 2017, Plaintiff Omar Santos requested and received a copy of his Experian credit report. **PSOF, ¶ 40**. The report identified three delinquent ARS Accounts (Nos. 71670***, 80732***, and 81364***), all of which had a "Date of Status" of July 2017 and a "First Reported" date of July 2017. *Id.* All of these dates were inaccurate and made the debts appear newer or fresher on Mr. Santos' credit report than they actually were. *Id.* On July 27, 2017, Mr. Santos disputed the inaccuracies on the three accounts reported by HRRG to Experian. **PSOF, ¶ 41**. Specifically, Mr. Santos informed Experian that the accounts had been re-aged. *Id.*

Mr. Santos then requested and received another Experian credit report on September 5, 2017. **PSOF, ¶ 42**. Remarkably, for each of the three ARS Accounts appearing on the report, the "Date of Status" and a "First Reported" date had been changed to September 2017—as opposed to July 2017, as stated in the prior report—and the account / payment history for the intervening months had been removed. *Id.* Again, the accounts had been re-aged again to appear newer than they were. *Id.*

Similarly, on July 25, 2017, Plaintiff Amanda Clements requested and received her Experian credit report. **PSOF, ¶ 43**. The July report identified two delinquent ARS accounts (Account Nos. 71788*** and 72822***), both of which had a "Date of Status" of July 2017 and a "First Reported" date of July 2017. *Id.* These dates were incorrect and re-aged to appear newer than they actually were. *Id.* Ms. Clements disputed the inaccuracies in a letter the next day to Experian. **PSOF, ¶ 44**. Ms. Clements then requested and received another Experian credit report on August 22, 2017. **PSOF, ¶ 45**. This time, one ARS account was removed, but the remaining ARS account had a "First Reported" date and a "Date of Status" of August 2017 and no prior account history. *Id.* The account had again been re-aged to appear newer than it was. *Id.*

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████ Second, even after Plaintiffs disputed the misreporting, HRRG's investigation of the dispute was completely inadequate. HRRG refused to properly investigate Plaintiffs' disputes and failed to respond to Experian in such a way that would have corrected the problem.

When, as here, a consumer initiates a dispute with Experian, Experian sends an Automated Consumer Dispute Verification ("ACDV") form to the data furnisher—HRRG in this case. HRRG is then supposed to investigate the dispute and respond to the ACDV through a system known as e-OSCAR. Unfortunately, HRRG does not conduct an actual investigation, let alone an investigation that could be considered reasonable under the circumstances. HRRG handles thousands of consumer disputes every month and each employee in the dispute department

processes approximately two hundred disputes every day—less than two-and-half minutes per dispute if each employee works for eight hours straight. **PSOF, ¶ 48**. The majority of consumer disputes are handled through an electronic system called e-OSCAR. **PSOF, ¶ 54**. When HRRG believes a dispute to be "non-specific," as it chose to interpret Plaintiffs' disputes here, HRRG simply "verified the identity of the account holder and the account information" and "submitted its response to Experian via the e-OSCAR system." **PSOF, ¶ 46**. These are HRRG's own words. Nothing about that process even resembles or contemplates an investigation. In fact, HRRG's corporate designee confirmed that its "verification process is literally just looking at the data that HRRG has and reporting it back to the credit reporting agency." **PSOF, ¶ 47**. In other words, as a matter of course, it simply reaffirms the information that is being challenged, without any effort made to investigate or verify its accuracy. HRRG later conceded that it should have treated the disputes as specific and that "re-aging" is a "common term in the industry" and is "the practice of making accounts appear more newly reported." **PSOF, ¶¶ 52-53**.

HRRG's failure to investigate Plaintiffs' disputes allowed the errors initially caused by Experian to continue. ██████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████ But in addition to never conducting any investigation into the disputes, HRRG did not even fully complete the ACDVs. Every ACDV completed by HRRG regarding Plaintiffs left the response history grid empty. **PSOF, ¶ 55**. Thus, instead of looking into the dispute and uncovering that Experian was missing account history, HRRG simply verified the identify of Plaintiffs and moved on.

Experian's corporate designee's testimony—█████████████████████████████ ██████████████████████████████████████████████████████

█████████████████ easily satisfies Plaintiffs' burden of showing that if a reasonable investigation had been conducted by HRRG, the outcome of the investigation would have been different. A proper investigation by HRRG would have included HRRG reviewing its own files and correctly filling out the account history sections of the ACDVs sent to them by Experian on Plaintiffs' accounts. ██████████████████████████████

████████████████████

The remainder of HRRG's arguments about its dispute investigation are similarly inaccurate. HRRG for the first time argues that it "did not receive an ACDV from Experian or any credit reporting agency regarding any dispute by Santos on or about July 27, 2017 or at any other time" and that "[t]he record however, is devoid of any evidence that ARS received any dispute by Plaintiff Santos either directly or through the e-OSCAR platform." (Friedlander Decl. ¶ 15; MSJ at p.11) This is simply inaccurate. Indeed, HRRG's argument is contradicted by its own earlier testimony. When asked to identify all the actions it took following receipt of Plaintiffs' disputes, HRRG responded:

> Upon receipt of an ACDV from Experian via the e-OSCAR system, HRRG determined if the dispute was specific or not specific; if the dispute was not specific (Santos and Clements), HRRG verified the identity of the account holder and the account information; if the dispute was specific as to account information (Clement), HRRG provided additional account information and updated the account; then HRRG submitted its response to Experian via the e-OSCAR system on or before the requested date.

**PSOF, ¶ 54**. Further, Experian produced **sixteen** ACDV forms completed by HRRG regarding disputes submitted by Plaintiff Santos. While some of them pre-date the dispute alleged in the Complaint, it is quite clear that HRRG did receive and respond to disputes by Plaintiff Santos. **PSOF, ¶ 50**. Including one after the date alleged in the complaint. Further, it is unclear how Mr.

Freidlander could testify to how many ACDV forms HRRG received given that HRRG does not keep them longer than eighteen months and did not have any for either Plaintiff. **PSOF, ¶ 51**.

In fact, under the FCRA, the duties of a data furnisher do not lapse once an initial investigation is undertaken in regard to disputed information, because such a holding would contravene both the statutory language and the stated intent of the FCRA, to ensure consumer reporting procedures that are fair and equitable to the consumer. *Marcinski v. RBS Citizens Bank, N.A.*, 36 F. Supp. 3d 286 (S.D.N.Y. 2014) (citing 15 U.S.C.A. § 1681b(a)(4), (b)). Had HRRG bothered to properly investigate any of those disputes, it could have corrected the problem here.

In any event, the reasonableness of HRRG's investigation cannot be resolved at summary judgment. "When a furnisher reports that disputed information has been verified, the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true. ***This is a factual question, and it will normally be reserved for trial.***" *Hinkle*, 827 F.3d at 1303 (emphasis added); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (holding that when reinvestigation was cursory "whether further inquiry was necessary and whether the reinvestigation was reasonable are factual issues best left for the jury"); *King*, 452 F. Supp. 2d at 1278 (holding that the issue "cannot be resolved on summary judgment unless the reasonableness or unreasonableness of the procedures is beyond question") (quoting *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001)).

A reasonable jury could find that HRRG did not conduct a reasonable investigation into Plaintiffs' disputes when it failed to look beyond the materials originally provided and simply reported to Experian that the disputed information had been verified. *McGhee v. Rent Recovery Sols.*, LLC, No. 1:17-CV-72-CC-JKL, 2018 WL 4850119, at *14 (N.D. Ga. July 6, 2018), *report*

*and recommendation adopted*, No. 1:17-CV-0072-CC-JKL, 2018 WL 10809250 (N.D. Ga. Sept. 21, 2018); *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 256 (4th Cir. 2017) ("[a] jury also could conclude from the evidence that [the defendant] was reckless in processing each dispute verification request independently, without consulting the context of prior correspondence from [the plaintiff], the CFPB, or [the credit reporting agency] regarding the same account.").

### C.  The Sham Declaration of David Friedlander Should Be Disregarded.

In support of its motion for summary judgment, HRRG submitted a declaration from its president, David Friedlander ("Friedlander"). Friedlander's declaration is a sham declaration contradicted by HRRG's own prior discovery responses and deposition testimony and should be disregarded. *Cf. Liebman v. Metro. Life Ins. Co.*, 708 F. App'x 979, 983 (11th Cir. 2017) (quoting *Van T. Junkins & Assocs. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)).

Friedlander now declares that HRRG "is not able to alter or delete any account history reported to Experian or any CRA." (Friedlander Decl. ¶ 12.) This is contradicted by HRRG's earlier deposition testimony that HRRG did, in fact, delete two accounts it reported to Experian for Plaintiff Clements. (Brennan Depo. 58:13-59:14.)

Friedlander now declares that HRRG "did not receive an ACDV from Experian or any credit reporting agency regarding any dispute by Santos on or about July 27, 2017 or at any other time. (Friedlander Decl. ¶ 15.)  But this contradicts HRRG earlier verified responses to Plaintiffs' interrogatories, where HRRG stated:

> ***Upon receipt of an ACDV from Experian*** via the e-OSCAR system, HRRG determined if the dispute was specific or not specific; ***if dispute [sic] was not specific (Santos and Clements)***, HRRG verified the identity of the account holder and the account information; if the dispute was specific as to account information (Clements), HRRG provided additional account information and updated the account; then HRRG submitted its response to Experian via the e-OSCAR system on or before the requested due date.

(HRRG's Second Supplemental Response to Interrogatory 5). HRRG also confirmed during its deposition that it made a determination on Santos' dispute. (Brennan Depo. 41:11-42:4.) And Experian produced **sixteen ACDV forms for Plaintiff Santos, completed by HRRG, including one processed after the date of Santos' dispute letter**. **PSOF, ¶ 5**.

### D. Plaintiffs Are Entitled to Statutory Damages and Are Not Required to Show Credit Denial

HRRG gets the law completely wrong in claiming that Plaintiffs must prove a credit denial or actual damages in order to pursue their claims.[1] The text of 15 U.S.C. § 1681n and prevailing Supreme Court and Eleventh Circuit law squarely foreclose HRRG's misguided argument and establish that Defendants' willful violations of the FCRA entitle Plaintiffs to statutory damages.

The civil remedy provision of the FCRA, § 1681n(a), provides that "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . any actual damages sustained by the consumer as a result of the failure **or damages of not less than $100 and not more than $1,000**." 15 U.S.C.A. § 1681n (emphasis added). The emphasized language of § 1681n(a)(1)(A)—damages of not less than $100 and not more than $1,000—unequivocally provides for statutory damages.

In construing this straightforward provision, the Supreme Court has held that "[i]f a violation is negligent, the affected consumer is entitled to actual damages. If willful, however, the consumer may have actual damages, **or statutory damages ranging from $100 to $1,000, and even punitive damages.**" *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) (internal citations omitted and emphasis added). Thus, the Supreme Court recognized the distinction between

---

[1] HRRG echoes the misguided argument that Experian raised in its motion for partial summary judgment, the response to which Plaintiffs incorporate here (ECF N. 48).

15

allegations of negligence, which may require a showing of credit denial to establish "actual damages," on the one hand, and allegations of willful conduct, on the other, which entitle a consumer to statutory damages. *Id.*

Likewise, the Eleventh Circuit has repeatedly held that § 1681n(a) "provides that plaintiffs may elect to receive actual damages *or* statutory damages" for willful violations of the FCRA. *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1313 (11th Cir. 2009) (emphasis in original); *accord Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1336 (11th Cir. 2015). Unsurprisingly, the Eleventh Circuit has reaffirmed this standard again and again with ***no mention*** of a credit-denial requirement because no such requirement exists. *See Williams v. First Advantage LNS Screening Sols. Inc*, 947 F.3d 735, 745 (11th Cir. 2020) ("To establish a willful failure to comply with § 1681e(b), a plaintiff must show that the consumer reporting agency either knowingly or recklessly violated the statute.") (citing *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017)); *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1302 (11th Cir. 2019) ("Under 15 U.S.C. § 1681n(a), any person who willfully fails to comply with any requirement imposed under this subchapter is liable to the affected consumer for actual, statutory, or punitive damages.") (citing *Collins*, 775 F.3d at 1336). These statutory damages are available "even when the plaintiff has suffered no actual damages." *Lawrence v. S. Florida Racing Ass'n, LLC*, 18-CV-24264-UU, 2019 WL 3890314, at *1 (S.D. Fla. June 28, 2019); *Lindsey v. Experian Info. Sols., Inc.*, No. 2:15-CV-02353-AKK, 2017 WL 412889, at *4 (N.D. Ala. Jan. 31, 2017) ("[Plaintiff] correctly notes . . . that he does not need actual damages to establish a willful violation of the FCRA.").

The Supreme Court has held that the "willfulness" standard under FCRA encompasses not only "knowing" violations of the statute but also those committed in "reckless disregard" of the

statute's requirement. *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 57 (2007). In this regard, the Eleventh Circuit has held that "a company acts recklessly when its 'conduct . . . entail[s] an unjustifiably high risk of harm that is either known or so obvious that is should be known.'" *Marchisio*, 919 F.3d at 1303 (quoting *Safeco*, 551 U.S. at 68). "A defendant may demonstrate reckless disregard of its statutory obligations by repeatedly ignoring warning signs that it is violating the law and by failing to take corrective action to prevent future violations." *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 253 (4th Cir. 2017) (citing *Am. Arms Int'l v. Herbert*, 563 F.3d 78, 85 (4th Cir. 2009)).

Plaintiffs have presented more than sufficient evidence that HRRG's conduct satisfies the willfulness standard articulated in *Safeco*, 551 U.S. at 57, thus entitling Plaintiffs to statutory damages. HRRG admits that Plaintiffs' credit reports were inaccurate. **PSOF, ¶ 57**. HRRG received and processed numerous disputes for both Plaintiffs, but each time failed to address the missing account histories. **PSOF, ¶¶ 50, 55**. Indeed, HRRG admits that its so-called "investigation" literally consists of nothing more than reporting the data it has on hand back to the credit reporting agency. **PSOF, ¶ 47**. HRRG testified that it treated Plaintiffs' disputes as "non-specific," even though it should have treated them as "specific." **PSOF, ¶ 46, 52**. HRRG testified that it is aware that "re-aging" is a "common term in the industry" and is "the practice of making accounts appear more newly reported." **PSOF, ¶ 43**. █████████████████████████████
████████████████████████████

On this evidence, a jury could reasonably find that HRRG acted recklessly. *See Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1212 (11th Cir. 2019) (holding that JPMorgan Chase's failure to investigate not once but three times plausibly indicates reckless disregard of the investigation requirement); *Daugherty*, 701 F. App'x at 256 (affirming a jury finding of

recklessness where the defendant "possessed the information in its own records necessary to correct the erroneous data identified" by a credit reporting agency). Indeed, "whether the alleged violations of § 1681b(b)(2) were knowing or reckless must be left to the finder of fact." *Graham v. Pyramid Healthcare Sols., Inc.*, No. 8:16-CV-1324-T-30AAS, 2017 WL 2799928, at *3 (M.D. Fla. June 28, 2017); *see Hargrett v. Amazon.com Dedc LLC*, No. 8:15-CV-2456-T-26EAJ, 2017 WL 10275960, at *2 (M.D. Fla. Feb. 16, 2017) ("Willfulness is typically a question of fact for the jury.").

Accordingly, whether HRRG's violations of its duty to investigate were willful, and thus Plaintiffs' entitlement to statutory damages, should be decided by a jury, not at summary judgment.

### E. In The Alternative, The Court Should Permit Plaintiffs To Complete Discovery Before Ruling On HRRG's Motion.

In the alternative, Plaintiffs request that the Court deny HRRG's motion pursuant to Fed. R. Civ. P. 56(d) to allow for the completion of discovery. (Mann Decl. ¶¶ 18-20.) HRRG makes several arguments related to how credit is impacted by the reporting of inaccurate account dates and how third parties view these credit reports. Discovery into those areas is ongoing. (*Id.*) Plaintiffs should be permitted to complete that discovery before the Court evaluates HRRG's fact-based arguments. See *Fontell v. Hassett*, 10-CV-01472-AW, 2011 WL 4632579 (D. Md. Oct. 3, 2011) (holding that courts are particularly hesitant to grant summary judgment where "the party opposing summary judgment is attempting to obtain necessary discovery of information possessed only by her opponent") (quoting *Ingle v. Yelton*, 439 F.3d 191, 196-97 (4th Cir. 2006).

### V.    CONCLUSION

HRRG has not and cannot show that there are no material disputes such that summary judgment is warranted. The motion should be denied in its entirety.

**<u>Request for Oral Argument</u>**

Given the importance of the issues presented herein, Plaintiffs respectfully request oral argument on this motion.  Plaintiffs anticipate that a one-hour hearing should be sufficient to address this motion.

Dated:  September 28, 2020

**PODHURST ORSECK, P.A.**

*/s/ Peter Prieto*
Peter Prieto (FBN 501492)
pprieto@podhurst.com
Matthew P. Weinshall (FBN 84783)
mweinshall@podhurst.com
Alissa Del Riego (FBN 99742)
adelriego@podhurst.com
SunTrust International Center
One S.E. Third Avenue, Suite 2300
Miami, Florida 33131

Roland Tellis
rtellis@baronbudd.com
Jonas P. Mann
jmann@barobudd.com
**BARON & BUDD, P.C.**
15910 Ventura Boulevard
Suite 1600
Encino, California 91436

Dennis McCarty
dennismccartylaw@gmail.com
Jonathan Raburn
jonathan@geauxlaw.com
**McCARTHY & RABURN PLLC**
2931 Ridge Road, Suite 101 #504
Rockwall, Texas 75032

Attorneys for Plaintiffs OMAR SANTOS and AMANDA CLEMENTS on behalf of themselves and all others similarly situated

19

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on September 28, 2020, and the foregoing document is being served this day on all counsel or parties of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

/s/ Peter Prieto
Peter Prieto