# EXHIBIT 3

Confidential

```
 1                    CAVE - 7/22/20

 2           UNITED STATES DISTRICT COURT

 3           SOUTHERN DISTRICT OF FLORIDA

 4                   MIAMI DIVISION

 5  ----------------------------

 6  OMAR SANTOS AND AMANDA CLEMENTS on

 7  behalf of themselves and all

 8  others similarly situated,

 9                      Plaintiffs

10

11  -against-                   Case No.

12                              1:19-cv-23084-KMW

13  HEALTHCARE REVENUE RECOVERY,

14  GROUP, LLC D/B/A ARS ACCOUNT

15  RESOLUTION SERVICES AND EXPERIAN

16  INFORMATION SOLUTIONS, INC.,

17                      Defendants.

18  ----------------------------

19      VIDEOTAPED REMOTE DEPOSITION OF

20               KIMBERLY CAVE

21               July 22, 2020

22          ***CONFIDENTIAL***

23

24  Reported by:  Susan S. Klinger, RMR-CRR, CSR

25  Job No. 181822
```

Confidential

```
 1                    CAVE - 7/22/20

 2

 3

 4                    July 22, 2020

 5                    10:06 a.m.

 6

 7

 8

 9        Videotaped Deposition of KIMBERLY CAVE,

10   held before Susan S. Klinger, a Registered

11   Merit Reporter and Certified Realtime Reporter

12   of the State of Texas.

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Confidential

```
 1                    CAVE - 7/22/20

 2   A P P E A R A N C E S:

 3   (All appearance via teleconference.)

 4   Attorneys for Plaintiff(s):

 5        Roland Tellis, Esq.

 6        Jonas Mann, Esq.

 7        BARON & BUDD

 8        15910 Ventura Boulevard

 9        Encino, California  91436

10

11

12

13        Jonathan Raburn, Esq.

14        MCCARTY & RABURN

15        2931 Ridge Road

16        Rockwall, Texas  75032

17

18   Attorneys for Defendant Experian Information

19   Solutions, Inc.:

20        William Taylor, Esq.

21        JONES DAY

22        717 Texas

23        Houston, Texas 77002

24

25
```

Confidential

Page 4

```
 1              CAVE - 7/22/20
 2    Attorneys for Defendant Healthcare Revenue
 3    Recovery Group, LLC:
 4         Ernest Kohlmyer, Esq.
 5         Mary Grace Dyleski, Esq.
 6         SHEPARD, SMITH, KOHLMYER & HAND
 7         230 Maitland Center Parkway
 8         Maitland, Florida  32751
 9
10
11    Also Present:
12         Matthew Chin-Quee, videographer
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    CAVE - 7/22/20

 2                      I N D E X

 3

 4    WITNESS                                PAGE

 5    KIMBERLY CAVE

 6    EXAMINATION BY MR. TELLIS                8

 7

 8                  E X H I B I T S

 9    No.          Description              Page

10    Exhibit 1  Third Amended 30(b)(6) notice   19

11    Exhibit 8  Answers to Interrogatories,     72

12               1, 4 and 5

13    Exhibit 10 Answers to Interrogatories      23

14    Exhibit 12 Santos credit report,           86

15               SANTOS-EXP 000190

16    Exhibit 30 Org chart, SANTOS EXP 002901    10

17

18

19

20

21

22

23

24

25
```

Confidential

1                CAVE - 7/22/20

2         P R O C E E D I N G S

3         VIDEOGRAPHER:  Good morning.  My

4    name is Matthew Chin-Quee.  I'm the legal

5    videographer in association with TSG

6    Reporting.  Due to the COVID-19 and

7    following social distancing, I will not be

8    in the same room with the witness, instead

9    I will record the deposition remotely.  The

10   reporter, Susan Klinger, also will not be

11   in the same room and will swear the witness

12   remotely.

13         Do all parties stipulate to the

14   validity of the video recording and remote

15   swearing and that it will be admissible in

16   the courtroom as if it had been taken

17   following Rule 30 of the Federal Rules of

18   Civil Procedure and the state's rules where

19   the case is pending?

20         MR. TELLIS:  Yes, on behalf of the

21   plaintiffs.

22         MR. TAYLOR:  Yes, on behalf of

23   Experian.

24         MR. KOHLMYER:  Yes, on behalf of the

25   defendant ARS.

```
 1                 CAVE - 7/22/20
 2          VIDEOGRAPHER:  This will be the
 3   start of tape number 1 of the videotaped
 4   deposition of Kimberly Cave --
 5          THE WITNESS:  That's correct.
 6          VIDEOGRAPHER:  -- in the matter of
 7   Omar Santos, et al v. Healthcare Revenue
 8   Recovery Group, LLC, et al in the United
 9   States District Court, Southern District of
10   Florida, Miami Division, Number
11   1:19-CV-23084-KMW.  All parties have agreed
12   to appear remotely on July 22nd, 2020 at
13   approximately 10:08 a.m.
14          My name is Matthew Chin-Quee from
15   TSG Reporting and I'm the legal video
16   specialist.  The court reporter is Susan
17   Klinger in association with TSG Reporting.
18   Will counsel please introduce yourself?
19          MR. TELLIS:  Good morning, Roland
20   Tellis and Jonas Mann of Baron & Budd on
21   behalf of plaintiffs.
22          MR. TAYLOR:  Will Taylor with Jones
23   Day on behalf of Experian Information
24   Solutions, Inc.
25          MR. KOHLMYER:  Skip Kohlmyer with
```

Confidential

1                    CAVE - 7/22/20

2        Shepard Smith Kohlmyer & Hand on behalf of

3        HRRG.

4              MR. MANN:  Jonas Mann from Baron &

5        Budd also on behalf of plaintiff.

6              MR. RABURN:  Jonathan Raburn on

7        behalf of plaintiff from McCarty & Raburn.

8              VIDEOGRAPHER:  Will the court

9        reporter please swear in the witness?

10              KIMBERLY CAVE,

11   having been first duly sworn testified as

12   follows:

13              EXAMINATION

14   BY MR. TELLIS:

15        Q.    Good morning, Ms. Cave.  I just

16   introduced myself.  My name is Roland Tellis.

17   I'm here to take your deposition.

18              Do you understand?

19        A.    Yes.

20        Q.    You have been deposed many times; is

21   that correct?

22        A.    Yes.

23        Q.    Are you generally familiar with the

24   ground rules of a deposition or would you like

25   me to go over them?

Confidential

```
 1                    CAVE - 7/22/20
 2        A.    I don't need you to go over them.
 3        Q.    Okay.  You understand you are
 4   testifying under oath though; is that correct?
 5        A.    That's correct.
 6        Q.    At any time you need a break, just
 7   let me know and I will do my best to
 8   accommodate you unless there is a question
 9   pending.
10              Are you currently employed?
11        A.    I am.
12        Q.    Who is your employer?
13        A.    Experian Information Solutions, Inc.
14        Q.    And I will refer to that entity as
15   Experian today; is that okay?
16        A.    Yes.
17        Q.    What is your job title?
18        A.    I'm a compliance and litigation
19   analyst.
20        Q.    And can you generally summarize what
21   your job duties are as a compliance and
22   litigation analyst?
23        A.    I review Experian policies and
24   procedures as they pertain to its credit
25   reporting activities for adherence to its
```

Confidential

```
1                    CAVE - 7/22/20

2     internal compliance rules and procedures, and I

3     also assist with litigation research.

4          Q.    Are you a lawyer?

5          A.    No.

6          Q.    Do you perform your duties within a

7     particular department at Experian?

8          A.    Yes.

9          Q.    What is that department called?

10         A.    I technically sit within regulatory

11    compliance.

12         Q.    How long have you held your current

13    title?

14         A.    I believe since around February of

15    2011.

16         Q.    And since that time, have your job

17    duties been the same as you have described

18    them?

19         A.    Yes.

20         Q.    Let me show you a document I will

21    mark as Exhibit 30.

22               (Exhibit 30 marked.)

23               MR. TELLIS:  Madam court reporter,

24         I'm going to be jumping around today.  I'm

25         not going to be going in chronological
```

Confidential

```
 1                   CAVE - 7/22/20

 2        order.

 3        Q.    Let me see if I do this correctly.

 4   I've marked as Exhibit 30 and displayed on the

 5   screen a two-page organization chart produced

 6   by Experian Bates numbers 2901 through 2902.  I

 7   believe I have clicked your name on this

 8   platform so you should be able to scroll

 9   through this document if you need to, but I

10   would like you to focus on page 2902 where your

11   name appears in a box.  Are you there?

12        A.    I can't see any document on the

13   screen and I don't know if counsel may be aware

14   but I'm working from a very small laptop

15   screen.  I'm not going to be able to see them,

16   but I do have the paper exhibits that you

17   provided so I can look at those.

18        Q.    That is fine.  Great.  I'm

19   displaying them for the benefit of everyone

20   else.  As long as you are following along with

21   the hard copies that is great.

22             Can you look at the document that

23   has Bates number -- do you know what a Bates

24   number is; correct?

25        A.    That's correct.
```

Confidential

```
1                    CAVE - 7/22/20

2        Q.    2902, do you see the one that has

3   your name in the upper right-hand corner?

4        A.    I do.

5        Q.    Does this org chart accurately

6   reflect your title within the company as

7   described as a compliance and litigation

8   analyst?

9        A.    So far that I'm aware it does.

10        Q.    Does this document reflect a

11   particular department organization or what does

12   it -- what is it depicting here?

13        A.    Well, I mean the document speaks for

14   itself.  I had not seen this document before it

15   was provided in this litigation.  So beyond

16   what it says, I have no basis for explaining

17   how it was put together by whoever put it out.

18        Q.    I didn't ask you that.  The document

19   doesn't speak for itself.  Where is it

20   speaking, what is it saying?

21             MR. TAYLOR:  Object to the form of

22        the question.

23        A.    Where would you like me to read from

24   the document?

25        Q.    I'm asking you what this
```

Confidential

1                    CAVE - 7/22/20

2   organizational chart is intending to depict.

3   Is it a particular department within Experian

4   or something else?  It is an organization chart

5   of some sort with your name on it; correct?

6        A.    It appears to be, yes.  But again, I

7   have not seen this document before it was

8   provided to me for this deposition.

9        Q.    It is not important that you have

10  seen it before.  I'm asking as you look at it,

11  can you tell whether it is depicting the

12  organizational structure of your regulatory

13  compliance department, for example?

14       A.    I can't tell you that.  It depicts

15  the level and persons, to me, who report under

16  certain people.  And it has me appropriately

17  listed under Sandy Anderson, which is the

18  person I report to and work for.  Beyond that,

19  I have no basis for answering that question.

20       Q.    Okay.  So your direct report is

21  Sandy Anderson; is that correct?

22       A.    That's correct.

23       Q.    And is that a male or a female?

24       A.    A female.

25       Q.    Is Ms. Anderson also within the

Confidential

```
 1                    CAVE - 7/22/20

 2    regulatory compliance department?

 3         A.    I don't know.

 4         Q.    Do you know -- do you recognize

 5    anyone on this chart, Exhibit 30, Bates number

 6    2902 that reports directly to you?

 7         A.    I don't have any direct reports.

 8         Q.    Okay.  Does anyone assist you in

 9    your job duties?

10         A.    Do they assist me, no.

11         Q.    Where do you perform your job

12    duties, in Allen, Texas?

13         A.    Well, currently from my home, but

14    normally in Allen, Texas.

15         Q.    And where is Ms. Anderson located?

16         A.    She is not in Allen, Texas.

17         Q.    That wasn't my question.  Where is

18    she located?

19         A.    I don't know specifically where she

20    is located.

21         Q.    Where are her offices when she

22    reports to work generally?

23         A.    I don't know.

24         Q.    How do you communicate with her

25    typically, by email, telephone or in-person?
```

Confidential

1                    CAVE - 7/22/20

2        A.     Email and telephone.

3        Q.     Which department within Experian, to

4    your knowledge, is responsible for

5    investigating consumer disputes over the

6    accuracy of credit account information?

7        A.     That would be the --

8               MR. TAYLOR:  Objection.

9        A.     -- MCE or the My Consumer Experian

10   Center.

11       Q.     That department is referred to as

12   the My Consumer Experian Center, is that what

13   you said?

14       A.     Yes, we refer to it as the MCE.

15       Q.     Where is the MCE typically located,

16   which office?

17       A.     The Allen, Texas office and there

18   are also associates in the Santiago, Chili

19   facility.

20       Q.     And who is the head of that group?

21       A.     What do you mean by the head of the

22   group?

23       Q.     Well, does that group have a

24   department head or a person in charge?

25       A.     Well, there are lots of managers and

Confidential

```
 1                     CAVE - 7/22/20
```

2  VPs and head of that organization.  I didn't

3  come here today prepared to breakdown the

4  structure of the MCE.

5       Q.   Do you know any of the heads of that

6  organization by name?

7       A.   I know a few people that I work

8  with, but I don't know specifically what their

9  hierarchy is over there.

10      Q.   Give me their names, please.

11      A.   I currently interact with Casey, I

12  believe her last name is Fellows.

13      Q.   And anyone else within that

14  department that you interact with?

15      A.   I mean, I have worked here for, you

16  know, 23 years.  I interact with a lot of

17  people, but I don't -- I don't really want to

18  sit here and tell you all the people I talk

19  with every day, so can you be more specific in

20  what people you are looking for?

21      Q.   I'm looking to understand who you

22  interface with in that department with respect

23  to consumer disputes over the accuracy of

24  credit account information.  Give me the names

25  of people you generally interact with with

Confidential

CAVE - 7/22/20

1

2   respect to that topic?

3        A.    Well, it just depends on what I'm

4   researching and what I'm looking for.  So do I

5   have questions about policies and procedures, I

6   mean that is a very vague question.

7        Q.    I understand that.  Give me the

8   names of people, don't worry about for what

9   purpose I need them, give me the names of

10  people you generally interact with in that

11  department on the topic of disputes over the

12  accuracy of credit account information?

13       A.    Eldridge Moore, Joshua Jones.

14       Q.    Any others come to mind?

15       A.    Primarily that is -- that is it.

16       Q.    You typically interact with folks in

17  that department by email?

18       A.    No, I interact with them in a myriad

19  of ways.

20       Q.    Which includes email?

21       A.    Yes.

22       Q.    And what is the nature of -- well,

23  does that department prepare any sorts of

24  reports for you on a periodic basis?

25       A.    No.

Confidential

```
 1                    CAVE - 7/22/20

 2              MR. TAYLOR:  Object to form.

 3         Q.    You see on this chart, Ms. Cave, at

 4    the bottom of your box it says, U.S., Allen,

 5    Texas and then, paren, 701.  Do you see that?

 6         A.    Yes.

 7         Q.    Do you know what 701 is referring

 8    to?

 9         A.    Well, the only 701 I'm familiar with

10    is we have building 701, so perhaps that is

11    what it is referring to.

12         Q.    You understand, Ms. Cave, that you

13    have been designated by Experian to testify in

14    this case with respect to certain deposition

15    topics?

16         A.    That's correct.

17         Q.    Let me mark for the record as

18    Exhibit 2 a document entitled Plaintiff's Third

19    Amended Notice of Deposition of Kimberly Cave

20    under Rule 30 of the Federal Rules of Civil

21    Procedure.  Do you see that?

22         A.    Yes.

23         Q.    Actually this one appears to be the

24    wrong exhibit, hang on a second.  Can you

25    strike that exhibit.
```

Confidential

```
 1                    CAVE - 7/22/20

 2               I've put up on the screen now what

 3    is Exhibit 1, which is a document titled

 4    Plaintiff's Third Amended Notice of Deposition

 5    of Experian Information Solutions under Rule

 6    30(b)(6) of the Federal Rules of Civil

 7    Procedure.  Do you see that document?

 8               (Exhibit 1 marked.)

 9        Q.    It might be listed as Exhibit 2

10    under your -- your binder as it is in mine, but

11    this is the document I'm trying to get your

12    attention drawn to.

13        A.    I don't see anything on the screen,

14    but I do have two Third Amended notices,

15    Exhibit 1 which feels a little thicker and

16    Exhibit 2 which is a little thinner.

17        Q.    If you look on the caption the first

18    page and find the one that says, Notice of

19    Deposition of Experian, please?

20        A.    Okay.

21        Q.    And you see that on page 3 through 9

22    there are certain topics identified, enumerated

23    paragraphs.  Do you see those?

24        A.    Yes.

25        Q.    Do you know which of those topics
```

Confidential

```
 1                    CAVE - 7/22/20
 2   you are designated to testify on Experian's
 3   behalf?
 4        A.    I mean, I can't sit here and recite
 5   them to you, but it is my understanding that
 6   Experian provided a list of those topics with
 7   objections.
 8        Q.    Are you prepared to testify
 9   regarding the topics that Experian has
10   identified you on?
11        A.    My understanding of those topics,
12   yes.
13        Q.    Aside from speaking with your
14   lawyers, what did you do to prepare for today's
15   deposition on those topics?
16        A.    Well, I mean, I can't remember way
17   back because I think I prepared to actually
18   start this depo a second time before today.
19   But generally speaking, again, I spoke with
20   counsel and reviewed the documents that are in
21   production in this matter.  Most specifically
22   the documents produced by Experian and those
23   pertaining to the two named plaintiffs.  And
24   then I also reviewed Experian's discovery
25   responses.
```

Confidential

```
 1                    CAVE - 7/22/20
 2        Q.    Did you talk to any of the Experian
 3   employees in preparation for your deposition?
 4        A.    No, sir, I didn't.
 5        Q.    Did you talk to any representatives
 6   of the co-defendant in this case, HRRG, in
 7   preparation for your deposition?
 8        A.    No, sir.
 9        Q.    And in preparing for this
10   deposition, you are generally aware of the
11   nature of this case that you are testifying in
12   today?
13        A.    Yes.
14        Q.    Can you describe for me your general
15   understanding of the crux of the allegations
16   plaintiffs are making against Experian in this
17   case?
18              MR. TAYLOR:  Object to the form.
19        A.    Yes.  Generally it is my
20   understanding that plaintiffs allege that
21   Experian was inaccurately reporting a date of
22   status and a first reported date on collection
23   accounts reported by a co-defendant in this
24   matter.
25        Q.    And who is that co-defendant?
```

confidential

```
 1                    CAVE - 7/22/20

 2        A.    HRRG.

 3        Q.    And that co-defendant is formally

 4   referred to as Healthcare Revenue Recovery

 5   Group, LLC d/b/a ARS, Account Resolution

 6   Services.  I'm going to refer to them today as

 7   HRRG or ARS, okay?

 8        A.    Okay.

 9        Q.    Do you know anything about the

10   business that that company is involved in?

11        A.    Not beyond the fact that they're a

12   collection agency that reports data to us.

13        Q.    Okay.  So you understand they're a

14   debt collector and the accounts at issue in

15   this case are those collection accounts; right?

16        A.    Yes, sir.

17        Q.    Have you ever been deposed in

18   another case involving HRRG?

19        A.    I don't have a specific recollection

20   of that, but it is certainly possible.

21        Q.    Okay.  But as you sit here today,

22   you don't have a recollection of being deposed

23   in another matter, another case involving HRRG?

24        A.    That's correct.

25        Q.    Ms. Cave, do you understand that
```

Confidential

Page 23

```
 1                    CAVE - 7/22/20
 2   Experian provided written responses to certain
 3   interrogatories that were propounded by the
 4   plaintiffs in this case; right?
 5        A.    Yes, I do.
 6        Q.    And you verified the accuracy of
 7   some of those responses; right?
 8        A.    That's correct.
 9        Q.    Okay.  I would like to draw your
10   attention to Exhibit 10, which is a document
11   entitled Defendant Experian Information
12   Solution, Inc.'s Objections and Responses to
13   Plaintiff's Second Set of Interrogatories.
14              (Exhibit 10 marked.)
15        Q.    I will display it on the screen
16   while you are looking for that.
17              Ms. Cave, have you found that
18   document?
19        A.    I don't know what you guys are
20   seeing, but just so you know I'm not seeing a
21   document on the screen, but I don't know that
22   that is important as long as I'm able to find
23   the ones that you sent me.  I just wanted to
24   let you know.
25        Q.    Fair enough.  I understand.  Your
```

Confidential

1                    CAVE - 7/22/20

2    counsel can raise any objection if he thinks

3    you and I are on two different documents.  But

4    for the record I've got a displayed document

5    and marked it here.  I've displayed and marked

6    a document entitled Defendant Experian

7    Information Solution, Inc.'s, Objections and

8    Responses to Plaintiff's Second Set of

9    Interrogatories.

10                   Are you looking at that document

11   now?

12        A.    Yes.

13             MR. KOHLMYER:  Roland, it flashed

14        for a second and I'm not seeing any

15        documents attached either.

16             MR. TELLIS:  I'm sorry, who is that

17        speaking?

18             MR. KOHLMYER:  Skip Kohlmyer.  It

19        flashed for a second and disappeared.

20             MR. TELLIS:  Okay, Skip.  I only

21        have Ms. Cave -- I only have Ms. Cave's

22        video up so I can't tell.  I tried to

23        submit it again.  Do you see it?  I'm now

24        flipping through the pages, do you see it

25        on the screen?

Confidential

```
 1                    CAVE - 7/22/20

 2              MR. KOHLMYER:  Roland, I don't see

 3         it but your deponent may.

 4              MR. TAYLOR:  If you go to the

 5         exhibit icon and then you scroll down to

 6         submitted files I think that is how Roland

 7         submitted it and then you can just double

 8         click it.

 9              MR. TELLIS:  That's right.  I'm

10         sorry, Skip, if you go up on the top icon

11         on the green bar you find the exhibit bar

12         there will be a down arrow and there will

13         be a down arrow when I click a file, that

14         is where it goes.

15              MR. KOHLMYER:  Sorry about that,

16         sorry.  They flashed for a second and then

17         they disappeared.

18              MR. TELLIS:  I think they flash and

19         then they go into that file so you will

20         have to dig them out of there.

21              Can we proceed?

22              MR. TAYLOR:  Yes.

23         Q.   Ms. Cave, did you participate in the

24    preparation of these interrogatory responses

25    that I've marked as Exhibit 10?
```

Confidential

```
 1                    CAVE - 7/22/20

 2         A.    Yes.

 3         Q.    And if you go to the last page,

 4   there is a document entitled verification which

 5   has your signature on it; is that correct?

 6         A.    That's correct.

 7         Q.    And by signing this document, you

 8   declared under penalty of perjury that these

 9   responses were accurate; is that correct?

10         A.    Based on the information available

11   to me, yes.

12         Q.    Did you speak with any Experian

13   employees in connection with your preparation

14   or verification of this document?

15         A.    Well, technically we have in-house

16   counsel so that is technically an employee, but

17   beyond that, no.

18         Q.    So other than someone who was in the

19   role of a lawyer's position you didn't talk to

20   any Experian employees in connection with the

21   verification or preparation of this document;

22   is that right?

23         A.    Looking at it I don't believe so.

24   If we get into substance and I find something

25   that I believe that to be different, I will let
```

Confidential

                    CAVE - 7/22/20

1   you know.

3        Q.    Okay.  Other than the document

4   itself that is identified as Exhibit 10, did

5   you review any documents to assist you in

6   verifying the accuracy of this document?

7        A.    I don't have a specific recollection

8   of what I did when I did this verification, but

9   you know, due to the substance I would almost

10  likely have been looking at the documents

11  pertinent to the subject matter of this case.

12       Q.    Do you recall reviewing any of those

13  such documents in connection with your

14  verification or preparation of this document?

15       A.    Again, I don't have a specific

16  recollection from that day, but it is very

17  common practice for me to do that.

18       Q.    Okay.  And those would be among the

19  documents that you identified earlier today as

20  having reviewed in preparation for your

21  deposition?

22       A.    Yes, sir.

23       Q.    Did you consult any databases to

24  assist you in verifying the accuracy of the

25  content of this document?

```
 1                    CAVE - 7/22/20

 2              MR. TAYLOR:  Object to the form.

 3        A.    I don't believe so.

 4        Q.    I would like to focus your attention

 5   on the response to Interrogatory Number 16,

 6   which starts on the next page.  Well, these

 7   aren't page numbered, but I'm focused on the

 8   paragraph that appears right above the title

 9   heading, Interrogatory Number 17.  It starts

10   with the words, subject to and without waiving

11   its objections Experian states.

12              Let me know when you get there?

13        A.    Yes, sir, I think I'm there.

14        Q.    Take a moment, please and read that

15   paragraph to yourself and I will ask you some

16   questions about it.

17        A.    (Reviewing document.)  Okay.

18        Q.    This document, I mean, this

19   paragraph has a couple of sentences in it but I

20   want to start with the part that says, With

21   respect to ARS account numbers, and then there

22   are three of them listed there.

23   ████████████████████████████████

24   ████████████████████████████████████████

25   ████████████████████████████████████████
```



CAVE - 7/22/20

```
 1                    CAVE - 7/22/20
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```



```
 1                   CAVE - 7/22/20

 2   ████████████████████

 3        ████████████████████████

 4   ███████████████████████████████

 5   ████████████████████████████████

 6   ██████

 7        Q.    Do you know that person's name?

 8        A.    I believe at the time that was Lila

 9   Mumolo.

10        Q.    Could you spell that for me, please?

11        A.    First and last?

12        Q.    Lila I got, the last name, please?

13        A.    I believe that is M-u-m-o-l-o.

14        Q.    Is Ms. Mumolo -- if I said that

15   right, Mumolo; is that right?

16        A.    Mumolo.

17        Q.    Mumolo, I have got a California

18   problem, okay, Mumolo.  Does Ms. Mumolo -- is

19   Ms. Mumolo still employed by Experian?

20        A.    No, sir, she was fortunately able to

21   retire in the not so distant past.

22        Q.    Good for her.  When did she retire,

23   do you know?

24        A.    I believe, again, this is calling on

25   my personal knowledge, I think it was sometime
```

1              CAVE - 7/22/20

2   in late 2018 or early 2019.

3        Q.   When she was employed by Experian,

4   where did she perform her duties physically,

5   what city?

6             MR. TAYLOR:  Object to the form.

7        A.   I believe Ms. Mumolo was out of the

8   Costa Mesa, California office.  Again, that is

9   my personal knowledge.  I didn't prepare for

10  that today.

11       Q.   Understood.  When is the last time

12  you spoke with Ms. Mumolo, if ever?

13       A.   I don't know.

14       Q.   Am I correct you have not spoken to

15  Ms. Mumolo since January of 2017?

16       A.   No, I wouldn't say that.  I mean,

17  while Ms. Mumolo was employed with Experian, I

18  may have spoken to her on occasion if I had

19  questions about things pertaining to her, but I

20  can represent to you I have not spoken with her

21  about this case or this situation that we're

22  discussing today.

23       Q.   Understood.  Have you spoken to her

24  since her retirement from the company?

25       A.   No, sir.



1          CAVE - 7/22/20

1        CAVE - 7/22/20





CAVE - 7/22/20



1         CAVE - 7/22/20





CAVE - 7/22/20



```
 1              CAVE - 7/22/20
 2    ████████████████████
 3      ████████████████████████████████
 4    ██████████████████████████████████
 5      █████████████████████████████
 6      ██████████████████████████████████
 7    ███████████████████████████
 8        ███████████████████████
 9      ██████████████████
10        ██████████████████████████
11    ██████████████
12      ███████████████████████████
13    █████████████████████████████
14    █████████████████████████████
15    ████████████████████████████████
16      ████████████████████████████
17    ████████████████████████████████
18    ████████████████████████████████
19    ██████████████████████████████████
20    ██████████████████████████████████
21    ████████████
22        ██████████████████████████████
23    ███████████████████████████████
24    ████████████████████████████████
25    ████████████████████████████████
```

Page 40

```
 1                    CAVE - 7/22/20
```



```
24        Q.    Ms. Mumolo sat within the -- I'm

25   sorry, can you remind me of the department that
```

```
                       CAVE - 7/22/20
 1
 2   she is in?
 3        A.    She was in data management.
 4   Sometimes that is also referred to as data
 5   development, but they're one and the same.
 6        Q.    Is that department in Costa Mesa,
 7   California?
 8        A.    The people that I work with are out
 9   of Costa Mesa, but I can't tell you if they
10   have employees in other locations, I don't
11   know.
12        Q.    Okay.  Does that -- does that group
13   have a department head or a group head?
14        A.    Yes.
15        Q.    What is the name of that person?
16        A.    Well, my understanding is the person
17   that is over that department is Donna Smith.
18        Q.    Okay.  Do you know how long Ms.
19   Smith has been the department head?
20        A.    No, sir, I don't.
21        Q.    Do you interact with Ms. Smith
22   periodically?
23        A.    On occasion.
24   ██████████████████████████████████████
25   ██████████████████████████████████████
```

1                    CAVE - 7/22/20

2

3

4        Q.    Prior to this case, Ms. Cave, did

5   Experian ever come to learn that consumers with

6   ARS accounts were complaining about the

7   accuracy of the data being reported?

8             MR. TAYLOR:  Object to the form.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



Page 43



```
 1              CAVE - 7/22/20
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```



CAVE - 7/22/20

Page 45

CAVE - 7/22/20







Page 48

CAVE - 7/22/20





1          CAVE - 7/22/20

2 

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22        Q.    When ARS learned about this -- I'm

23   sorry, go ahead?

24        A.    I was just going to ask when you get

25   to a good spot could we take a quick break?

Confidential

```
 1                    CAVE - 7/22/20

 2        Q.    Certainly, let's do that now.

 3        A.    Okay.

 4        Q.    10 minutes, 5 minutes, something

 5   like that?

 6        A.    Yes, just short, please.

 7              MR. TELLIS:  Let's come back in 10

 8        minutes.

 9              VIDEOGRAPHER:  We're going off the

10        record at 11:03 a.m.

11              (Recess, 11:03 to 11:18 a.m.)

12              VIDEOGRAPHER:  We're back on the

13        record at 11:18 a.m.

14        Q.    Welcome back, Ms. Cave.  To your

15   knowledge, was Ms. Mumolo specifically assigned

16   to the ARS account or was she one of many folks

17   in that department that handled the data coming

18   from ARS?

19        A.    I'm sorry, I don't know.

20        Q.    Okay.  Do you know who is currently

21   responsible for reviewing data that comes from

22   ARS?

23        A.    Other than saying it is, you know,

24   the person or persons who are assigned to

25   collections in the data management department,
```

```
 1                    CAVE - 7/22/20

 2    I don't have any -- any names for you.  I don't

 3    know who is doing that.

 4        Q.    Okay.  If you wanted -- if you were

 5    back at the office and you wanted to know who

 6    today is involved in reviewing the accuracy or

 7    the data that comes from the ARS, how would you

 8    go about finding out?

 9              MR. TAYLOR:  Object to the form.

10        A.    I would just make an inquiry to the

11    department on who handles collections and then

12    ask those questions.

13        Q.    Okay.  And that is the department in

14    Costa Mesa?

15        A.    Yes.

16    ████████████████████████████████████████

17    ██████████████████████████████████████████

18    ██████████████

19              ███████████████████████

20        █████████████████████

21        ██████████████████████████

22    ██████████████████████████████████████████

23              ██████████████████████

24        ███████████████████████████

25    ██████████████████████████████████████
```

1        CAVE - 7/22/20



20       Q.    Experian has its own credit score

21  model; right, aside from FICO?

22       A.    Well, I don't know if it is Experian

23  Information Solutions, Inc., but there is an

24  Experian-owned company that does credit

25  scoring.

```
 1                    CAVE - 7/22/20

 2        Q.     What is that company called?

 3        A.     The Basis of Score, LLC.

 4        Q.     Aside from the named plaintiffs in

 5   this case, has Experian received disputes from

 6   other consumers regarding the accuracy of their

 7   ARS accounts?

 8               MR. TAYLOR:  Object to the form.

 9               MS. DYLESKI:  Join.

10        A.     I didn't specifically look into

11   that.

12   ███████████████████████████████████

13   ██████████████████████████

14   ████████████████████████████████████████

15   ██████████████████████████████████████

16   ██████████████████████████████████████

17   █████████████████████████████████████

18   █████████████

19   ██████████████████████████

20   ██████

21   █████████████████

22   █████████████████████████████

23   ██████████████████████████████████████████

24   ████████████████

25   ████████████████████████████████
```





CAVE - 7/22/20



15    Q.    Now, you mentioned Ms. Mumolo

16    retired in 2019 I think you said; is that

17    right?

18    A.    I said that, but it was to the best

19    of my personal knowledge.  I don't know

20    precisely when she retired.

21    Q.    Did Experian have layoffs in that

22    dispute investigation department in 2018?

23          MR. TAYLOR:  Object to the form.

24    A.    Are we talking about -- I don't know

25    when Experian had layoffs, but I don't know

```
 1                   CAVE - 7/22/20

 2   which department.  If you mean Ms. Mumolo, she

 3   didn't work with the investigation department.

 4        Q.    What was her department called?

 5        A.    She worked for data management or

 6   data development.

 7        Q.    Did Experian have any layoffs in the

 8   dispute resolution department or the department

 9   that conducts the dispute investigations in

10   2018?

11             MR. TAYLOR:  Object to the form.

12        A.    I don't know.

13   ████████████████████████████████████████

14   ██████████████████████████████████████████

15   ███████████████████████████████████████

16   █████████████████████████████████████████

17   █████████████████████████████████████████

18   ████████████████████████████████████████

19   ██████████████████████████████████████████

20   ██████████████████████████████████████████

21   ██████████████████████████████████████████

22   █████████

23        ████████████████

24     ██████████

25     ███████████████████████████
```



CAVE – 7/22/20

Page 60

```
 1                    CAVE - 7/22/20
 2    ███████████████
 3       ██████████████████████████████
 4    █████████████████████████████████
 5    ████████████████████████████████
 6    ██████████████████████████
 7       ████████████████████████
 8    █████████████████████████████
 9    ██████████████████████
10       ███████████████████████████████
11    █████████████████████████████████
12    ████████████████████████████████
13    ██████████████████████████
14    █████████████████████████████
15    █████████████████████████████
16    ██████████████████████████
17    ████████████
18       ██████████████████████████████
19    █████████████████████████████████
20    ████████████████████████████████
21    ██████████████████████
22       ███████████████████████████
23    █████████████████████████████████
24    █████████████████
25       ███████████████████
```







```
 1              CAVE - 7/22/20
```



CAVE - 7/22/20



CAVE – 7/22/20



Page 66

CAVE - 7/22/20

CAVE - 7/22/20



CAVE - 7/22/20



1          CAVE - 7/22/20



CAVE - 7/22/20



```
1                 CAVE - 7/22/20
```



```
16      Q.      I would like to now draw your

17   attention, please, to Exhibit 8, which is

18   entitled Defendant Experian Information

19   Solutions Second Supplemental Objections and

20   Responses to Plaintiff's Interrogatories 1, 4

21   and 5.   Let me try to pull that up on the

22   screen.

23               (Exhibit 8 marked.)

24               MR. TELLIS:  Mary Grace and others,

25         you weren't here for this discussion.  If
```

Confidential

1              CAVE - 7/22/20

2       you need to find this document, you will

3       have to get it out of the submitted

4       exhibits tab.

5              MS. DYLESKI:  I got it, thank you.

6       It is okay, I have got it.

7       Q.    Okay.  Ms. Cave, did you find -- did

8    you locate that document?

9       A.    I think so, sir.  It is -- you said

10   specifically it was 1, 4 and 5?

11      Q.    Yes, ma'am.  It is a document that

12   is entitled Second Supplemental Objections and

13   Responses to Plaintiff's Interrogatories 1, 4

14   and 5.  That is what it says in the title.

15      A.    Yes, sir.  I do believe I have that.

16   If it helps I seem to have it marked as Exhibit

17   8.

18      Q.    That is the one, thank you.  Did you

19   play -- I notice in this particular document

20   the verification signed again by Ms. Finneran.

21   Do you see that?

22      A.    Yes, sir, I do.

23      Q.    Did you play any part in the

24   preparation of Exhibit 8?

25              MR. TAYLOR:  Object to the form.

Confidential

```
 1                    CAVE - 7/22/20

 2        A.    I just need a moment to look at it.

 3        Q.    Of course, sure.

 4        A.    (Reviewing document.)  No, sir, I

 5   didn't.

 6        Q.    Okay.  But you understand that

 7   you're here to testify about this document.  My

 8   understanding, Mr. Taylor can correct me if I'm

 9   wrong, is that Ms. Finneran testified as to the

10   method of computation of information that is in

11   here, but that was the extent of what she was

12   permitted to testify about.

13             MR. TELLIS:  Is that right,

14        Mr. Taylor?

15             MR. TAYLOR:  Roland, if you look at

16        our objections I believe it is topic 39, we

17        stated that, you know, Ms. Finneran was

18        designated to provide testimony regarding

19        these particular interrogatory --

20        interrogatory responses 1, 4 and 5.  And

21        that Ms. Cave would be designated to

22        testify regarding the remainder of the

23        responses.  So she was designated to

24        testify about 1, 4 and 5 without

25        limitation.
```

Confidential

1              CAVE - 7/22/20

2          MR. TELLIS:  Who is the "she"?

3          MR. TAYLOR:  Ms. Finneran.

4          MR. TELLIS:  But Ms. Cave is

5    designated, as I understand it from your

6    responses, to testify about these as well;

7    is that correct?

8          MR. TAYLOR:  No, that is not

9    correct.  If you look at the designation,

10   again, under 39 that we served, Ms. Cave is

11   designated to testify about the remainder

12   of the discovery, the other responses to

13   plaintiff's discovery requests, so those

14   other than Experian's responses to

15   interrogatory responses 1, 4 and 5.

16         MR. TELLIS:  So when you objected to

17   scope in Ms. Finneran's deposition with

18   respect to this document, what did you mean

19   by that?

20         MR. TAYLOR:  Well, I will have to

21   take a look at that, but she was -- she was

22   examined about these responses and she

23   provided testimony regarding the responses.

24   She was not instructed to stop testimony in

25   any way with respect to our responses to

```
 1                    CAVE - 7/22/20

 2        interrogatories 1, 4 and 5.

 3             MR. TELLIS:  Yes, I understand that,

 4        but we're entitled to Experian's responses

 5        and your objection to scope.  Let's see how

 6        this goes and if we have to bring Ms.

 7        Finneran back, we will.

 8        Q.    Ms. Cave, turn your attention,

 9   please, to the second to the last document page

10   before the signature line that has the, quote,

11   second supplemental response answer there to

12   interrogatory number 5?

13        A.    Yes.

14        Q.    It is the page that has some content

15   and then a lot of blank space below it.  Are

16   you with me?

17        A.    Yes.

18   ███████████████████████████████████████

19   ███████████████████████████████████████████

20   ██████████████████████████████████

21   ███████████████████████████████████

22   ██████████████████████████████████████████

23   ████████████████████████████████████████████

24   ██████████████████████████████

25        ████████████
```



CAVE - 7/22/20



CAVE - 7/22/20

```
 1                    CAVE - 7/22/20

 2  ████████████████████████████████████

 3     ███████████

 4         ███████████████████████████

 5     ███████████████

 6     Q.    Did you speak to Ms. Finneran --

 7  have you spoken to Ms. Finneran in connection

 8  with this matter?

 9          MR. TAYLOR:  Object to the form.

10  A.    No.

11     ██████████████████████████

12  ███████████████████████████████

13  ████████████████████████████████████

14  ████████████████████████████████████

15       ████████████████████████████

16     ██████████████████

17     █████████████████████████████████

18  █████████████████████████████████

19  █████████████████████████████████

20  ███████████████████

21       ████████████████████████████

22       ████████████████████

23     █████████████████

24     ████████████████████████████████████

25  ████████████████████████████████████
```





CAVE - 7/22/20



Page 83



```
 1              CAVE - 7/22/20
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```



Page 85



1    CAVE - 7/22/20

1                    CAVE - 7/22/20

2       

3

4

5

6

7

8

9

10

11         Q.    If you don't mind can we take a

12    quick break?

13         A.    Sir, can you tell me how long?

14               VIDEOGRAPHER:  Off the record at

15    12:01 p.m.

16               (Recess, 12:01 to 12:14 p.m.)

17               VIDEOGRAPHER:  We're back on the

18    record at 12:14 p.m.

19         Q.    Ms. Cave, if you wouldn't mind, take

20    out Exhibit 12, which is the credit report for

21    Omar Santos dated July 24th, 2017, Bates

22    numbered 190 through 205.

23               (Exhibit 12 marked.)

24         A.    I'm sorry, I was on mute, I have it.

25         Q.    Okay.  Let me just -- let me just

```
 1                    CAVE - 7/22/20

 2   submit it.  Give me one minute, please.

 3            Exhibit 12 has Mr. Santos' name, the

 4   date of July 24th, 2017 and a report number at

 5   the top right-hand corner; correct?

 6        A.    Yes, sir.

 7        Q.    And at the top it says, in response

 8   to your recent request we are pleased to send

 9   you this credit report; right?

10        A.    Yes, it does.

11        Q.    And this credit report was prepared

12   by Experian in the ordinary course of

13   Experian's business; right?

14        A.    Yes, sir.

15   ████████████████████████████████████████

16   ██████████████████████████████████████

17   ████████████████████████████████████

18   ████████████████████████

19   ██████████████████████████████████

20   ██████████████████████████████████████

21   ██████████████████████████████████

22   ████████████████████████████████████

23   ████

24   ██████████████████████████████████████

25   ████████████████████████████████████████
```

CAVE - 7/22/20



1        CAVE - 7/22/20



17      Q.    So I want to first take you to page

18  3 of the document, which is Bates numbered 192.

19  And there is a payment history legend there

20  with some various boxes that correspond to

21  possible payment histories; right?

22      A.    Well, could you clarify for me if

23  you are looking at the actual payment history

24  section or if you are looking at the account

25  history section, because for payment history I

Confidential

1                    CAVE - 7/22/20

2    only see one box.

3         Q.    No.  Right now on page 3 at the top

4    right-hand corner the legend -- the legend it

5    says, payment history legend and there are

6    various choices there; right?

7         A.    Yes.

8         Q.    One of them is C for collection;

9    right?

10        A.    That's correct.

11        Q.    Now, go with me, please, to page 6.

12   And at the top of the page there is an account

13   associated with a company called Central

14   Financial Control.  Do you see that?

15        A.    Yes.

16        Q.    And this is a collection account;

17   right, is what it says under status on the

18   right-hand side?

19             MR. TAYLOR:  Object to the form.

20        A.    That is correct.

21        Q.    And under payment history, there is

22   some four years' worth of information there;

23   right?

24        A.    That's correct.

25        Q.    The first entry is in December of

```
 1                  CAVE - 7/22/20

 2    2013 there is a C for collection; right?

 3         A.    That's correct.

 4         Q.    And then in the following years

 5    there is either a C or an ND; right?

 6         A.    That's correct.

 7         Q.    And what does ND stand for?

 8         A.    No data.

 9    ███████████████████████████

10    ██████████████████████████████████

11    ████████████████████████████████

12    ███████████████████████████████████████

13    ██████████████████████████████████████

14    ██████████████████

15    ████████████████████████████████

16    ███████████████████████████████████████

17    █████████████████████████████

18    ██████████████████

19            █████████████████████████

20    ███████████████████████████████

21    ██████████████████████████████████

22    ████████████

23    ███████████████████████████████████████

24    ████████████████████████

25    █████████████
```

Confidential

                    CAVE - 7/22/20

1

2      Q.    And this account remains in

3   collection for some period of time up through

4   the date of this report which is July of 2017;

5   right?

6      A.    Correct.

7      Q.    And under date of status on the

8   second column from the left it says December

9   2013 as date of status; right.

10     A.    It does.

11     Q.    Now, looking at this as a snapshot

12  under payment history, I can tell that this

13  account has been in collection for some four

14  years; right?

15          MR. TAYLOR:  Object to form.

16     A.    It has actually been in collection

17  since May of 2012 the date it was opened,

18  because this is a collection agency.

19     Q.    Understand.  But under payment

20  history, I have a first box of December 2013

21  and a last box of July 2017; right?

22     A.    Yes.  Those are the current month of

23  displayable data as of the date of this report.

24     Q.    And if I'm looking just under that

25  heading, payment history, I see this account

```
 1                    CAVE - 7/22/20
 2  has been in collection for some four years;
 3  right?
 4            MR. TAYLOR:  Object to the form.
 5       A.    Well, you see that we're displaying
 6  the four years of account history, but again,
 7  this account has been in collections since its
 8  opened date.
 9       Q.    I understand that, just stay with
10  me.  If I'm looking at just the information
11  under payment history, I see a history of
12  collection activity dating back to December of
13  2013; right?
14            MR. TAYLOR:  Object to form.
15       A.    Yes, the first collection box is set
16  at December 2013.
17  ████████████████████████████████
18  ██████████████████████████████████████████
19  ██████████████████████████████████████████
20  ██████████████████████████████████████████
21  ████████████████
22  ██████████████████████████
23  ████████████████████████████████
24  ██████████████
25  ██████████████████████
```



Page 94

CAVE – 7/22/20



Page 96



CAVE - 7/22/20

CAVE - 7/22/20





CAVE - 7/22/20





```
 1                    CAVE - 7/22/20

 2    ████████████

 3                   ██████████████████████████

 4        ██████████

 5        ████████████████

 6        Q.    Okay.  Let's take a look -- put that

 7   report aside for a moment.  Let's look at a

 8   document that your counsel provided last night

 9   or I think it was last night entitled credit

10   profile report.  Try to find it here.

11            Do you have that document, Ms. Cave?

12   It is a document entitled credit profile report

13   Bates number 2903 through 2910?

14        A.    Not if it wasn't in the exhibits

15   provided to me, I don't.

16            MR. TELLIS:  Mr. Taylor, did you

17        give her a copy of the document you

18        produced?  You said she might be referring

19        to it today.

20            MR. TAYLOR:  I don't believe she has

21        a hard copy of it, but if you can upload

22        it.

23            MR. TELLIS:  I've displayed it.

24            MR. TAYLOR:  Okay.

25        A.    I haven't been able to --
```

Confidential

Page 102

```
1                    CAVE - 7/22/20
2              MR. TELLIS:  Mr. Taylor, can you
3       email it to her?
4              MR. TAYLOR:  Ms. Cave, are you able
5       to view emailed files?
6       A.    I guess, I mean I can pull up my
7    email on the screen it is just going to hide
8    everything.
9       Q.    Were you not intending to refer to
10   this document today?
11      A.    Sir, I don't show up to a deposition
12   with anything.  I wait for the exhibits to be
13   provided to me.  I don't assume anything, it is
14   your depo.
15      Q.    So when your counsel said you may be
16   referring to this today, I was supposed to know
17   that that meant you may not?
18      A.    I don't know what you are supposed
19   to know.
20             MR. TAYLOR:  What we did is we
21       produced that document.  And for ease of
22       reference she may be referring to it based
23       on certain questions.  Plaintiffs did not
24       provide that as an exhibit.  We're going to
25       try to get her the document now.
```

Confidential

1                    CAVE - 7/22/20

2              MR. TELLIS:  How are we going to

3         refer to it as an exhibit if you only gave

4         it to us last night?

5              MR. TAYLOR:  For the record, I think

6         we produced it on Monday.  And it was

7         produced in an attempt to help facilitate

8         certain questions.  And it was not included

9         in the exhibit list, but again, we are

10        going to email it and see if she can view

11        it.

12             MR. TELLIS:  Great.

13             MR. MANN:  Can you see it now?  I'm

14        showing it running.

15             MR. TAYLOR:  Yes, you can see that

16        on the screen.

17        A.   I can.

18             MR. MANN:  I gave you control of the

19        document.  You should be able to control

20        the pages.

21        Q.   Did Ms. Cave say she can or can't?

22        A.   I can.

23        Q.   Okay.  Good.  I am going to blow it

24   up here so that maybe that helps a little bit.

25        A.   I think I can, too.  Let me see if I

```
 1                    CAVE - 7/22/20

 2   can.

 3        Q.    I think I gave you -- yes, okay.

 4        A.    Can someone tell me how to make that

 5   box larger?  Is it a drive box?

 6        Q.    You might have to drag the other

 7   boxes smaller.  Well, you will figure it out.

 8             MR. MANN:  I just gave you access to

 9        the document, too, so you should be able to

10        navigate through it.

11        A.    I'm just trying to scoot it over so

12   I can make it bigger.

13             MR. MANN:  This is Jonathan Mann

14        talking.

15        A.    My screen got bigger, the document

16   didn't.  Go ahead and I will do my best.

17        ████████████████████████████████████

18   ████████████████████████████████████████████

19   ██████████████

20        ██████████████

21        ██████████████████████████████████████████

22        ████████████████████████████████████████████

23   ████████████████████████████████████████████████

24   ██████████████████████████

25        ██████████████████████████████████████████
```



1    CAVE - 7/22/20





CAVE - 7/22/20





CAVE - 7/22/20





1    CAVE – 7/22/20



```
 1                    CAVE - 7/22/20

 2              ████████████████

 3           ████████████████████

 4       Q.    Have you ever looked at Experian's

 5  website?

 6       A.    I mean, that is a pretty vague

 7  question.  I mean, Experian Information

 8  Solutions, I do often look on their consumer

 9  site to move around like someone who is

10  processing disputes.  But Experian has other

11  sister corporations like Experian Consumer

12  Services that offer consumers direct products

13  and services and I don't really get on those.

14       Q.    Well, you understand that on the

15  website Experian.com there are resources that

16  are available that provide advice and

17  information to consumers and third-parties

18  about how to read and interpret credit reports

19  and so forth?

20              MR. TAYLOR:  Object to the form.

21       A.    Yes.  Within the dispute center

22  those are ones that are coming from Experian

23  Information Solutions, but again, there are --

24  Experian.com also houses Experian Consumer

25  Services which is direct-to-consumer products,
```

```
 1                    CAVE - 7/22/20

 2   and they do have also literature about credit

 3   reporting.

 4        Q.    That literature is sometimes in the

 5   form of a blog written by someone on Experian's

 6   behalf; right?

 7               MR. TAYLOR:  Object to the form.

 8        A.    That is my understanding.

 9   █████████████████████████████████████

10   ██████████████████████████████

11   ████████████████████████████████████████

12   ████████████████████

13        ██████████████████████████████

14    ████████████

15   ████████████████████████████████████████

16   ███████████████████████████████████████

17   █████████████████████████████████

18   █████████████████████████████████

19   ████████████████████████

20        █████████████████████████████

21   ████████████████████████████████

22   ██████████████████████████████

23    █████████████████████████████████████

24   ████████████████████████████████

25   ███████████████████████████████
```

CAVE - 7/22/20





Page 116

CAVE – 7/22/20

```
 1                    CAVE - 7/22/20
 2  ██████████████████████████████████
 3  ██████████████████████████
 4         █████████████████████████
 5     ████████
 6         ██████████████████
 7      ████████████████████████████████
 8  ██████████████████████
 9      ████████████████████████
10  █████████████████████████████████
11  █████████████████████████████████
12  █████████████████████████████████
13  ███████████████████████████████████
14     █████████████
```

15        Q.    What department is responsible for

16  doing that vetting?

17        A.    Credentialing.

18        Q.    And is there a head of that

19  department or a manager?

20        A.    Yes.

21        Q.    What is that person's name, please?

22        A.    Peter Henke.

23        Q.    When Mr. Henke is typically at work,

24  what city does he perform his duties in?

25        A.    I don't know.

Page 118

1              CAVE - 7/22/20

2      Q.    He is not in Allen, Texas?

3      A.    No, he isn't.





CAVE - 7/22/20

Page 120



CAVE - 7/22/20



Page 121

CAVE – 7/22/20

1          CAVE - 7/22/20





Page 123

CAVE - 7/22/20





CAVE - 7/22/20

```
 1              CAVE - 7/22/20

 2   ████████████████████████████████████

 3   ████████████████████████████████████

 4   ████████████████████████████████████

 5       Q.    So here you said it was a status

 6   dispute meaning they were disputing the date of

 7   status?

 8              MR. TAYLOR:  Object to the form.

 9              MS. DYLESKI:  Join.

10       A.    Well, my understanding is not that

11   the dispute was the date of status.  I believe

12   the dispute said that the account was re-aged,

13   which is not disputing the date of status,

14   but --

15       Q.    I see.

16       A.    -- a dispute such as that concerning

17   the status of the account are considered status

18   disputes.

19       ███████████████████████████████

20   ████████████████████████████████████

21   ████████████████████████████████████

22   ████████████████████████████████

23   ████████████████████████████████████

24   ████████████████████████████████████

25   ████████████████
```







CAVE - 7/22/20



```
1              CAVE – 7/22/20
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

CAVE - 7/22/20



1                      CAVE - 7/22/20



14      Q.    Let's go off the record for five

15   minutes.  I may be coming to the end of my line

16   of questions.  Let's go off the record, please.

17              VIDEOGRAPHER:  The time is 1:09 p.m.

18              (Recess, 1:09 to 1:18 p.m.)

19              VIDEOGRAPHER:  We're back on the

20        record at 1:18 p.m.

21      Q.    Ms. Cave, I have just a couple of

22   follow-up questions.  You testified at the

23   outset that you have provided deposition

24   testimony many times; right?

25      A.    Yes, sir.

1          CAVE - 7/22/20



```
 1               CAVE - 7/22/20

 2    ████████████████████████████████

 3  ████████████████████

 4      ██████████████████████████████

 5   █████████████████████

 6   ██████████████████████████

 7  ████████████████

 8      ████████████████████████████

 9   ████████████████████████
```

10        Q.    Well, thank you for your time, Ms.

11   Cave.  Those are the questions I have for now,

12   subject to our meet and confer that I intend to

13   have with your counsel.

14        A.    Okay, thank you.

15             MR. TELLIS:  Pass the witness.

16             MS. DYLESKI:  No questions.

17             MR. TAYLOR:  No questions from

18   Experian.  We would request read and sign

19   and also request under the stipulated

20   protective order that the entirety of the

21   deposition transcript be treated as

22   confidential pending the opportunity to

23   review for more specific confidentiality

24   designations.

25             MR. TELLIS:  I heard the request and

```
 1                CAVE - 7/22/20

 2   I intend to abide by it.  I don't agree

 3   that it needs to be, but I intend to -- I

 4   will accept your request.

 5        MR. TAYLOR:  Thank you.

 6        MR. TELLIS:  Thank you everyone.

 7        VIDEOGRAPHER:  This marks the end of

 8   the deposition.  We're going off record at

 9   1:20 p.m.

10        (Deposition adjourned at 1:20 p.m.)

11

12        _____

13             KIMBERLY CAVE

14

15        Subscribed and sworn to before me

16        this _____ day of _____, 2020.

17

18   _____

19   Notary Public

20

21

22

23

24

25
```

Confidential

1                    CAVE - 7/22/20

2          C E R T I F I C A T E

3

4          I, SUSAN S. KLINGER, a certified

5     shorthand reporter within and for the State

6     of Texas, do hereby certify:

7          That KIMBERLY CAVE, the witness

8     whose deposition is hereinbefore set forth,

9     was duly sworn by me and that such

10    deposition is a true record of the

11    testimony given by such witness.

12         I further certify that I am not

13    related to any of the parties to this

14    action by blood or marriage; and that I am

15    in no way interested in the outcome of this

16    matter.

17         IN WITNESS WHEREOF, I have hereunto

18    set my hand this 1st of August, 2020.

19

20    _____

21          Susan S. Klinger, RMR-CRR, CSR

22          Texas CSR# 6531

23

24

25

```
 1                      CAVE - 7/22/20

     NAME OF CASE:

 2   DATE OF DEPOSITION:

 3   NAME OF WITNESS:

 4   Reason Codes:

 5          1.  To clarify the record.

 6          2.  To conform to the facts.

 7          3.  To correct transcription errors.

 8   Page _____ Line _____ Reason _____

 9   From _____ to _____

10   Page _____ Line _____ Reason _____

11   From _____ to _____

12   Page _____ Line _____ Reason _____

13   From _____ to _____

14   Page _____ Line _____ Reason _____

15   From _____ to _____

16   Page _____ Line _____ Reason _____

17   From _____ to _____

18   Page _____ Line _____ Reason _____

19   From _____ to _____

20   Page _____ Line _____ Reason _____

21   From _____ to _____

22   Page _____ Line _____ Reason _____

23   From _____ to _____

24

25                          _____
```