**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

OMAR SANTOS and AMANDA CLEMENTS on behalf of themselves and all others similarly situated,

    Plaintiffs,

vs.

**Case No 1:19-cv-23084-KMW**

HEALTHCARE REVENUE RECOVERY GROUP, LLC d/b/a ARS ACCOUNT RESOLUTION SERVICES and EXPERIAN INFORMATION SOLUTIONS, INC.,

    Defendants.

_____/

**REPLY OF DEFENDANT, HEALTHCARE REVENUE RECOVERY GROUP, LLC.
 d/b/a ARS ACCOUNT RESOLUTION SERVICES IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT [DE 59]**

### I. Plaintiffs' characterization of their claims against ARS

In their Opposition to Summary Judgment, Plaintiffs now assert that there is evidence that ARS violated the FCRA by "*willfully breaching its duty to investigate inaccurate and incomplete information contained in Plaintiffs' credit reports*", which resulted in the "*alteration of delinquency-related dates and the removal of account history*" and made the debts "*appear more recent than they actually were.*" This latest iteration of Plaintiffs' claims against ARS does not alter the fact that the undisputed record demonstrates no genuine issue of material fact that ARS did not willfully violate the FCRA. Plaintiffs have presented absolutely no evidence that ARS knowingly or recklessly failed to adequately investigate the single Automated Consumer Dispute Verification ("ACDV") it received for Clements' July 26, 2017 dispute, which is the only Clements dispute at issue according to the operative Complaint [**DE 1, ¶43-47**]. Further, Plaintiffs have presented no evidence that ARS even received the only Santos dispute at issue according to the Complaint [**DE 1, 37-42**].[1] The undisputed record evidence confirms that no conduct by ARS resulted in the "alteration of delinquency-related dates," the "removal of account history," or the appearance that Plaintiffs' debts were "more recent than they actually were."

Despite Plaintiffs' varying focus throughout this litigation, first, on ARS supposedly "deleting account history," "intentionally altering dates," "furnishing false information," "improperly re-dating delinquency dates," and "re-aging accounts with every dispute" [**DE 1, ¶20-28**], and now, on ARS allegedly "failing to fully complete" ACDV forms in responding to Plaintiffs' disputes by providing "missing account history" **[DE 64, p. 4]**; the record evidence is undisputed that ARS did not willfully fail to adequately investigate the only dispute it received that is at issue in this case. Not only do Plaintiffs fail to define the alleged "problem" they claim

---

[1] Although Plaintiffs refer to sixteen (16) disputes by Santos, none of them are alleged in the Complaint, and are therefore beyond the scope of the operative pleadings in this case.

ARS could have "fixed", they present no evidence to show that *even if* ARS had done what Plaintiffs think ARS should have done, that it would have "fixed" the alleged "problem." Moreover, Plaintiffs' opinion that ARS's investigation or response was inadequate is not the standard as to whether ARS complied with the FCRA.

In their effort to maintain a massive class action involving potentially millions of people and billions of dollars, Plaintiffs suggest without any proof, that certain data fields like "Date of Status"/"Payment Level Date" on credit reports impact accounts that are in "collection status" the same way they impact accounts that are not in "collection status". This suggestion is dispelled by the evidence that those data fields have no impact on a collection account because the status of a collection account *never changes* from the "Open Date" of the account. This differs from other types of accounts that are delinquent but *not in collection status* and actually do *change in status over time* (i.e., past due 30-days, 60-days, 90-days). Once an account is in collections, the status of the account remains "collection" and is *not impacted* by "Date of Status", "First Reported Date" or "Payment Level Date". The record is replete with repeated explanations that the status of a collection account does not change and that in making credit determinations, the only date creditors consider on a collection account listed in a credit report is the "Open Date." **[DE 65-4, pp. 35-36; 45-47; 52-53; 63-64; 66-67;100]**

It is undisputed that the "Open Date" with regard to all the ARS collection accounts of Plaintiffs *never changed*. Similarly, the undisputed evidence shows that the only "delinquency-related" date that triggers the "seven-year rule" for how long a collection account remains on a credit report is the "Date of First Delinquency", which also remained unchanged on all of Plaintiffs' accounts. **[DE 65-2, [pp. 48-49].** Consequently, there is no evidence that any conduct by ARS "resulted in the alteration of delinquency-related dates" or "removal of account history"

3

as Plaintiffs contend and none of the collection accounts were "made to appear more recent than they actually were" by any action of ARS.

Plaintiffs' apparent confusion between the collection accounts at issue in this case, and non-collection accounts, which are not, does not raise a genuine issue of material fact with regard to Plaintiffs' claims against ARS. Plaintiffs cannot show any wrongdoing, let alone willful conduct on the part of ARS that resulted in purportedly "inaccurate" information on Experian reports.

## II. Plaintiffs' characterization of the record evidence

### A. Plaintiffs' asserted disputed and additional facts do not raise a genuine issue of material fact as to ARS

Plaintiffs' assertion that sixteen (16) facts are "disputed" in their Statement of Material Facts [**DE 65**] is an attempt to obfuscate the record to manufacture a genuine issue of material fact that does not exist.[2] Plaintiffs' mischaracterization of the evidence and testimony, however does not convert undisputed facts into disputed facts any more than it renders immaterial facts material for the purposes of summary judgment.

In their dispute of Statement 6, Plaintiffs conflate two completely different things: deletion of *an entire account* from further credit bureau reporting, which ARS *can do* by submitting a deletion request through the e-OSCAR platform[3] [**DE 60-3, pp. 58-59 and 61-62**], and deletion or removal of *account data* submitted through Metro 2 format or e-OSCAR platform, which ARS *cannot do* once the data has been input [**DE 60-3, p. 45**]. Despite Plaintiffs' attempt to raise an issue of fact by asserting conflicting statements by ARS, the record evidence is undisputed that ARS did not, does not, and cannot delete *account data* once it is furnished electronically to a credit reporting agency.

---

[2] Plaintiffs also assert thirty-one (31) "additional" facts to which ARS files its Reply Statement of Material Facts.
[3] A deletion request is submitted through e-OSCAR utilizing an Automated Universal Dataform ["AUD"].

Plaintiffs' dispute of Statement 14 is immaterial. It involves a Clements dispute dated weeks before the July 26, 2017 dispute letter, which is the only Clements dispute at issue **[DE 1, ¶43-47]**. Similarly, Plaintiffs' disputes as to Statements 15 and 16 are not material as they do not pertain to the July 27, 2017 Santos dispute letter, which is the only Santos dispute at issue in this case. **[DE 1, ¶37-42]**.

Plaintiffs' disputes as to Statements 19, 20, and 38 are immaterial. The evidence is undisputed that Experian, not ARS, calculates "Date of Status" and "First Reported Date"; the Experian witnesses did not state that either date is calculated "based on the information reported by HRRG." However, Experian's witness did testify that the Experian data processing rule caused the account history to not be displayed, which appears to have cause the Date of Status to change. **[DE 65-3, pp. 41-42; DE 65-4, pp. 48-49]** Plaintiffs' statement regarding "*all ACDVs completed by HRRG for disputes by Plaintiffs*" is completely unfounded as ARS is not in possession of and has not produced any of the actual "ACDV responses" with regard to Plaintiffs **[DE 65-2, pp. 64].** The documents to which Plaintiffs refer were produced by Experian, have not been identified as *actual* "ACDV responses", and do not contain an "account history grid" as Plaintiffs assert **[DE 65-10 and DE 65-11].** Nothing in the cited witness testimony suggests what Plaintiffs are claiming, that ARS did not "*adequately" investigate* Plaintiffs' disputes, that ARS "*would have noticed that the account history was blank,*" or that ARS "*could have corrected the error."* The testimony is not even remotely close to supporting these assertions, which are nothing more than baseless suppositions by Plaintiffs without any evidentiary support.

The disputes of Statements 21 and 26 are immaterial as the Date of Status/Payment Level Date is calculated by Experian, not furnished by ARS and the data processing rule was set by Experian, not ARS **[DE 65-3, pp. 41-42; 58-61].**

5

Plaintiffs' disputes as to Statements 30 and 31 are immaterial. The "availability" of the subject Experian processing rule involves Experian only; all discovery as to how Experian data affects credit scoring models is complete as to ARS. On collection accounts, the only date considered by third party creditors is the "Open Date" and the undisputed record confirms that the "Open Date" was accurately furnished by ARS on all of Plaintiffs' accounts and never changed **[DE 65-4, pp. 35-36; 45-47; 52-53; 63-64; 66-67; 100].**

Plaintiffs' dispute of Statement 32 is immaterial. Plaintiffs' Exhibit 11 is an Experian "Credit Profile Report", not an ARS document and there is no record evidence that ARS was involved in any way in the creation or publication of this document **[DE 65-12].**

Plaintiffs' disputes as to Statement 35, 36, 37, and 39 are immaterial. There is no evidence that ARS furnished "inaccurate" account data to Experian or that any of the ARS dates were inaccurate; how Experian handles, compiles, maintains, or discloses account data in its reports is beyond ARS's control. There is no evidence that ARS "*suppressed account history*" or that ARS has anything to do with "payment history" on Experian credit reports. Any further discovery as to how creditors use Date of Status in credit decisions does not involve ARS.

Most of Plaintiffs' purported "disputed facts" are immaterial to their claims against ARS and do not affect the outcome of the case as to ARS. Moreover, Plaintiffs' asserted "disputed facts" are either mischaracterizations of evidence or do not raise genuine factual disputes regarding Plaintiffs' claims against ARS.

Mere "conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." Vozzcom, Inc. v Great Am. Ins. Co., 666 F.Supp.2d 1332, 1336 (S.D. Fla. 2009) (for factual issues to be considered genuine they must have a real basis in the record) (*citing* Ellis v. England, 432 F.3d. 1321, 1326 (11th Cir. 2005)). The purpose of summary judgment is to separate real, genuine issues from those which are format or pretended. Tippens v. Celotex,

805 F.2d 949, 953-954 (11th Cir. 1986); Sosa v. Hames, 581 F.Supp.2d 1254, 1266 (S.D. Fla. 2008). Further, the "mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." Chapman v. AI Transp., 220 F.3d 1012, 1023 (11th Cir. 2000); Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995).

Here, Plaintiffs simply list references to the record that are either not real, genuine disputes of fact as to ARS, or are not material to the outcome of Plaintiffs' claim against ARS, as they involve issues related to Experian.

### B. No record evidence supports Plaintiffs' claims that ARS conducted an inadequate investigation

There is no support in the record for Plaintiffs' challenge to ARS's investigation of the "disputed, inaccurate credit information reported by Experian." Plaintiffs' alleged "dispute" can be reduced down to one unfounded supposition: that ARS did not complete the "account history" on the Clements ACDV response and their belief that not doing so amounted to a failure of ARS to correct allegedly inaccurate information in Experian reports.[4] Plaintiffs assert that ARS merely reaffirmed the "disputed information" that it previously reported to Experian, without any evidence demonstrating that the "previously reported" information furnished by ARS was actually disputed by either Plaintiff. There is also no evidence to support Plaintiffs' claim that had ARS "*adequately investigated*" the dispute and "*fully responded to Experian*" that the "*error on Plaintiffs' credit reports would have been corrected.*"

Unfortunately, the documents which Plaintiffs rely on as "ACDV responses" are not ARS's *actual* ACDV responses and have not been identified as such by any party, so they do not constitute

---

[4] While Plaintiffs also mention that ARS treated the Clements ACDV as a "non-specific" as opposed to a "specific" dispute, this distinction does not raise a genuine issue of material fact, as there is no evidence that ARS's response would have been any different.

admissible evidence **[DE 65-10 & 65-11]**. Moreover, the record is devoid of any documentation of either any actual ACDV Experian submitted to ARS or ARS's response. Even when considering those documents in the light most favorable to Plaintiffs, and assuming the data contained in them is accurate, there is no "account history" field or grid on the document. Further, there is no evidence that the omission of "account history" purportedly associated with the Clements July 26, 2017 dispute rendered ARS's response "inadequate".

Even though one Experian witness testified that if a responder populates the "response history grid", that the data is added to the file, no witness testified that such additional data would have corrected any of the purportedly inaccurate dates [**DE 65-4, p. 49**]. Moreover, both Experian witnesses testified that the Experian data processing rule invoked on ARS accounts was causing the status date to change to a more recent date and preventing the display of account history [**DE 65-3, 30-3; DE 65-4, pp. 46-48**]. As neither witness testified that the addition of grid characters in a response would have overridden the processing rule, the evidence indicates that any added account history would have been suppressed by the rule also, and would not have stopped the debts from appearing "more recent".

Plaintiffs can present no evidence that ARS willfully failed to respond to the only ACDV at issue in this case, or that even if ARS had provided supposed "missing account history" data with the purported ACDV response, that the allegedly "inaccurate reporting" would have been changed or corrected. There is certainly no evidence that ARS *actively removed or deleted* account history data or that ARS inaccurately reported either the "Open Date" or the "Original Delinquency Date" on the documents that Plaintiffs refer to as "ACDV responses". The asserted "re-aging" problem, as perceived by Plaintiffs would have remained since the Experian processing rule invoked on ARS accounts would have suppressed the additional account history data as well.

### C. The ARS Declaration is not a sham

Plaintiffs assert that David Friedlander's declaration is a "sham", in support, they rely on two statements which they claim are contradicted by record evidence. Contrary to Plaintiffs' assertions, Friedlander's statement that ARS is unable to alter or delete account history reported to credit reporting agencies, actually *confirms* deposition testimony of the ARS witness **[DE 65-2, p. 45]**. Just as they confused collection accounts and non-collection accounts in an effort to create an issue of fact, Plaintiffs also confuse deletion of *an entire account* from further credit bureau reporting, which ARS *can do* through a deletion request [**DE 65-2, pp. 58-61**], with deletion of *account data* furnished to credit reporting agencies, which ARS *cannot do* once the data has been input [**DE 60-3, p. 45**]. Plaintiffs attempt to present the Declaration statement as contradictory to the deposition testimony when it is not. The record evidence is undisputed that ARS did not, does not, and cannot remove or delete *account data* once it is furnished electronically to a credit reporting agency.

Further, Friedlander's statement regarding ARS not receiving an ACDV for the July 27, 2017 Santos dispute does not contradict the earlier discovery response of ARS, which discussed the handling of disputes by Plaintiffs in general. ARS never stated that it received an ACDV regarding the July 2017 dispute letter of Santos and there is no evidence in the record that refutes the accuracy of the statement in the Declaration.

The only "sham" is Plaintiffs' deliberate mischaracterization of evidence and misrepresentation of Declaration statements as contradictory to deposition testimony or other evidence when they are not, in an attempt to create an issue of fact where none exists.

### III. Plaintiffs' characterization of damages

In opposing summary judgment on the issue of statutory damages for willfulness, Plaintiffs do not present facts that support a finding of knowing or reckless noncompliance with the FCRA

by ARS. Although they state generally that willfulness exists, they do not offer any facts that ARS's actions were in fact, willful, knowing, or reckless. Plaintiffs claim entitlement to statutory damages simply because they believe there are inaccurate dates on their credit reports, yet they fail to demonstrate any willful conduct by ARS.

Nearly all the cases cited by Plaintiffs discuss willfulness in the conduct of a credit reporting agency, not a data furnisher. In the Harris v. Mexican Specialty Foods, Inc. case, the Eleventh Circuit specifically stated that it is inappropriate to assume willfulness. Harris, 564 F.3d 1301, 1313 (11th Cir. 2009). In Collins v. Experian Info. Sols., Inc., 775 F.3d 1330, 1336 (11th Cir. 2015), the Court found that the conduct at issue did not rise to the level of "running a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." (*citing* Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 69 (2007)). The Collins Court concluded that Experian's taking no steps beyond submitting an ACDV to the creditor regarding the disputed entry might have been negligent, but willfulness or recklessness is a higher standard that had not been met. Recklessness generally requires "action entailing an unjustifiably high risk of harm that is either known or so obvious that is should be known." Williams v. First Adv. LNS Screen. Sols., Inc., 947 F.3d 735, 745 (11th Cir. 2020) (willfulness could be shown in Experian's recognition of shortcomings in its protocol and failure to follow its own procedures twice). In Pedro v. Equifax, Inc., 868 F.3d 1275, 1283 (11th Cir. 2017), the Eleventh Circuit affirmed dismissal of the complaint, finding that because TransUnion adopted an interpretation of the law that was objectively reasonable, it did not willfully violate the FCRA. In Marchisio v. Carrington Mortg. Servs., LLC, 919 F.3d 1288, 1302 (11th Cir. 2019), the Court identified numerous "egregious" acts that supported the finding of willful conduct. No such egregious conduct exists here, and ARS did not "ignore" repeated "warning signs", especially since neither Plaintiff lodged a dispute directly to ARS.

10

Here, Plaintiffs present no evidence of any "reckless" conduct to show the higher standard of willfulness by ARS when it investigated and responded to the Clements dispute within the parameters of the ACDV it received from Experian. Rather, Plaintiffs' beliefs that ARS conducted an inadequate investigation rely entirely on their unsupported assertions that willfulness should be inferred from the fact that ARS did not fill in a grid on the purported "ACDV response" form.

While statutory damages are an alternative to actual damages, recovery still requires a showing of willful noncompliance with the FCRA. Notably, in <u>Lindsey v. Experian Info. Sols., Inc.</u>, Case 2:15-cv-02353-AKK, 2017 U.S. Dist. LEXIS 12708, *13-14 (N.D. Ala. Jan. 31, 2017) (summary judgment granted), the Court pointed out that both the Supreme Court and the Eleventh Circuit "have made clear that 'objective unreasonableness' is a high standard and that subjective bad faith, alone, is insufficient to prove a willful violation of the FCRA." Plaintiffs can present no evidence that ARS's investigation or response was objectively unreasonable or that ARS acted with knowledge or reckless disregard.

### IV.     Plaintiffs' assertions regarding further discovery

Any additional discovery regarding the impact of account dates on credit reporting and how third parties view credit reports would not involve ARS; all the evidence as to the dates that impact the reporting of collection accounts is already in the record. As such, the only date considered by third party creditors is the "Open Date" and the undisputed record establishes that ARS accurately furnished and never changed the "Open Date" on all of Plaintiffs' accounts.

### V.     Conclusion

Although Plaintiffs' characterization of their claims has been somewhat of a "moving target", the undisputed record demonstrates that ARS did not willfully violate the FCRA.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on **October 5, 2020**, via the Court Clerk's CM/ECF system which will provide notice to all parties' counsel of record by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may also access this filing through the Court's CM/ECF System.

*/s/ Mary Grace Dyleski*
Ernest H. Kohlmyer, III
Florida Bar No.: 110108
Skohlmyer@shepardfirm.com
Mary Grace Dyleski
Florida Bar No.: 143383
mdyleski@shepardfirm.com
Shepard, Smith, Kohlmyer & Hand, P.A.
2300 Maitland Center Parkway, Suite 100
Maitland, Florida 32751
Phone: (407) 622-1772
Fax: (407) 622-1884
*Attorneys for Defendant Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services*