UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 19-23084-CIV-WILLIAMS

OMAR SANTOS, *et al.*,

    Plaintiffs,

vs.

HEALTHCARE REVENUE
RECOVERY GROUP, LLC, *et al.*,

    Defendants.
_____/

### ORDER ON DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** is before the Court on Defendant Experian Information Solutions, Inc.'s motion for summary judgment. (DE 39). Plaintiffs filed a response in opposition (DE 48) and Defendant filed a reply (DE 50). For the reasons below, Defendant's motion is **DENIED**.

**I.**     **BACKGROUND**

Plaintiffs Omar Santos and Amanda Clements filed this class action complaint against Defendants Experian Information Solutions, Inc. ("Experian") and Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services ("HRRG") (collectively, "Defendants") for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* Plaintiffs allege that Defendants "willfully engage in the unlawful practice of 're-aging' account information, *i.e.*, altering certain delinquency-related status dates and account history, on Experian consumer credit reports causing third parties who review such credit reports to believe that a consumer's delinquency is more recent than it really is." (DE 1). And, as to Experian specifically, Plaintiffs allege that

Experian "willfully fails to follow reasonable procedures to assure the maximum possible accuracy of the information concerning Plaintiffs and members of the class and fails to conduct any reasonable investigation into the accuracy of information reported by HRRG" and "willfully fails to conduct appropriate reinvestigation of the accuracy of information following a dispute initiated by a consumer, as required by the FCRA." *Id.*

The Parties agree that on July 27, 2017, Santos sent a dispute letter to Experian, contending that three accounts had been "re-aged": ARS Account Nos. 71670***, 80732***, and 81384***. (Defendant's Statement of Material Facts ("DSMF"), DE 40 at ¶ 9; Plaintiffs' Response to DSMF ("PSMF"), DE 47 at ¶ 9). The Parties further stipulate that at that time, Mr. Santos "had negative entries on his Experian credit file other than the three ARS accounts he disputed in his July 27, 2017 letter to Experian." (DSMF, DE 40 at ¶ 10; PSMF, DE 47 at ¶ 10). According to Experian, it "promptly responded to Santos' July 27, 2017 dispute letter, notifying Santos that the Social Security number on his dispute letter did 'not match the identification information' in Experian's database." (DSMF, DE 40 at ¶ 16). Plaintiffs dispute this assertion and state that Santos "does not recall ever receiving a letter from Experian in regards to his Social Security Number" and that "Plaintiffs lack sufficient discovery to respond." (PSMF, DE 47 at ¶ 16).

According to Experian, "there is no evidence that Santos was ever denied credit, much less denied credit based upon an inaccurate date appearing in his Experian credit report." (DSMF, DE 40 at ¶ 19). However, "Santos testified that when looking for a home loan, he believed the re-aged debts on his credit report affected his ability to obtain a mortgage and prevented him from getting the size of a loan he wanted" and that "Wells Fargo denied him a credit card." (PSMF, DE 47 at ¶ 19). It is undisputed that Santos

testified that "he believes the existence of his ARS accounts on his Experian credit report affected the amount of money he was able to obtain in a mortgage for a house (in that he obtained a lower mortgage than he desired), but [ ] still got the mortgage." (DSMF, DE 40 at ¶ 24; PSMF, DE 47 at ¶ 24). It is also undisputed that Santos "acknowledged in his deposition that he has no evidence that the mortgagor's decision was based on the ARS accounts' disputed dates, as opposed to the mere existence of his debt obligation." (DSMF, DE 40 at ¶ 25; PSMF, DE 47 at ¶ 25).

As to Plaintiff Clements, the Parties agree that on July 26, 2017, Clements sent a dispute letter to Experian, contending that two accounts had been "re-aged": ARS Account Nos. 71788*** and 72822***. (DSMF, DE 40 at ¶ 30; PSMF, DE 47 at ¶ 30). Plaintiffs do not dispute that "[a]t her deposition, Clements testified that she never applied for credit, let alone was denied credit, within the two year statute of limitations that applies to her claims." (DSMF, DE 40 at ¶ 39; PSMF, DE 47 at ¶ 39). However, Plaintiffs disagree that there is no "evidence that Clements was ever denied credit, much less denied credit based upon an inaccurate 'status date' appearing in her Experian credit report." (DSMF, DE 40 at ¶ 37; PSMF, DE 47 at ¶ 37). Specifically, Clements "testified that when she tried to get a mortgage the broker informed her there were negative accounts on her report" and "she was unable to get a mortgage because of the ARS accounts listed on her credit report." (PSMF, DE 47 at ¶ 37). The cited deposition testimony shows that when asked "Have you applied for credit in the past -- the two years prior to this lawsuit being filed?" Clements answered: "Prior to? Just the mortgage loan." (Deposition of Plaintiff Amanda Clements, DE 40-12 at 17). Clements was then asked, "Is that it?" and answered, "That I can remember." *Id.* Clements also stated that she "can't remember" if she applied for any

credit cards or car loans in the two years prior to this action and does not know if she opened any bank accounts in that time period. *Id.* As to the mortgage, Clements stated she was told that her credit "was not high enough to do the application . . . because of the negative accounts." *Id.* at 18.

As stated above, Plaintiffs now seek damages pursuant to Defendants' alleged violation of the Fair Credit Reporting Act. Experian has filed its motion for summary judgment, asserting that the "undisputed evidence conclusively establishes that neither Plaintiff can maintain" a claim under Sections 1681e(b) or 1681i of the FCRA. (DE 39).

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under the governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And any such dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the Court considers the evidence in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or others materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008) (quotation

marks and citations omitted). At the summary judgment stage, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Finally, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a sufficient showing to establish the existence of an element essential to [his] case, and on which [he] will bear the burden at trial." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Thus, "[i]f the non-movant . . . fails to adduce evidence which would be sufficient . . . to support a jury finding for the non-movant, summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (citation omitted).

## III. DISCUSSION

The Fair Credit Reporting Act "endeavors to 'ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009) (internal citation omitted). Relevant here are FCRA sections 1681e(b) and 1681i. Under section 1681e(b) "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e. Section 1681i provides the procedure for disputing "the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency." 15 U.S.C. § 1681i. Specifically, if the consumer reporting agency is notified of a dispute, it must

> conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed

5

>information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

*Id.*

Experian argues in its motion that Plaintiffs cannot maintain a claim under either 15 U.S.C. § 1681e(b) or 15 U.S.C. § 1681i because they cannot establish a denial of credit caused by inaccurate information appearing in an Experian credit report. (DE 39). Experian further asserts that Plaintiffs' § 1681i claim also fails because Plaintiffs did not dispute the information that they claim Experian failed to reinvestigate. *Id.*  The Court first addresses the Parties' disagreement as to what is needed to establish a claim under §§ 1681e(b) and 1681i. Experian argues that to prevail under either section of the FCRA, a plaintiff must establish "(1) the presence of inaccurate information appearing in a credit report furnished to a third party; ***and*** (2) the denial of credit caused by that inaccuracy." (DE 39). In contrast, Plaintiffs assert that the "FCRA's civil remedy provision, as amended in 1996, unequivocally makes statutory damages available to Plaintiffs for violations of the FCRA, meaning that Plaintiffs need not prove actual damages in the form of denied credit in order to prevail." (DE 48).

In *Cahlin v. General Motors Acceptance Corp.*, the Eleventh Circuit explained: "we need not reach the substance of [plaintiff-appellant's] FCRA claims against [defendant-appellee] because we find that he has utterly failed to produce any evidence tending to show that he was damaged as a result of an allegedly inaccurate TRW credit report." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). The *Cahlin* court "stress[ed] that [plaintiff-appellant] had the affirmative duty of coming forward with evidence supporting his claim that [defendant-appellee's] alleged inaccurate report

6

caused him harm." *Id.* However, Plaintiffs argue that *Cahlin* "pre-dates the 1996 amendment to the FCRA, which added the statutory damages provision for willful misconduct under which Plaintiffs now proceed." (DE 48).

Despite the 1996 amendment to the FCRA, the Eleventh Circuit has not overturned *Cahlin*. Rather, the Eleventh Circuit continues to find that "[a] consumer asserting claims under §§ 1681i(a) or 1681e(b) against a credit reporting agency bears the burden of proving that the agency's credit report was a causal factor in the denial of his credit application."[1] *Jackson v. Equifax Info. Servs., LLC.*, 167 F. App'x 144, 146 (11th Cir. 2006) ("[W]e conclude that the district court did not err in granting Equifax's motion for summary judgment because Jackson failed to produce any evidence indicating that he was damaged as a result of an allegedly inaccurate Equifax report"); *see also Enwonwu v. Trans Union, LLC*, 164 F. App'x 914, 918 (11th Cir. 2006) ("To establish a prima facie case of a violation of § 1681e(b), a consumer must present evidence that a credit reporting agency's report was inaccurate and was a causal factor in the denial of his credit application.").

---

[1] And, as Defendant asserts, courts within the Eleventh Circuit also continue to rely on *Cahlin*. *See e.g.*, *Stolfat v. Equifax Info. Servs., LLC*, No. 19-80428-CV, 2019 WL 3779778, at *3 (S.D. Fla. Aug. 12, 2019) ("[T]he relevant case law establishes that, '[t]o establish a prima facie violation of § 1681e(b), a consumer must present evidence that (1) a credit reporting agency's report was inaccurate and (2) that the inaccurate report was a causal factor in the denial of his credit application.'") (quoting *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 826 (11th Cir. 2009) (citing *Cahlin*, 936 F.2d at 1156, 1161)); *Librizzi v. Ocwen Loan Servicing, LLC*, 120 F. Supp. 3d 1368, 1374 (S.D. Fla. 2015) ("To state a claim for a violation of § 1681e(b), a plaintiff must plausibly allege that '(1) a credit reporting agency's report was inaccurate; and (2) that the inaccurate report was a causal factor in the denial of his credit application.'") (quoting *Ray v. Equifax Info. Servs., LLC,* 327 F. App'x 819, 827 (11th Cir. 2009) (citing *Cahlin*, 936 F.2d at 1156, 1161)).

Indeed, as recently as December 4, 2020, the Eleventh Circuit cited *Cahlin*, stating "[w]e have previously explained that to make out a claim for a violation of § 1681e(b), a plaintiff must show at least two things: that a consumer report was inaccurate **and that the inaccurate report caused him to suffer damages**."[2] *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1251 (11th Cir. 2020) (emphasis added). But because the court found that the plaintiff-appellant failed to establish the consumer report was inaccurate, it "did not consider the district court's independent ground for granting judgment as a matter of law—that the report did not cause [the plaintiff-appellant] harm." *Id.* at 1253. Still, the court made clear that "[t]o succeed, [the plaintiff-appellant] needed to show **both** that First Advantage's report failed to comply with the Act's 'maximum possible accuracy' standard **and that the report caused him harm**." *Id.* at 1250 (emphasis added). Consequently, the Court finds that Plaintiffs must not only establish an inaccurate credit report, but also that the report caused them harm.

Accordingly, the Court next considers Plaintiffs' assertion that "even if proof of a credit denial were required to maintain a claim under 15 U.S.C. § 1681n, Plaintiffs'

---

[2] On February 26, 2021, Defendant submitted a notice of supplemental authority citing *Erickson*. (DE 79). Plaintiffs filed a response, arguing that Defendant's reliance on *Erickson* "is fundamentally misplaced" and that while the court in *Erickson* cites *Cahlin*, "it does not hold or 'reaffirm' in any fashion that a plaintiff must allege 'a denial of credit caused by the inaccuracy' to establish a claim for a willful violation of the FCRA.'" (DE 80). Defendant filed a reply, stating that Plaintiffs' response is "improper because it contains extensive argument regarding *Erickson's* impact on the merits of" Defendant's motion. (DE 81). Local Rule 7.1(c) authorizes only opposing and reply briefs. The rule also makes clear that "[n]o further or additional memoranda of law shall be filed and served without prior leave of Court." Local Rule 7.1(c). While notices of supplemental authority "do not fall within the purview of the rule," such notices should only "direct the Court's attention to legal authority or evidence that was not available to the filing party at the time that party filed the original brief to which the subsequent supplemental filing pertains. Beyond that, supplemental filings should do nothing more. **In particular, they should not make legal arguments**." *Barron v. Snyder's-Lance, Inc.*, No. 13-62496-CIV, 2014 WL 2686060, at *1 (S.D. Fla. June 13, 2014) (emphasis added) (internal citations and quotations omitted). Accordingly, other than being directed to *Erickson*, the Court does not otherwise consider any of the arguments set forth in the notice of supplemental authority or the briefing that followed.

testimony concerning credit denials and Experian's own statements concerning the harm of a recently missed payment would satisfy such a burden at summary judgment." (DE 48). That is, Plaintiffs claim they were in fact damaged by Experian's alleged "failures to maintain information with maximum possible accuracy." (DE 48). Specifically, Plaintiffs state that "Santos testified that when looking for a home loan, he believed the re-aged debts on his credit report affected his ability to obtain a mortgage and prevented him from getting the size of the loan he wanted" and that "Wells Fargo denied him a credit card." (PSMF, DE 47 at ¶ 19). Plaintiffs also indicate that "Clements testified that when she tried to get a mortgage the broker informed her there were negative accounts on her report" and "that she was unable to get a mortgage because of the ARS accounts listed on her credit report." *Id.* at ¶ 37.

While Experian maintains that "there is no evidence that Santos was ever denied credit" and "there is no evidence that Clements was ever denied credit," Plaintiffs cite the deposition testimony of each Plaintiff, such as the following.

**Plaintiff Santos**:

> Q. Have you ever been denied any credit or said that somehow your credit score or your credit limit had been reduced or lowered in any way?
>
> A. I believe so. Yes.
>
> Q. In what way?
>
> A. I believe one of my -- one of the bank's institutions that I banked with denied me for a -- for a credit card.
>
> Q. What was that?
>
> A. The banking institution?
>
> Q. Yeah.

9

    A. Wells Fargo.

(Deposition of Plaintiff Omar Santos, DE 47-1 at 48-49).

**Plaintiff Clements**:

    Q. . . . Have you ever been denied credit either trying to buy a house or a home or anything like that where anybody said the particular reason for the denial was the account that was itemized or put on your bureau by ARS?

    A. The --

        Mr. Fernandes: Object to form.

    A. The initiation of all of it was when I tried to get a mortgage loan.

    Q. (Mr. Khlymer) Uh-huh.

    A. And she told me that I couldn't get approved because of the negative accounts, and ARS was one of those negative accounts.

(Deposition of Plaintiff Amanda Clements, DE 47-1 at 259-260).

Based on Plaintiffs' testimony, the Court cannot find that there is no genuine issue of material fact as to whether inaccurate credit reports caused Plaintiffs to suffer credit denials. *See Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1160 (11th Cir. 2012) ("Our case law recognizes that, even in the absence of collaborative evidence, a plaintiff's own testimony may be sufficient to withstand summary judgment."); *Newsome v. Chatham Cty. Det. Ctr.*, 256 F. App'x 342, 346 (11th Cir. 2007) ("[F]or purposes of summary judgment, there is nothing inherently wrong with 'self-serving testimony,' and it may not be disregarded by the district court in determining whether there is a genuine dispute of fact on a material issue in the case.").

Moreover, Plaintiffs alternatively request they be permitted to complete discovery before entry of a ruling on Experian's motion. (DE 48). Experian submitted its motion for summary judgment nearly six months before the first expert discovery deadline in this

matter, a deadline subsequently amended by Court Order and extended by an additional 90 days. (DE 34; DE 54). Indeed, as of the date of this Order, discovery is still (albeit nearly complete) ongoing. (DE 54). Rule 56(c) "mandates the entry of summary judgment, **after adequate time for discovery** and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis added). Given that Experian's motion was filed before either party was required to produce expert reports, and well in advance of the discovery deadline, it is clear that Plaintiffs did not have the benefit of discovery before submitting their response to the motion.[3] In light of the referenced testimony and the length of discovery conducted at the time of briefing, the Court does not find that summary judgment is appropriate. Nonetheless, the Court reiterates that to prevail, Plaintiffs must ultimately prove that Experian's "consumer report was inaccurate and that the inaccurate report caused [Plaintiffs] to suffer damages." *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1251 (11th Cir. 2020).

Finally, Experian argues that Plaintiffs' Section 1681i claim fails for the independent reason that "Plaintiffs never disputed the 'Date of Status' or 'First Reported' date associated with their ARS accounts and, instead, their dispute letter claimed these accounts had been 're-aged.'" (DE 39). However, according to Plaintiffs, they "unequivocally stated that the information as to the *specific* ARS accounts was

---

[3] For example, it is undisputed that Santos testified that he was denied a credit card by Wells Fargo, but that he "does not recall when he was denied a credit card by Wells Fargo, has no documents related to that denial, and does not know which credit bureau's information was used to evaluate his credit card application." (DSMF, DE 40 at ¶ 21-22; PSMF, DE 47 at ¶ 21-22). An opportunity to conduct discovery may allow Plaintiff to demonstrate that the denial was caused by an inaccuracy in Experian's report if, in fact, that is the case.

'inaccurate.'" (DE 48). The record shows that in their dispute letters, Plaintiffs provided the ARS account numbers and each stated "I think the above listed account is not accurate. I think it has been re-aged. Please investigate and fix or delete." (DE 40-2; DE 40-8). Plaintiffs assert that "at minimum, the summary judgment evidence shows that a genuine dispute of fact exists regarding the adequacy of the notice Plaintiffs provided to Experian concerning the inaccurate information in their reports and files." (DE 48). In light of the Court's finding that Plaintiffs did not have an adequate opportunity for discovery at the time of briefing, and given the Parties' dispute as to the adequacy of the contents of Plaintiffs' dispute letters, including the meaning and breadth of the term "re-aging,"[4] the Court finds summary judgment on this basis is also unwarranted at this time.

## IV.   CONCLUSION

For the foregoing reasons, the Court **ORDERS AND ADJUDGES** that Defendant's motion for summary judgment (DE 39) is **DENIED**.

**DONE AND ORDERED** in chambers in Miami, Florida, this 22nd day of March, 2021.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[4] Experian states that "[u]nder the FCRA, 're-aging' is a term of art" and "occurs when a Reporting Agency or a [Consumer Reporting Agency] modifies the date of last activity on a delinquent account to extend the reporting date beyond the permissible . . . timeframe." (DE 39) (quoting *Cunningham v. Ocwen Fin.*, No. 3:12-CV-0440, 2014 WL 688229, at *2 (M.D. Tenn. Feb. 20, 2014)). Plaintiffs argue that the fact "that some courts have understood 're-aging' to have that meaning hardly establishes that it is a 'term of art' accepted across the entire industry" and that "Experian does not provide a declaration from an employee attempting to establish that 're-aging' is a 'term of art' with just one, unequivocal meaning." (DE 48).