UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.: 1:19-cv-23084-KMW

OMAR SANTOS and AMANDA CLEMENTS
on behalf of themselves and all others similarly
situated,

      Plaintiffs,

vs.

HEALTHCARE REVENUE RECOVERY
GROUP, LLC d/b/a ARS ACCOUNT
RESOLUTION SERVICES and EXPERIAN
INFORMATION SOLUTIONS, INC.,

      Defendants.
_____/

**MOTION TO EXCLUDE PLAINTIFFS' EXPERT REPORTS AND TESTIMONY
BY DEFENDANT HEALTHCARE REVENUE RECOVERY GROUP, LLC
d/b/a ARS ACCOUNT RESOLUTION SERVICES**

COMES NOW Defendant Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services ("ARS"), by and through its undersigned counsel, pursuant to Federal Rule of Evidence 702 and files this Motion to Exclude the reports and testimony of Evan Hendricks and in support thereof states as follows:

**I.    BACKGROUND**

    **A.    Procedural History**

Plaintiffs commenced this action by filing their original Class Action Complaint against Defendant ARS and Experian Information Solutions, Inc. ("Experian") on July 24, 2019, alleging several violations of the Fair Credit Reporting Act, 15 U.S.C. Section 1681, *et seq.* ("FCRA"), only one of which applies to ARS as a data furnisher: Section 1681s-2(b), "Duty of

1

Furnishers of Information upon Notice of Dispute". **[DE 01, ¶¶68-75]** Plaintiffs' entire FCRA claim centers around an allegedly inaccurate "Date of Status" for their ARS accounts on their Experian Consumer Credit Disclosures. **[DE 01, ¶¶21-22]**

On January 8, 2021, Plaintiffs served their disclosure of their expert, Evan Hendricks ("Hendricks") with his Report ("Hendricks Report") setting forth four (4) opinions with regard to Experian and one (1) opinion with regard to ARS. On February 5, 2021, both ARS and Experian disclosed their experts with their reports and on March 5, 2021, Plaintiffs served the rebuttal expert report of Hendricks ("Hendricks Rebuttal"). On April 2, 2021, counsel for Experian and ARS conducted the deposition of Hendricks.

As to ARS, Plaintiffs intend to rely on Hendricks' opinion expressed in his Report, Rebuttal, and deposition testimony, that: "*In response to Plaintiffs' disputes, ARS failed to conduct an investigation that was reasonably calculated to determine the accuracy or completeness of the information Plaintiffs were disputing. ARS's failures resulted in inaccurate, derogatory data remaining in Plaintiffs' credit files.* ARS submits that Hendricks' opinion has no reasoned basis and is nothing more than speculation and conjecture that not only will not assist the jury but will invade the province of the jury on the ultimate issue of whether ARS complied with the FCRA in responding to Plaintiffs' dispute.

**B.     Relevant Factual Background**

Plaintiffs allege violation of the FCRA by ARS arising from dispute letters they sent to Experian regarding ARS collection accounts on their consumer credit disclosures. Counsel for Plaintiff Santos ("Santos") sent a dispute letter on his behalf to Experian on or about July 27, 2017, which was not forwarded to ARS because the Social Security number on the letter did not match Experian's account information on Santos **[DE 40, ¶16; DE 40-2]**. Counsel for Plaintiff Clements ("Clements") sent a dispute letter on her behalf to Experian on or about July 26, 2017

("Clements Letter").[1]

Experian submitted the Clements Letter to ARS along with an Automated Consumer Dispute Verification ("ACDV"), which as the name suggests, is an automated process by which a Credit Reporting Agency ("CRA") exchanges consumer dispute information and materials with a Data Furnisher. The Clements Letter lists ARS accounts of Clements and states: *"I think the above listed account is not accurate. I think it has been re-aged. Please investigate and fix or delete."* **[DE 40-8]**.[2]

Thereafter, ARS investigated the dispute and responded to the ACDV it received from Experian. It is this investigation by ARS about which Hendricks opines.

C. **Hendricks' Professional Background**

Hendricks' claimed expertise in this matter pertains to his authoring and publishing a newsletter on privacy issues from 1981 to 2013, a book he published in 2007 regarding credit scores and reports, testimony regarding legislative and federal agency action, testimony in other consumer and FCRA cases, consulting work on privacy issues and credit reporting **[Hendricks Report dated 1.8.21 attached as Exhibit "A", p. 48-68]**. 

**[Draft Deposition Transcript of Evan Hendricks, 4.2.21, excerpts attached as Exhibit "B", designated Confidential, pp. 58-60]**

. **[Exh. B,**

---

[1] During a deposition on April 2, 2021 (Hendricks) the undersigned mistakenly represented that a credit repair company sent the Letter to Experian
[2] The content of the Santos Letter is identical.

p. 67]

## II. HENDRICKS' REPORTS AND TESTIMONY

### A. Hendricks Report and Rebuttal

Hendricks offers one opinion as to ARS: "*In response to Plaintiffs' disputes, ARS failed to conduct an investigation that was reasonably calculated to determine the accuracy or completeness of the information Plaintiffs were disputing. ARS's failures resulted in inaccurate, derogatory data remaining in Plaintiffs' credit files*". **[Exh. A, p. 9; Hendricks Rebuttal dated 3.5.21 attached as Exhibit "C", p. 2]**



██████████████████

██████████████████

██████████████████

██████████████████

██████████████ ". **[Exh. A, pp. 44-45]** ██████████████

██████████████████

████████████ .

██████████████

████████████████ ", **[Exh. A, p. 44]** however ██████

██████████████████

██████████████████

██████████████████

██████████████████ .

**[Exh. A, p. 44-45]** Again however, Hendricks does not offer any opinion as to how the

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████ **[Exh. A, p. 4-5]**.

████████████████████████████████

██████████████████████████████████████████████

████████████████ ". **[Exh. A, p. 45]** Hendricks then launches into a discussion of conduct he refers to as "parroting", described as a CRA repeating to a consumer information it received from a data furnisher in response to an ACDV, which apparently relates not to ARS's dispute investigation but to a "reinvestigation" by Experian that is not at issue in this case, as Plaintiffs do not allege a FCRA Section 1681s-2(b) claim against Experian. **[Exh. A, p. 45]** ████

██████████████████████████████████████████████

████████████████████████████████████████. **[Exh. A, p. 45]** ████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████

Finally, ████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████. **[Exh. A, p. 45-46]**

In his Rebuttal Report, in responding to ARS's expert's correct statement that ARS did not furnish and could not have changed the "Date of Status" ("DOS") or the "First Reported Date" in Experian's system, Hendricks ████████████████████████████████

████████████████████████████████████████", **[Exh. C, p. 10]** It is undisputed

that ARS was *not* provided with Santos' July 27, 2017 dispute letter. **[DE 40, ¶16; DE 40-2]**

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████████. **[Exh. C, p. 10]**

After stating with regard to the Clements dispute, that ARS had the "Date of First Delinquency" ("DOFD") in its files, and that Clements claimed the ARS account had been "re-aged", Hendricks asserts ████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████ **[Exh. C, p. 10]** ████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████". **[Exh. B, pp. 65-66 & 100-101]**

B.   **Hendricks Deposition Testimony**

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████████. **[Exh. B, p. 91-92]** ███

6



▮▮▮ [Exh. B, p. 106] ▮▮▮ . [Exh B, p. 152] ▮▮▮ [Exh B, p. 161-162] ▮▮▮ , [Exh. B, p. 164] ▮▮▮ . [Exh. B, p. 166] " ▮▮▮ . [Exh B p. 168] ▮▮▮ [Exh B, p. 171] ▮▮▮

██████████████████████████████████████. [Exh. B, p. 164, 166-168, 170, 172, 179-180, 181-182]

████████████████████████████████

██████████████████." [Exh. B, p. 173] ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

████████████████████████████████████████████████

████████████████ [Exh. B, p. 181] ]. ████████████████

████████████████████████████████████████. [Exh. B, p. 182]

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████." [Exh. B, p. 182]

### III.   LEGAL ARGUMENT

The opinions expressed by Hendricks fail to meet the <u>Daubert</u> standard and therefore,

should be excluded pursuant to Federal Rule of Evidence 702.

### A. The Daubert Standard under Federal Rule of Evidence 702.

The subject of an expert's testimony must be "scientific, technical, or other specialized knowledge." Therefore, "subjective belief or unsupported speculation" will not suffice. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589-90 (1993); *see also,* Kumho Tire Co., 526 U.S. 137, 141 (1999) (trial court's "gatekeeping" obligation announced in Daubert applies to testimony based on scientific, technical, or other specialized knowledge); Bryte *ex rel* Bryte v. Am Household, Inc., 429 F.3d 469, 477 (4th Cir. 2005) ("Daubert aims to prevent expert speculation"). The party offering the expert testimony carries the burden of laying the proper foundation, and admissibility must be shown by a preponderance of the evidence. Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form or an opinion or otherwise, if (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

As the Supreme Court recognized in Daubert, Rule 702 plainly contemplates that the district court will serve as a gatekeeper to the admission of expert testimony. Daubert, 509 U.S. at 589; *see also* McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002).

The court engages in a three-part inquiry to determine the admissibility of expert testimony under Rule 702. Specifically, the court must consider whether:

> (1) [T]he expert is qualified to testify competently regarding the matters he intends to address;
> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and

>    (3)  the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise to understand the evidence or to determine a fact in issue.

Rink v. Cheminova, Inc., 400 F.3d 1286, 1291-92 (11th Cir. 2005) (*quoting* City of Tuscaloosa v. Harcross Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998)); Kleiman v. Wright, No. 18-cv-80176-BLOOM/Reinhart, 2020 U.S. Dist. LEXIS 213482, *5 (S.D. Fla. Nov. 16, 2020) (the Eleventh Circuit refers to each of these requirements as the "qualifications", "reliability" and "helpfulness" prongs) (*citing* United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004)).

Although there is some intersection among the evaluation of an expert's qualifications, the reliability of the proffered opinion, and the helpfulness of that opinion, all three are distinct concepts that must not be conflated. Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK, Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003); Frazier, 387 F.3d at 1260 (the court must individually analyze each concept). While an expert's overwhelming qualifications may bear on the reliability of the proffered testimony, they are by no means a guarantor of reliability, and case law dictates that one may be considered an expert but still offer unreliable testimony. *See, e.g.,* McCorvey, 298 F.3d at 1256 ("Daubert requires that trial courts act as 'gatekeepers' to ensure that speculative, unreliable expert testimony does not reach the jury"); Quiet Tech., 326 F.3d at 1342. There is nothing, however, in Daubert or the Federal Rules of Evidence that "requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. Geyer v. NCL Bahamas Ltd., 203 F.Supp.3d 1212, 1215 (S.D. Fla. Aug. 26, 2016 (*quoting* Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) ("A court may conclude that there is too great an analytical gap between the data and the opinion proffered")).

Further, the Advisory Committee notes for Rule 702 state:

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply, 'taking the expert's word for it'. Fed. R. Evid. 702 advisory committee notes (2000 amends.)

See also Herrera v. 7R Charter Ltd, No. 1:16-cv-24031-KMW, 2020 U.S. Dist. LEXIS 251468, *18-19 (S.D. Fla Oct 23, 2020)

The Eleventh Circuit has noted that "the primary purpose of any Daubert inquiry is for the district court to determine if the expert, 'whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field'." McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1255 (11th Cir. 2005). Testimony must be excluded "if the reasoning or methodology underlying the opinion is scientifically invalid, or if the methodology cannot properly be applied to the facts." Club Car, Inc. v. Club Car (Quebec) Import, Inc., 362 F.3d 775, 780 (11th Cir. 2004) (citing Daubert, 509 U.S. at 592).

The reasoning used by Hendricks must be examined prior to admission, rather than through the adversarial process at trial: "Rulings on admissibility under Daubert inherently require the trial court to conduct an exacting analysis of the proffered expert's methodology." McCorvey, 298 F.3d at 1257 (rejecting argument that methodological flaws should necessarily be tested by cross-examination). As the Advisory Committee notes to Rule 702 also provide:

> The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded. Fed. R. Evid. 702 adv. comm. note (2000).

The third element, *helpfulness*, turns on whether the proffered testimony "concerns

matters that are beyond the understanding of the average lay person." Edwards v. Shanley, 580 F.App'x 816, 823 (11th Cir. 2014) (*quoting* Frazier, 387 F.3d at 1262). A trial court may exclude expert testimony that is "imprecise and unspecific" or whose factual basis is not adequately explained. Edwards, 580 F.App'x at 823. For an opinion to be appropriate, a "fit" must exist "between the offered opinion and the facts of the case". McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir. 2004) ("…there is no fit where a large analytical leap must be made between the facts and the opinion") (*citing* Daubert, 509 U.S. at 591).

Hendricks' opinions in this matter cannot withstand this scrutiny as they suffer from various flaws and pursuant to Daubert and its progeny are unreliable as they are not properly grounded or well-reasoned. Further, the opinions will not assist the trier of fact as they are unconnected to the facts of this case, and to the extent Hendricks opines on the testimony of other witnesses, his opinions invade the province of the jury.

**B.    Hendricks' Opinions Should Be Excluded**

1. Hendricks' Opinions are not Reliable or Helpful.

Hendricks' opinions do not satisfy the second or third prong of the analysis as they are unreliable, and they will not assist the trier of fact. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

██████████

█████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

██████████████████████████ To say the least, there is no "fit" between the facts of this case and Hendricks' opinion without making a "large analytical leap."

Moreover, no one, including Hendricks ████████████████████████

███████████████████████████████

██████████████████████████████,

██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
████████████████████████████████████████

As Hendricks' opinions are not properly grounded in the facts, ████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
████████████████████████████████████

Then, at his deposition Hendricks ████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
███████████████████████████

According to Hendricks, a "proper" investigation ████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████

██████████████. Hendricks' opinion requires the type of "analytical leap" that demonstrates the disconnect between the facts associated with Clements July 2017 dispute Letter and ██████████ ██████████████ ██████████ ██████████ ██████████.

Even if ARS ██████████ ██████████ ██████████ ██████████ ██████████ ██████████ ██████████ ██████████ ██████████.

Federal Rule of Evidence 703 provides that:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field

would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect. Fed. R. Evid. 703.

The Eleventh Circuit has long recognized that "Rule 703…is not an open door to all inadmissible evidence disguised as expert opinion." U.S. V. Steed, 548 F.3d 961, 975 (11th Cir. 2008) (*citing* United States v. Scrima, 819 F.2d 996, 1002 (11th Cir. 1987)). ."An opinion which is mere speculation, or which simply parrots the opinion of another does not assist the trier of fact, and this, is inadmissible under Rule 702." Robinson v. Ford Motor Co., 967 F. Supp. 482, 487 (M.D. Ala. 1997) *aff'd* 144 F.3d 56 (11th Cir. 1998). Moreover, it is insufficient for an expert to merely vouch for the reliability of his own methodology. *See* Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Hendricks does not offer any process or methodology showing how ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

██████████.

Hendricks further ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ ██████████████

██████████████████████████.

In addition, Hendricks' opinion is not necessary or helpful to decipher the testimony of other witnesses. *See* Kleiman, 2020 U.S. Dist. LEXIS at *31-33 (opinion, often couched as observations, bear squarely on witness credibility). ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████.

Finally, Hendricks' opinion is not needed ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████.

**2. Hendricks' Opinions Constitute Legal Conclusions.**

If this case proceeds to trial, the jury will be tasked with determining if ARS violated the FCRA Section 1681s-2(b) by failing to conduct a "reasonable" investigation, ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████.

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████

██████████████████████

████

As recently as eighteen months ago, in <u>Malverty v. Equifax Info. Servs., LLC</u>, NO. 8:17-CV-1617-27AEP, 2019 U.S. Dist. LEXIS 186082, *3-7 (M.D. Fla. Oct 28, 2019), the District Court excluded the testimony of Hendricks with regard to damages as the jury would be instructed by the Court on the proper measure of damages. <u>Malverty</u>, 2019 U.S. Dist. LEXIS at *3-4. Hendricks was also restricted from offering any legal conclusions and from testifying about whether any conduct was "unreasonable" or "inadequate". <u>Malverty</u>, 2019 U.S. Dist. LEXIS at *6-7. ████████████████████ ██████████████.

IV.   **CONCLUSION**

Based on the foregoing, the reports and testimony containing the opinions offered by Evan Hendricks in this action fail to satisfy the requirements of <u>Daubert</u> and its progeny, as well as Rule 702 and 703 of the Federal Rules of Evidence and should be excluded.

WHEREFORE, ARS respectfully requests the Court grant this Motion and enter an order excluding the Report, Rebuttal Report and Deposition Testimony of Evan Hendricks.

Dated this **5th day of April 2021**

        Respectfully submitted,

        */s/ Mary Grace Dyleski*
        Ernest H. Kohlmyer, III

Florida Bar No.: 110108
Skohlmyer@shepardfirm.com
Mary Grace Dyleski
Florida Bar No.: 143383
mdyleski@shepardfirm.com
Shepard, Smith, Kohlmyer & Hand, P.A.
2300 Maitland Center Parkway, Suite 100
Maitland, Florida 32751
Phone: (407) 622-1772
*Attorneys for Defendant ARS*

### Certificate of Compliance with Local Rule 7.1(a)(3)

Counsel for ARS certifies that she has conferred with Counsel for all parties in a good faith effort to resolve the issues in this motion, and that Counsel for Experian **does not oppose** the motion or requested relief and that Counsel for Plaintiff **opposes** the motion and requested relief.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on **April 5, 2021** via the Court Clerk's CM/ECF system which will provide notice to all parties' counsel of record by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may also access this filing through the Court's CM/ECF System.

*/s/ Mary Grace Dyleski*
Ernest H. Kohlmyer, III
Florida Bar No.: 110108
Skohlmyer@shepardfirm.com
Mary Grace Dyleski
Florida Bar No.: 143383
mdyleski@shepardfirm.com
Shepard, Smith, Kohlmyer & Hand, P.A.
2300 Maitland Center Parkway, Suite 100
Maitland, Florida 32751
Phone: (407) 622-1772
*Attorneys for Defendant ARS*